1

2

3

4                                                    The Honorable John C. Coughenour

5

6                     UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE

8  NORTHWEST GROCERY                          No.  2:21-cv-00142-JCC
   ASSOCIATION, an Oregon non-profit
9  organization, the WASHINGTON FOOD
   INDUSTRY ASSOCIATION, a                    **PLAINTIFFS' MOTION FOR
10 Washington non-profit corporation,         PRELIMINARY INJUNCTION**

11                          Plaintiffs,        NOTED ON MOTION CALENDAR:
   v.                                          MARCH 5, 2021
12
   CITY OF SEATTLE, a charter municipality,
13                                             ORAL ARGUMENT REQUESTED
                            Defendant.
14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 1
(2:21cv-00142-JCC)

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     RELIEF REQUESTED ............................................................................................... 3

III.    STATEMENT OF FACTS .......................................................................................... 3

IV.     ARGUMENT .............................................................................................................. 6

        A.      The Grocers Are Likely to Prevail on Their NLRA Preemption Claim ............... 6

        B.      The Grocers are Likely to Prevail on Their Equal Protection Claim ..................... 8

                1.      The ordinance is subject to strict scrutiny .................................................. 9

                2.      The ordinance cannot withstand any level of scrutiny ............................. 11

        C.      The Grocers are likely to suffer irreparable harm ............................................... 14

        D.      An injunction is in the public interest ................................................................. 15

V.      CONCLUSION ......................................................................................................... 16

sf-4428044

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*All. for the Wild Rockies v. Cottrell*,

5

    632 F.3d 1127 (9th Cir. 2011) ...........................................................................13

6

*Allied Structural Steel Co. v. Spannaus*,

    438 U.S. 234 (1978)...........................................................................................10

7

8

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,

    119 F. Supp. 3d 1177 (C.D. Cal. 2015), *aff'd*, 834 F.3d 958 (9th Cir. 2016)...........................7

9

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,

10

    834 F.3d 958 (9th Cir. 2016) ..............................................................................7

11

*Am. Trucking Associations, Inc. v. City of Los Angeles*,

    559 F.3d 1046 (9th Cir. 2009) ...........................................................................14

12

13

*Angelotti Chiropractic v. Baker*,

    791 F.3d 1075 (9th Cir. 2015) ...........................................................................11

14

*Bernhardt v. Los Angeles County*,

15

    339 F.3d 920 (9th Cir. 2003) ............................................................................ 15

16

*Birkenwald Distrib. Co. v. Heublein, Inc.*,

    55 Wn. App. 1 (1989) ...................................................................................... 10

17

18

*Chamber of Commerce v. Bragdon*

    64 F.3d 497 (9th Cir. 1995) ............................................................................... 7

19

*City of Cleburne v. Cleburne Living Center*,

20

    473 U.S. 432 (1985)........................................................................................... 8

21

*Conley v. Gibson*

    355 U.S. 41 (1957)............................................................................................. 5

22

23

*Eggert v. Seattle*,

    81 Wn.2d 840 (1973) ........................................................................................ 9

24

*Federated Am. Ins. Co. v. Marquardt*,

25

    108 Wn.2d 651 (1987) ..................................................................................... 10

26

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 1
(2:21cv-00142-JCC)

## TABLE OF AUTHORITIES
### (Continued)

*Fire Prot. Dist. v. City of Moses Lake*,
  145 Wn.2d 702 ................................................................................................ 10

*Fletcher v. Peck*,
  10 U.S. 87 (1810) ............................................................................................. 9

*Fowler Packing Co., Inc. v. Lanier*,
  844 F.3d 809 (9th Cir. 2016) ......................................................................... 13

*Hepburn v. Griswold*,
  75 U.S. 603 (1868) ........................................................................................... 9

*Hines v. Davidowitz*
  312 U.S. 52 (1941) ........................................................................................... 6

*Hydrick v. Hunter*,
  449 F.3d 978 (9th Cir. 2006) ........................................................................... 9

*Jama v. Golden Gate Am. LLC*,
  2016 U.S. Dist. LEXIS 186624 (W.D. Wash 2016) ....................................... 7

*Ketcham v. King County Medical Serv. Corp.*,
  81 Wn.2d 565 (1979) ..................................................................................... 13

*Latta v. Otter*,
  771 F.3d 496 (9th Cir. 2014) ......................................................................... 14

*Machinists v. Wisconsin Employment Relations Comm'n*,
  427 U.S. 132 (1976) ............................................................................... 2, 6, 7

*Petroleum Expl. v. Pub. Serv. Comm'n of Kentucky*,
  304 U.S. 209 (1938) ....................................................................................... 14

*Plyler v. Doe*
  457 U.S. 202 (1982) ................................................................................... 9, 11

*Regents of the Univ. of Cal. v. Amer. Broadcasting Cos., Inc.*,
  747 F.2d 511 (9th Cir. 1984) ......................................................................... 14

*Shapiro v. Thompson*,
  394 U.S. 618 (1969) ....................................................................................... 10

*State v. Gunwall*,
  106 Wn.2d 54 (1986) ..................................................................................... 10

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 2
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

# TABLE OF AUTHORITIES
## (Continued)

*Towery v. Brewer*,
  672 F.3d 650 (9th Cir. 2012) ............................................... 11

*Winter v. Natural Resources Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................... 3

**Statutes & Ordinances**

Hazard Pay for Grocery Workers Ordinance ..................................... *passim*

National Labor Relations Act, 29 U.S.C. §§ 151 et seq. .................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 65(a) ............................................. 3

U.S. Const. amend. XIV, § 1 ............................................................. 8

U.S. Const. art. I, § 10 ................................................................. 9, 11

U.S. Const. art. VI, cl. 2 ................................................................. 6

Wash. Const. art. I, § 9(a) ............................................................. 8

Wash. Const. art. I, § 23 ........................................................... 10, 11

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 3
(2:21cv-00142-JCC)

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    Plaintiffs Northwest Grocery Association ("NWGA") and the Washington Food Industry

2    Association ("WFIA", collectively "Plaintiffs" or the "Grocers") respectfully request a

3    preliminary injunction enjoining the City of Seattle ("Defendants") from implementing or

4    enforcing City of Seattle's Hazard Pay for Grocery Workers' Ordinance (the "Ordinance")

5    pending final judgment in this action.

6                              I.      INTRODUCTION

7            In response to a widely-publicized public policy report suggesting incorrectly that every

8    grocery store was making unreasonable profits during the pandemic, the City Council of Seattle,

9    prompted by active union advocacy campaigns, took the unprecedented step of enacting

10   mandatory, employer funded hazard-pay for grocery store employees.  Only workers in certain

11   type of grocery stores were granted this benefit, and the Ordinance failed to address any health or

12   safety issues that could prevent infection or transmission of COVID-19.   The Ordinance

13   includes the following two critical provisions:

14       • The targeted grocery stores within the City of Seattle must give an immediate

15         $4/hour raise to every worker for every hour worked, regardless of their current

16         compensation; Ordinance §100.025, and

17       • By prohibiting actions taken in response to the Ordinance that "reduce []

18         compensation" of any grocery worker, the Ordinance appears to outlaw any

19         actions that grocery stores could take to mitigate a sudden 20-30% spike in labor

20         costs. §100.025.A.1.

21   The Ordinance applies to a broad range of grocers, ranging from local chains of independent

22   grocers to mass-market retailers, most of which have collective bargaining agreements with the

23   UFCW Local 21, a strong supporter of the Ordinance.  The hazard pay will last until the Mayor

24   decides the pandemic no longer warrants an emergency declaration.  Ordinance §100.025.C.

25

26

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 1
(2:21cv-00142-JCC)

1    The Ordinance is unlawful.  First, it is preempted by the National Labor Relations Act

2  ("NLRA") under the *Machinists* preemption doctrine, and is thus void pursuant to the Supremacy

3  Clause of the U.S Constitution.  Municipalities may exercise their police powers to set minimum

4  wages to lessen burden on public services; municipalities <u>cannot</u> compel private employers to

5  pay their desired wages (or give fixed hourly raises) to broad categories of workers in a selected

6  sector—especially when those workers are parties to binding collective bargaining agreements.

7  The U.S. Supreme Court and Ninth Circuit have issued clear direction that such laws must yield

8  to the federal labor law and policy supporting unimpeded collective bargaining between

9  employer and employees.

10    The Ordinance also violates the Equal Protection Clauses of the U.S. and Washington

11  constitutions.  Those clauses provide the government, essentially, with "a direction that all

12  persons similarly situated should be treated alike."  The Ordinance does not do that.  It singles

13  out grocery workers for special, government-mandated pay raises if they work for a grocery store

14  in Seattle.  The reasons given to support this purely economic regulation is that it provides

15  "hazard pay" and will thus benefit public and worker health and retention, as determined by the

16  City.  In fact, the Ordinance is devoid of any provisions that address employee health or safety,

17  nor is there any analysis or consideration of existing wages, attrition risk, or anything else.  On

18  the available record, the Ordinance cannot withstand any form of scrutiny.  Because the

19  Ordinance burdens a fundamental constitutional right to be free from governmental interference

20  with existing contracts, this Court should apply heightened scrutiny, and strike down the

21  Ordinance.

22    NWGA's and WFIA's members have supported their workers from the start of the

23  pandemic.  Washington grocers were at the national forefront in developing safe workplace

24  environments for these essential businesses.  While irreparable harm is presumed when a party

25  has experienced a constitutional injury, Seattle grocers are experiencing additional direct, serious

26  economic and non-economic impacts.  Grocery stores in Seattle, which operated on razor-thin

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 2
(2:21cv-00142-JCC)

1   margins prior to the pandemic, are now faced with 20-30% increases in labor costs, added to the

2   significant expense of COVID-19 safety measures and shutdowns that limited capacity.  While

3   the Grocers recognize the clear need for pandemic control measures, hazard pay has nothing to

4   do with controlling the spread of the virus, or protecting public's health.  It is based on a flawed

5   premise that all the grocers impacted by the Ordinance should pay essential workers more

6   because they City Council thinks they can afford to. That is not true.

7        The Ordinance ignores similarly situated retailers and unlawfully interferes with

8   collective bargaining over COVID-19 health and safety protections, including hero pay, as

9   contemplated by the National Labor Relations Act.  The Ordinance also unfairly brands Seattle

10  grocers as uniquely hazardous places to work or shop, driving customers to other grocery

11  suppliers, and damaging their goodwill and reputation.  The balance of hardships tilts in favor of

12  these businesses whose survival is threatened by the City Council's overreach. Pausing this

13  Ordinance to address this challenge is both warranted and in the public interest.

14

## II.    RELIEF REQUESTED

15

16       Pursuant to Federal Rule of Civil Procedure 65(a), a party seeking a preliminary

injunction must show (1) a likelihood of success on the merits, (2) a likelihood of irreparable

17  harm in the absence of preliminary relief, (3) that the balance of hardship tips in its favor, and (4)

18  that a preliminary injunction in is in the public interest. *Winter v. Natural Resources Def.*

19  *Council, Inc.*, 555 U.S. 7, 20 (2008).

20
## III.    STATEMENT OF FACTS

21       NWGA has served as a representative and trade association for the grocery industry of

22  Washington by promoting the common interests of its members.  WFIA is a non-profit

23  corporation that serves members such as independent grocery stores, supermarkets, convenience

24  stores, and their suppliers operating throughout Washington.  NWGA and WFIA have worked

25  very hard with its members on every aspect of pandemic response, ranging from supply chain

26

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 3
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    issues to vaccination logistics, and closely followed the legislative developments concerning the

2    Seattle City Council's Hazard Pay for Grocery Workers Ordinance.

3           The Ordinance contains a lengthy preamble, in which City claims that the purpose of the

4    Ordinance is to "promote the public health, safety, and welfare" during the COVID-19

5    pandemic.  Ordinance at 3, Section 1.A.  However, the Ordinance lacks any requirements related

6    to the health and safety of frontline workers or the general public, and merely states that

7    additional compensation will "increase retention" of frontline workers, which is "fundamental to

8    the health of the community." Ordinance §GG.  There is no suggestion that grocery workers are

9    at risk of increased attrition.  Instead of addressing the determinants of health outcomes among

10   workers, it requires grocers to provide "each grocery worker with premium pay consisting of an

11   additional Four Dollars ($4.00) per hour for each hour worked," with no consideration to

12   experience, seniority, or job duties.  §100.025.  In addition to mandating a wage rate increase

13   from the employee's existing baseline–regardless of the base pay, bonus structure, paid time off

14   or other monetary or non-monetary benefits currently offered by the employer–the Ordinance

15   forbids the employer from reducing a grocery worker's compensation as a result of the

16   Ordinance.  §100.025.A.1.  The employer must pay the maximum premium even if the employer

17   is already paying a pandemic-related wage premium, as some Seattle grocers currently are.

18          The Ordinance appears to target larger national chain grocers, based on the preamble

19   reference to an economic study that is limited to those retailers, but it covers local and national

20   multi-location grocers as well as mass-market retailers, and appears to exclude other retailers and

21   businesses with significant grocery components.  "Grocery store" is defined  as either "Over

22   10,000 square feet in size and that is primarily engaged in retailing groceries for offsite

23   consumption, including but not limited to the sale of fresh produce, meats, poultry, fish, deli

24   products, dairy products, canned and frozen foods, dry foods, beverages, baked foods, and/or

25   prepared food" or as a store "[o]ver 85,000 square feet and with 30 percent or more of its sales

26   floor area 23 dedicated to sale of groceries, including but not limited to the sale of fresh produce,

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 4
(2:21cv-00142-JCC)

1   meats, poultry, fish, deli products, dairy products, canned and frozen foods, dry foods,

2   beverages, baked foods, and/or prepared foods." §100.010. Based on the Grocers' estimate,

3   there are at least 50 grocery stores in Seattle that are subject to the ordinance, including NWGA

4   Members Fred Meyer, Albertson's/Safeway, and QFC, as well as WFIA members, Grocery

5   Outlet, and other non-publicly traded and independently owned grocers with stores in Seattle.

6

7       Of those grocery stores, most of those stores employ workers that are members of UFCW

8   21. UFCW 21 has collective bargaining agreements with QFC, Safeway, and others.

9   (Declaration of Frank Jorgensen in support of Preliminary Injunction ("Jorgensen Dec.") ¶ 3,

10  Declaration of Zachery Englander in support of Preliminary Injunction ("Englander Decl.") ¶ 3.)

11  For those Grocers with agreements with UFCW 21 is sole collective bargaining agent for

12  employment terms such as rates of pay, hours, and terms and conditions of employment for the

13  union's employee members. Employers periodically negotiate various terms of the employee-

14  employer relationship in the context of the CBA. As the Supreme Court has held, "collective

15  bargaining is a continuing process,[…] involving day-to-day adjustments in the contract and

16  other working rules, resolution of new problems not covered by existing agreements, and the

17  protection of employee rights already secured by contract..." See *Conley v. Gibson* 355 U.S. 41,

18  46 (1957).

19      Both Safeway and QFC are currently engaged in negotiations with the UFCW 21

20  representatives for Seattle stores regarding compensation and health and safety issues arising

21  from the pandemic, including hero pay. (Englander Decl. ¶ 4, Jorgenson Decl. ¶ 4.) In

22  connection with the current negotiations, UFCW has presented a series of issues for

23  consideration, including additional compensation, vaccine access, customer mask enforcement

24  and store sanitation practices. Now, in light of the City's mandatory hazard pay requirement,

25  neither Safeway nor QFC can negotiate hero pay terms and the resources that must be devoted to

26  hero pay cannot be used for negotiation of benefits or accommodations that the parties had

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 5
(2:21cv-00142-JCC)

considered throughout their negotiations.  (Jorgensen Dec.¶¶ 2-5, Englander Decl.¶¶ 2-5.)  It is exactly this type of local interference with collective bargaining negotiations that Congress intended to displace.

## IV.    ARGUMENT

### A.  The Grocers Are Likely to Prevail on Their NLRA Preemption Claim

The preemptive power of federal law derives from Article VI, section 2 of the United States Constitution, which declares that federal law is "the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  Federal preemption of a state or local law can be implied or express. Implied conflict preemption is a function of implied Congressional intent.  Federal law can displace a local law when it frustrates or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz* 312 U.S. 52, 67 (1941) (citations omitted).  Here, Ordinance conflicts with the Congressional intent and policy behind the NLRA and is preempted.

Congress enacted the National Labor Relations Act, 29 U.S.C. §§ 151 et seq., in 1935 to protect the rights of employees and employers, to encourage collective bargaining, and to curtail certain private sector labor and management practices that can harm the general welfare of workers, businesses and the U.S. economy. The NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment.  The U.S. Supreme Court has recognized two forms of conflict preemption doctrines under the NLRA: the *Machinists* doctrine, named for *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976), is relevant here.  In *Machinists*, the union and the employer were negotiating and expired collective bargaining agreement and the union refused to work overtime.  The employer complained to the NLRB that this was an unfair labor practice; the NLRB dismissed the charge as not cognizable, and the employer pursued a remedy with the state law employment authority.  The state authority issued a cease and desist order to the union.  The U.S. Supreme

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 6
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1    Court held that Congress intended that conduct unregulated by the NLRA was meant to be left to

2    the parties, and state law interference to "balance bargaining power" frustrated Congress's

3    purpose in enacting the NLRA.  The State law and related order were thus preempted.

4    *Machinists* and its progeny have reinforced the notion that Congress intended for certain conduct

5    within the employer-employee relationship should be "left to be controlled to by the free play of

6    economic forces." *Id*. at 140.

7         In other words, NLRA preempts narrowly targeted substantive laws that "affect[] the

8    bargaining process in a[n] … invasive and detailed fashion."  *Chamber of Commerce v. Bragdon*

9    64 F.3d 497, 502 (9th Cir. 1995). That is because "substantive requirements could be so

10   restrictive as to virtually dictate the results of the [collective bargaining and self-organizing

11   process]."  *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1187 (C.D.

12   Cal. 2015), *aff'd*, 834 F.3d 958 (9th Cir. 2016) (alterations in original) (internal citation omitted).

13   Such requirements are preempted.  *Id.*

14        *Bragdon* is instructive.  In *Bragdon*, the Contra Costa County Council set a manda*tory*

15   *pre*vailing wage scale for construction workers who were hired for private jobs in excess of

16   $500,000.  The Chamber challenged the ordinance, arguing that the mandatory "living wage"

17   scale interfered with the bargaining process as it set very specific wage terms and inserted the

18   local government into the bargaining process.  Finding that the "wage thus imposed is not the

19   result of bargaining of those employers and employees actually involved," and that the

20   Ordinance affects the bargaining process in a much more invasive and detailed fashion," the

21   Court found that the requirement was incompatible with the goals of the NLRA, and was

22   therefore preempted.  64 F.3d at 501.  *See also Am. Hotel & Lodging Ass'n v. City of Los*

23   *Angeles*, 834 F.3d 958, 965 (9th Cir. 2016) (upholding minimum wages for hotel workers and

24   reaffirming that wage regulations that go beyond minimum labor standards remain subject to

25   *Machinists* preemption); *Jama v. Golden Gate Am. LLC,* 2016 U.S. Dist. LEXIS 186624 (W.D.

26   Wash 2016) (suggesting that *Bragdon* requires a "substantiality test" such that courts must weigh

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 7
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    the extent of the collective impact of the state requirements when determining whether there is

2    an impermissible interference with the bargaining process.)

3           In this case, the Ordinance's effect is even more pervasive than the ordinance described

4    in *Bragdon*.  The Ordinance is not a minimum labor standard; it is a mandatory fixed wage

5    supplement that has disparate impacts on union and non-union workers. There is no

6    consideration of whether the grocery worker is paid $15/hour or $50/hour at the outset. Most

7    importantly, the Ordinance requires a specific increase ($4/hour) in the baseline hourly wage,

8    while *outlawing any modification that could reduce the employee's compensation* in any way.

9    §100.025.  Like the complex wage and benefit formula in *Bragdon*, this provision effectively ties

10   the employers' hands, rendering it impossible for employers to bargain with whatever tools she

11   has available.  It also implies employers must accept whatever business consequences may flow

12   from an immediate 20-30% increase in labor costs, as reductions in hours, shifts, or workforce

13   appear prohibited by the Ordinance.

14          As both QFC and Safeway has recently and directly experienced, the Ordinance is an

15   economic weapon that will dictate the results of collective bargaining in direct contravention to

16   the NLRA.  (Jorgensen Decl.  ¶ 5; Englander Decl. ¶ 5.)  The Ordinance is exactly the type of

17   substantive requirement that interferes with the collective bargaining process, and that should be

18   preempted by the NLRA.

19

20   **B.  The Grocers are Likely to Prevail on Their Equal Protection Claim**

21          The Grocers are also likely to prevail on a second and independent claim:  that the

22   ordinance violates the Equal Protection Clauses of the U.S. and Washington constitutions.  *See*

23   U.S. Const. amend. XIV, § 1; Wash. Const. art. I, § 9(a).  These provisions ensure that "all

24   persons similarly situated should be treated alike" and "secure[] every person within the State's

25   jurisdiction against intentional and arbitrary discrimination."  *City of Cleburne v. Cleburne*

26   *Living Center*, 473 U.S. 432, 439 (1985).  The Ordinance contravenes this essential requirement

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 8
(2:21cv-00142-JCC)

1    by arbitrarily forcing a subclass of grocers to pay their employees the specified wage bump, but

2    not imposing that obligation on other employers of frontline workers—including many who also

3    sell groceries.

4
5    **1.   The ordinance is subject to strict scrutiny**

6            The City must meet a high standard in justifying its treatment of the targeted grocers.

7    Where, as here, a law discriminates among similarly situated parties in a manner that burdens

8    another fundamental constitutional right, it is subject to heightened scrutiny.  *See, e.g.*, *Plyler v.*

9    *Doe* 457 U.S. 202, 216 (1982); *Hydrick v. Hunter*, 449 F.3d 978, 1002 (9th Cir. 2006).  Because

10   "[t]he Equal Protection Clause was intended as a restriction on state legislative action

11   inconsistent with elemental constitutional premises," the U.S. Supreme Court has "treated as

12   presumptively invidious those classifications that . . . impinge upon the exercise of a

13   'fundamental right.'"  *Plyler*, 457 U.S. at 216.  Similarly, the Washington Supreme Court has

14   held the State must show a compelling interest to justify its action that impacts a "fundamental

15   right involving a protected individual interest."  *Eggert v. Seattle*, 81 Wn.2d 840, 845 (1973).

16   Here, the ordinance interferes with grocers' existing contracts, thereby burdening the

17   fundamental rights secured by the state and federal Contract Clauses.

18           There should be little question that the right guaranteed by federal Contract Clause is

19   "fundamental."  The Contract Clause predated even the enactment of the Bill of Rights,

20   reflecting the importance the Framers placed on ensuring that no "State . . . pass any Law

21   impairing the Obligation of Contracts."  U.S. Const. art. I, § 10.  For more than two centuries, the

22   Supreme Court has applied this provision to strike down state laws that seek to alert the

23   contractual rights held by private parties.  *Fletcher v. Peck*, 10 U.S. 87, 139 (1810) (striking

24   down a state law purporting to annul a land grant); *see also*, *e.g.*, *Hepburn v. Griswold*, 75 U.S.

25   603, 623 (1868) (characterizing this "most valuable provision of the Constitution" as an

26   expression of the "fundamental principle" that no law should "interfere with or affect private

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 9
(2:21cv-00142-JCC)

1    contracts"). Like the right to travel or the right to vote, the right to be free of legislative

2    interference in existing contracts "occupies a position fundamental to the concept of our Federal

3    Union." *Shapiro v. Thompson*, 394 U.S. 618, 631 (1969). Any differential burdens the City

4    imposes on that right demand heightened scrutiny. *Id.*

5         This right is equally "fundamental" for purposes of Washington equal protection

6    provisions. Indeed, the Washington Supreme Court has recognized that its constitution provides

7    a broader set of fundamental interests that warrant special scrutiny under the State's constitution.

8    *Fire Prot. Dist. v. City of Moses Lake,* 145 Wn.2d 702, 732 (recognizing that the Washington

9    constitution has granted fundamental rights to citizens that extend beyond the federal

10   constitution). The Washington Supreme Court has similarly emphasized that the State

11   constitution should be   considered as extending broader rights to its citizens than does the

12   United States Constitution. *See generally State v. Gunwall,* 106 Wn.2d 54, 67 (1986). And like

13   the federal constitution, the Washington constitution has long expressly prohibited the passage of

14   any "law impairing the obligation of contracts." Wash. Const. art. I, § 23; see *Federated Am.*

15   *Ins. Co. v. Marquardt*, 108 Wn.2d 651, 660 (1987); *Birkenwald Distrib. Co. v. Heublein, Inc*., 55

16   Wn. App. 1, 8-9 (1989). This interest in avoiding the impairment of contractual obligations is at

17   least as "fundamental" as the other interests the Washington Supreme Court has held to trigger

18   heightened scrutiny.

19        It is also clear that the Ordinance burdens this fundamental right. The Grocers have

20   existing collective bargaining agreements with the unions representing their employees. Like all

21   collective bargaining agreements, these contracts expressly govern the grocer's control over

22   employees' hours and their obligation to pay specified wages. With the ordinance, the City has

23   unilaterally impaired those contractual obligations, precluding grocers from exercising their

24   bargained-for contractual rights. *See, e.g.*, *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234,

25   242 (1978) (law that "retroactively modif[ied] the compensation that the company had agreed to

26   pay its employees" was a "substantial impairment of a contractual relationship" under federal

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 10
(2:21cv-00142-JCC)

Contract Clause).  And the City did so without altering the existing contracts of other similarly situated employers—which likewise employ essential workers, and often even essential workers selling groceries.  Because the ordinance thus singles out specified grocers, but not other similar employers, with a law "impairing" their existing contracts (U.S. Const. art. I, § 10; Wash. Const. art. I, § 23), it differentially burdens a fundamental interest and warrants heightened scrutiny. *Plyler*, 457 U.S. at 216.[1]

**2.   The ordinance cannot withstand any level of scrutiny**

To satisfy the requirements of equal protection, the City thus must "demonstrate that its classification has been precisely tailored to serve a compelling governmental interest." *Plyler*, 457 U.S. at 216.  The City cannot meet that demanding standard here.  Singling out a specified subclass of grocers to pay their employees an additional $4 an hour is unsupported by any government interest, let alone a "compelling" one.  Indeed, the ordinance would fail even the more relaxed "rational basis" test applicable to legislation that does not (as here) implicate a fundamental right:  the "classification at issue bears [no] fair relationship to a legitimate public purpose." *Plyler*, 457 U.S. at 216.

The City has cited three justifications for imposing its $4-an-hour wage premium:  to "protect[] public health," address "economic insecurity," and "promote[] job retention." (Ordinance at 2-3.)  None of these justifications can withstand scrutiny, as none has any relationship to a classification imposing burdens only on those employers with at least 500

---

[1] While the Grocers also contend the ordinance independently contravenes both the state and federal Contract Clauses, the Grocers need not show a *violation* of those constitutional provisions to trigger heightened scrutiny for its Equal Protection claims.  Heightened scrutiny applies whenever a classification "implicates" a fundamental interest by causing the sort of harm against which other "fundamental" constitutional interests protect, not simply when the classification's unconstitutionality has already been shown. *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015); *see, e.g.*, *Towery v. Brewer*, 672 F.3d 650, 659-60 (9th Cir. 2012) (declining to adopt the "broad proposition" that "[w]here there is no Eighth Amendment violation, . . . that necessarily means that there has been no interference with fundamental rights sufficient to trigger strict scrutiny under the Equal Protection Clause").  Were it otherwise, the "fundamental rights" branch of Equal Protection doctrine would be superfluous.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 11
(2:21cv-00142-JCC)

1  employees nationwide that have 10,000 square foot grocery stores or 85,000 general

2  merchandise stores with 30% floor space dedicated to groceries.  § 100.010.  And the Ordinance

3  makes no mention of any of the other essential retail businesses or other frontline workers who

4  have been exposed to similar, if not greater, risks since March 2020.

5     *First*, the ordinance does not protect or promote public health.  To be sure, the ongoing

6  pandemic poses real risks to public health—that is why the Grocers have taken numerous steps

7  to protect their employees working environment, and why they are currently negotiating those

8  topics with their employees' unions.  But the ordinance's directive that these employees also

9  receive $4 additional dollars per hour beyond whatever they are currently being paid does

10 nothing to further protect them.  Simply stated, a wage enhancement does not mitigate the risks

11 of exposure to a virus.  If anything,  because the wage increases will render stores immediately

12 unprofitable,  the Ordinance could increase those risks, as it may force some employers to divert

13 funds they *would* have used for protective measures to instead pay the thousands in extra wages

14 the City mandated.

15    *Second*, the ordinance is unrelated to any concern with "economic insecurity."

16 Undoubtedly, the pandemic has caused severe economic hardship for millions throughout the

17 country.  But the City has no basis for thinking this purpose would be served by ordering those

18 employers to pay their employees $4 more per hour.  To the contrary, as the City itself expressly

19 recognized, these stores have been deemed "essential businesses."  They remain open, and thus

20 the employees at those stores remain (and will remain) employed.  In fact, the City's action may

21 very well lead to closures of grocery stores, especially those at the lower end of the marketplace,

22 who cannot readily absorb the mandatory pay.  (Declaration of Michael Sandberg ("Sandberg

23 Decl.") ¶¶ 4-5, and Declaration of Stephen Mullen ("Mullen Decl.") ¶¶ 4-5.)

24    *Third*, the ordinance will not, as the City asserts, "better ensure[] the retention of these

25 essential workers."  There is no evidence to suggest any concern that grocery store workers—let

26 alone the grocery store workers at the specific stores covered by the City's ordinance—are at any

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 12
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1  particular risk of leaving their jobs.  Nor, in any event, would a possibility that such employees

2  might quit justify the blanket measure the City imposed on their employers.  If grocery workers

3  *were* threatening to quit and leave these stores without essential workers, grocers would have

4  every incentive to raise their employees' compensation (as the Grocers have done).[2]

5  This failure to serve any legitimate purpose further undermines the Ordinance.  Even

6  where fundamental rights are not at issue, legislatures may not draw arbitrary lines.  *Fowler*

7  *Packing Co., Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016); *see Ketcham v. King County*

8  *Medical Serv. Corp.,* 81 Wn.2d 565, 576 (1979) (striking down a law that favored a class of

9  health care providers as having no rational basis to public health, stating that "[l]egislatures may

10  not under the guise of the police power impair the specific guarantee of freedom of contract").

11  Given the inapplicability of its stated rationales, the City's actual rationale for targeting the

12  specific grocers to which the ordinance applies was presumably simple enough:  the City, instead

13  of addressing issues that could directly address the health of the larger community, responded to

14  the UFCW's advocacy and decided that the grocers should pay everyone $4/hour more during

15  the pandemic.  This purely political justification could not save the measure even under rational

16  basis review, let alone the heightened scrutiny that must be applied.  *Fowler*, 844 F.3d at 815

17  (where "the only justification" for a classification "was to procure the support" of a union, "that

18  justification alone does not survive constitutional scrutiny.")  The Grocers are likely to prevail in

19  its claims that its members were denied equal protection.

20

21

22  —————————————
    [2] For that reason, even if the ordinance *did* rationally address any concern that these
23  workers might quit, that would only further confirm it is preempted by the NLRA.  In mandating
    that employers must pay their employees the specified bonus to ensure that these workers
24  continue working, the City has inserted itself directly in the middle of bargaining process—in
    which the threat to stop working is one of the most fundamental negotiating tactics.  Essentially,
25  the City declared that because the ordinary process of bargaining might have (what it deems to
    be) problematic consequences, the City can step in and simply dictate the result of that process.
26  That is not a decision the NLRA permits the City to make.  *See supra* Sec. I.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 13
(2:21cv-00142-JCC)

**C.  The Grocers are likely to suffer irreparable harm.**

To obtain a preliminary injunction, the grocers "must establish that irreparable harm is likely, not just possible." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  As the Ninth Circuit has held, a "constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009)(finding City's requirements preempted and granting injunction); see also *Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014) (recognizing irreparable harm from deprivation of constitutional rights).  Here, there are two independent grounds for invalidating the statute and there is no question that the increase in Members' labor costs will be extreme.  Members face the threat of attendant reputational harm and loss of goodwill as the City has effectively branded their workplaces as hazardous.  (Declaration of Tammie Hetrick in support of Preliminary Injunction ("Hetrick Decl."), ¶ 9.)   As is the case here, "the injury which flows from the threat of enforcement of an allegedly unconstitutional . . . state statute . . . has been generally recognized as irreparable and sufficient to justify an injunction."  *Petroleum Expl. v. Pub. Serv. Comm'n of Kentucky*, 304 U.S. 209, 218-19 (1938).

Moreover, certain grocers are had been in the process of negotiating benefits, workplace protections, and compensation packages directly related to COVID-19 impacts on the workplace. of negotiating labor agreements.  (Englander Decl. ¶ 3; Jorgensen Decl. ¶ 3).   The Ordinance effectively dictates their bargaining positions with respect to hero pay and leaves no flexibility – it effectively dictates the outcome. They Ordinance disrupts labor relations and exposes them to real legal risk.  It has, and will continue result in reputational harm, which is properly considered in this context.  (Hetrick Decl. ¶ 9.)  On the balance, these factors, when combined with the constitutional injury, justify preliminary relief.  *See, e.g.*, *Regents of the University of California v. American Broadcasting Companies, Inc.,* 747 F.2d 511 (9th Cir. 1984) (trial court did not abuse its discretion when finding that community reputation and loss of goodwill by colleges was irreparable harm).

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 14
(2:21cv-00142-JCC)

1    Finally, this Ordinance presents economic hardships to several Grocers that threaten their

2    existence.  Several Grocery Outlet stores in Seattle simply will not be able to survive with the

3    increase in wages that the Ordinance mandates. (Sandberg Decl.  ¶¶ 1-5; Mullen Decl. ¶¶ 1-5.)

4    The Ordinance contains no provision for waiver, and no hardship exception.

5

6    **D.  An injunction is in the public interest**

7        The Grocers will be irreparably harmed by the Ordinance, and if the Ordinance remains

8    in place, Seattle grocery retailers will be required to pay the City's premium wages, reflecting a

9    substantial increase in labor and operational costs.  If the Ordinance is invalidated, Washington

10   law would generally prohibit the Grocers from reclaiming wages previously paid.  Practically,

11   the Grocers would each then have to bring individual section 1983 claims for damages against

12   the City.  The balance of hardships tilt strongly in the Grocers' favor.

13       In contrast, the City cannot reasonably claim prejudice or hardship resulting from the

14   short delay in implementation while these issues are heard.  Allowing this matter to be heard

15   prior to implementation of all of the Ordinance's requirements will give the parties certainty, and

16   perhaps offer guidance to the multiple other local bodies considering similar action.  Practically,

17   the requested injunction would have minimal impact on the general public, but permitting the

18   Ordinance to remain in effect as enacted will cause hardship on Seattle grocers and could impact

19   their level of service to their communities.  (Hetrick Decl. ¶¶ 8-9, *see generally* Sandberg Decl.

20   and Mullen Decl.  *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) (public

21   interest factor requires consideration of non-parties, and competing public interests render the

22   factor a neutral one). Here, the Grocers contend that the Ordinance is an unlawful exercise of the

23   City's legislative power and it should not stand while that issue is under review.

24

25

26

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 15
(2:21cv-00142-JCC)

1

## V.     CONCLUSION

2      The City of Seattle has enacted an Ordinance that serves the discrete interests of a small

3 group at the expense of other grocers, other essential workers, and the other residents of Seattle.

4 The Ordinance conflicts with the requirements of federal labor law, and the guarantees of the

5 California and federal constitutions.  It will do nothing to end the pandemic, and will harm local

6 businesses.  The grocers that are impacted by this Ordinance will suffer imminent and irreparable

7 harm as a result, and the balanced of the hardships weigh in favor of a preliminary injunction

8 pending a resolution of this matter.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 16
(2:21cv-00142-JCC)

1   DATED:  February 11, 2021

2                                          STOEL RIVES LLP

3

4                                          /s/ Adam S. Belzberg
                                           Adam S. Belzberg, WSBA No. 41022
5                                          Vanessa Soriano Power, WSBA No. 30777
                                           600 University Street, Suite 3600
6                                          Seattle, WA 98101
                                           Telephone: (206) 624-0900
7                                          Email:     adam.belzberg@stoel.com
                                                      vanessa.power@stoel.com
8

9

10

11                                         /s/ William F. Tarantino (ECF)
                                           William F. Tarantino, admitted pro hac vice
12                                         MORRISON & FOERSTER LLP
                                           425 Market Street
13                                         San Francisco, CA  94105-2482
                                           Telephone: (415) 268-7000
14                                         Email: wtarantino@mofo.com
15

16                                         Tritia M. Murata, admitted pro hac vice
                                           MORRISON & FOERSTER LLP
17                                         707 Wilshire Boulevard
                                           Los Angeles, CA  90017-3543
18                                         Telephone: (213) 892-5200
                                           Email: tmurata@mofo.com
19

20                                         Attorneys for Plaintiffs

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 17
(2:21cv-00142-JCC)

**CERTIFICATE OF SERVICE**

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California 94105-2482. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on February 11, 2021, I served a copy of:

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**BY ELECTRONIC SERVICE [Fed. Rule Civ. Proc. rule 5(b)]** by electronically mailing a true and correct copy through Morrison & Foerster LLP's electronic mail system to the e-mail address(es) set forth below, or as stated on the attached service list per agreement in accordance with Federal Rules of Civil Procedure rule 5(b).

> City of Seattle
> Monica Martinez Simmons, MMC
> City Clerk
> 600 4th Ave., 3rd Floor
> Seattle, Washington 98104
> LAW_Service@seattle.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Chicago, Illinois, this 11th day of February, 2021.

| Kristin M. Marttila | /s/ Kristin M. Marttila |
|---|---|
| (typed) | (signature) |

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 18
(2:21cv-00142-JCC)