THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

| | |
|---|---|
| NORTHWEST GROCERY ASSOCIATION, an Oregon non-profit organization, the WASHINGTON FOOD INDUSTRY ASSOCIATION, a Washington non-profit corporation,<br><br>       Plaintiff,<br><br>  v.<br><br>CITY OF SEATTLE, a municipal corporation,<br><br>       Defendant. | Case No. 2:21-cv-00142<br><br>**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br>March 12, 2021<br><br>**ORAL ARGUMENT REQUESTED** |

**MOTION TO DISMISS**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................ 1

II.    BACKGROUND ............................................................................................ 1

A. Seattle acts to protect vulnerable workers. ............................................. 1

B. Plaintiffs seek to override critical public safety and health legislation by private contract. . 4

III.   LEGAL STANDARD ..................................................................................... 4

IV.    ARGUMENT ................................................................................................. 5

A. The Ordinance is a valid exercise of the City's police powers. ............................. 5

   1.   The City's police powers allow regulation of working conditions in the City. ............ 6

   2.   The City's police powers are at their maximum to address emergencies like the COVID-19 public health crisis. ................................................................. 7

   3.   Plaintiffs' allegation that the Ordinance was supported by a labor union does not negate its fundamental purpose to protect public health, safety, and welfare. ............. 9

B. The Ordinance, like other police power regulations generally applicable to the workplace, are not preempted by the NLRA. ............................................................. 10

   1.   Valid exercises of the City's police powers are presumed not preempted. ............... 10

   2.   Substantive state labor standards are not preempted by the NLRA. ...................... 11

   3.   State and local laws regulating rates of pay are not preempted by the NLRA. .......... 13

C. The Ordinance does not unconstitutionally impair Plaintiffs' members' contracts. ........... 14

   1.   Private contracts for labor do not supersede governmental protections of public safety, health, and welfare. ........................................................... 14

   2.   The Ordinance does not substantially impair any contract. ........................ 16

   3.   The Ordinance has a significant and legitimate public purpose, justly achieved. ...... 17

D. The Ordinance, rationally related to proper legislative goals, does not violate equal protection guarantees. ............................................................... 19

**MOTION TO DISMISS– Page i**
*Northwest Grocery Association et al. v. City of*
*Seattle* 2:21-cv-00142

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1.  The Ordinance is subject to, at most, a rational basis review. .................................. 19

2.  The Ordinance easily survives review. ................................................................... 21

E. The Washington Constitution's Privileges and Immunities Clause provides no separate
basis for the Complaint. .............................................................................................. 23

V.  CONCLUSION ............................................................................................................ 24

**MOTION TO DISMISS– Page ii**
*Northwest Grocery Association et al. v. City of
Seattle* 2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1

2

**TABLE OF AUTHORITIES**

**Cases**

*Alaska Airlines Inc. v. Schurke*, 898 F.3d 904 (9th Cir. 2018) ......................................... 7

*Albertson's, Inc. v. United Food & Commercial Workers Union, AFL-CIO & CLC*,
    157 F.3d 758 (9th Cir. 1998) ............................................................................ 17

*Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234 (1978) ............................... 15, 16

*Alsop v. Desantis*, 2020 WL 4927592 (M.D. Fla. 2020) ....................................... 8

*Am. Hotel and Lodging Association v. City of Los Angeles*, 834 F.3d 958 (9th Cir. 2016) ......... 13

*Ass'n of Surrogates & Supreme Court Reporters Within City of New York v. State of N.Y.,*
    940 F.2d 766 (2nd Cir. 1991) ............................................................................. 19

*Associated Builders & Contrs. of S. Cal. v. Nunn*, 356 F.3d 979 (9th Cir. 2004) ..................... 14

*Babler Bros., Inc. v. Roberts*, 995 F.2d 911 (9th Cir. 1993) ....................................... 13

*Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728 (1981) ..................... 12, 13

*Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of
    Massachusetts/Rhode Island, Inc.,* 507 U.S. 218 (1993) ........................................ 11

*Bullock v. Carter*, 405 U.S. 134 (1972) ............................................................... 20

*Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995) ............................... 14

*Chicago Bd. of Realtors, Inc. v. City of Chicago,* 819 F.2d 732 (7th Cir. 1987) ................... 19

*City of Tacoma v. Fox*, 158 Wash. 325 (1930) ......................................................... 6

*Covell v. City of Seattle*, 127 Wash.2d 874 (1995) ................................................. 6

*East New York Savings Bank v. Hahn*, 326 U.S. 230 (1945) ............................... 10, 15, 18

*Energy Reserves Group, Inc. v. Kan. Power and Light Co.,* 459 U.S. 400 (1983) .... 15, 16, 17, 18

*Etere v. City of New York,* 2009 WL 498890 (S.D.N.Y. Feb. 24, 2009) ........................... 20

*F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307 (1993) ............................... 21, 22

**MOTION TO DISMISS– Page iii**
*Northwest Grocery Association et al. v. City of
Seattle* 2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014) .......................................................... 5

*Gen. Offshore Corp. v. Farrelly*, 743 F. Supp. 1177 (D.V.I. 1990) .......................................... 17

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994) ................................................................ 10

*Hillis Homes, Inc. v. Snohomish County*, 97 Wash.2d 804 (1982) ............................................ 6

*Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 428 (1934) ................................. 15, 18, 20

*Hudson Water Co. v. McCarter*, 209 U.S. 349 (1908) ..................................................................... 16

*In re Abbott*, 954 F.3d 772 (5th Cir. 2020) ......................................................................................... 8

*In re Estate of Hambleton*, 181 Wash.2d 802 (2014) ............................................................... 15, 24

*In re Rutledge*, 956 F.3d 1018 (8th Cir. 2020) .................................................................................. 8

*Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389 (9th Cir. 2015) ................................... 21

*Jackson Water Works, Inc. v. Public Utilities Comm'n of State of Cal.*,
    793 F.2d 1090 (9th Cir. 1986) .............................................................................................. 21

*Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450 (1988) ............................................................ 22

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) .......................................................... 4

*Lochner v. New York,* 198 U.S. 45 (1905) ........................................................................................ 20

*Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018) ................................................... 10

*Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976) ................ 11

*Margola Associates v. City of Seattle*, 121 Wash.2d 625 (1993) ......................................... 16, 17

*Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*, 196 Wash.2d 506 (2020) .................. 7, 23, 24

*Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976) .......................................... 20

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) .................................................................................. 10

*Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724 (1985) ............................................ 7, 11, 12

**MOTION TO DISMISS– Page iv**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

*Munn v. People of State of Illinois*, 94 U.S. 113 (1876) ............................................................ 10

*National Broadcasting Co. v. Bradshaw*, 70 F.3d 69 (9th Cir. 1995) .................................. 11, 13

*Nebbia v. People of State of New York*, 291 U.S. 502 (1934) ...................................................... 20

*Ockletree v. Franciscan Health Sys*, 179 Wash.2d 769 (2014) .......................................... 23, 24

*Parrish v. W. Coast Hotel Co.*, 185 Wash. 581 (1936), *aff'd*, 300 U.S. 379 (1937) ...................... 7

*Petsel, Inc. v. King Cty.*, 77 Wash.2d 144 (1969) ........................................................................ 7

*Roe v. Wade*, 410 U.S. 113 (1973) .............................................................................................. 20

*RUI One Corp. v. City of Berkeley*, 371 F.3d 1137 (9th Cir. 2004) ................................... 6, 21, 23

*Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wash.2d 824 (2000) ......................... 3

*Shapiro v. Thompson*, 394 U.S. 618 (1969) ................................................................................. 20

*Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942) ................................................... 20

*Slidewaters LLC v. Washington Dep't of Labor & Indus*, 2020 WL 3130295 (E.D. Wash., June 12, 2020) (slip copy); 2020 WL 3979661 (E.D. Wash. July 14, 2020) ..................................... 9

*Tyrpak v. Daniels,* 124 Wash.2d 146 (1994) ............................................................................... 15

*U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1 (1977) .................................................... 9, 18

*United States v. Williams*, 124 F.3d 411 (3rd Cir. 1997) ............................................................ 20

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976) ............................................................... 5

*Vance v. Bradley*, 440 U.S. 93 (1979) .......................................................................................... 21

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 2021 WL 403788 (9th Cir. 2021) ............................. 5

*Veix v. Sixth Ward Bldg. & Loan Ass'n*, 310 U.S. 32 (1940) ................................................. 16, 17

*Velasquez-Rios v. Barr*, 979 F.3d 690 (9th Cir. 2020) .................................................................. 6

*Viceroy Gold Corp. v. Aubry*, 75 F.3d 482 (9th Cir. 1996) .......................................................... 12

*West Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937) .......................................................... passim

**MOTION TO DISMISS– Page v**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

*William v. Rhodes*, 393 U.S. 23 (1968) ........................................................ 20

*Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483 (1955) ................................ 10, 20, 22

*Wisconsin Dep't of Industry v. Gould, Inc.*, 475 U.S. 282 (1986) ................................ 11

*Yim v. City of Seattle*, 194 Wash.2d 651 (2019) ...................................... 6, 16

**Statutes**

29 U.S.C. §§ 157-158 ....................................................................... 11

29 U.S.C. §§ 201 et seq. ................................................................... 17

Ordinance No. 126274 ................................................................... passim

Rev. Code Wash. 49.46 ..................................................................... 17

Seattle Mun. Code 14.19 ................................................................... 17

**Court Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................... 4

**Constitutional Provisions**

U.S. Const., Art. I, §10 ...................................................................... 15

Wash. Const. Art I, § 12 ...................................................................... 23

Wash. Const. Art. I, § 23 ...................................................................... 15

Wash. Const. Art. XI, § 11 ...................................................................... 6

**MOTION TO DISMISS– Page vi**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

# I.  INTRODUCTION

For more than eight decades, the unquestionable law of the land has enabled local governments to impose minimum compensation requirements on businesses.  Plaintiffs now urge this Court to return to the nineteenth century and elevate their private arrangements to purchase labor over public health, safety, and welfare.  Under normal circumstances, the contention that private law could override the public interest in safe and fair workplaces would have no merit. But these are not normal circumstances.  A global pandemic continues to rage, killing hundreds of thousands of people across this country.  In response, the City of Seattle acted to support and protect grocery store employees, critical frontline workers since the start of the pandemic,  who are increasingly vulnerable to COVID-19 exposure and continue to provide a crucial service to the community.

Plaintiffs' claims have no cognizable legal basis, whether taken in a vacuum or considered in the context of the current health crisis we all face. Plaintiffs' claims that others should be regulated, or that a different approach should be taken to address public health, safety, and welfare are not matters to be resolved by this Court; they are quintessentially political questions that must be addressed to the legislative functions of government. This Court should dismiss Plaintiffs' complaint with prejudice.[1]

## II.  BACKGROUND

**A.  Seattle acts to protect vulnerable workers.**

On January 25, 2021, the Seattle City Council ("Council") voted unanimously to exercise the State's police power to ensure minimum employment standards for grocery employees by enacting the Grocery Employees Hazard Pay Ordinance, Ordinance No. 126274 ("Ordinance").

---

[1] Defendant City of Seattle was prepared to raise its intention to move to dismiss the complaint at the status conference on February 17, 2021. However, the only issue addressed at the status conference was the scheduling of Plaintiffs' preliminary injunction hearing.

**MOTION TO DISMISS– Page 1 of 24**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

On February 3, 2021, Seattle's Mayor signed the Ordinance into law.[2]

At its core, the Ordinance is a minimum compensation law.  The Ordinance requires covered grocery businesses to pay covered employees "hazard pay at a rate of four dollars per hour for each hour worked in Seattle" where hazard pay "means additional compensation owed to an employee on top of the employee's other compensation . . ."  Ordinance, Sections 100.025.A, 100.010.  The Ordinance prohibits covered employers from taking "steps to reduce employee compensation so as to prevent, in whole or in part, employees from receiving hazard pay" where those reductions to employee pay are made "as a result of this ordinance going into effect . . ."  *Id.*, Section 2, 100.025.A.1.  The Ordinance *does not* prohibit reductions in employee pay that are made on some other basis.[3]  Employers are further allowed to offset the amount owed in hazard pay under the Ordinance with hazard pay they are already providing to employees.  *Id.*, Section 2, 100.025.A.2.  The net effect is to ensure a minimum compensation rate for covered employees of four dollars per hour in addition to their regular rate of pay.[4]

The Council made extensive findings supporting the requirement to provide hazard pay to grocery store employees.  The Council noted that Washington State's Governor had deemed "essential workers" exempt from prohibitions on continued public-facing business during the

---

[2] *See* https://seattle.legistar.com/LegislationDetail.aspx?ID=4754242&GUID=80536722-1338-426A-A175-DCF61CCAF08F&Options=ID%7cText%7c&Search=#, accessed on February 8, 2021 for a timeline for enacting the challenged Ordinance; *see also* Dkt. 1, Exhibit A (copy of the Ordinance).

[3] The Ordinance clearly contemplates that employee pay could be reduced for other reasons, as it requires employers to "maintain records to establish the reason(s) for any reduction in employee compensation…."  Ordinance, Section 100.025.A.1.

[4] The Ordinance also includes provisions related to the enforcement of this central requirement, including notice and recordkeeping requirements (Ordinance, Section 2, 100.030-100.040); anti-retaliation provisions (*id.*, Section 2, 100.050); public enforcement by Seattle's Office of Labor Standards (*id.*, Section 2, 100.060, 100.080-100.090); a private right of action (*id.*, Section 2, 100.260); and remedies for violations.  *Id.*, Section 2, 100.200.

**MOTION TO DISMISS– Page 2 of 24**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

global COVID-19 pandemic.  *Id.*, Section 1, F.[5]  The Council also cited studies showing that grocery employees who interacted with the public were five times as likely to be infected with COVID-19. *Id.*, Section 1, J. The Council cited studies showing that multiple COVID-19 variants with increased transmissibility are in circulation.  *Id.*, Section 1, L-N.  The Council acknowledged uncertainties surrounding timelines for when grocery store employees could expect to receive vaccines.  *Id.*, Section 1, O-Q.  It was further recognized that retail businesses, including grocery stores, made record profits during 2020.  *Id.*, Section 1, K.

The Council concluded that grocery stores relied upon the work of grocery store employees who are highly vulnerable to health and safety risks.  *Id.*, Section 1, W-BB.  The Council found that hazard pay would compensate those employees for the risks they take, permit the employees to access resources they need to stay safe and healthy, improve retention of those workers, and support community access to safe and healthy food, and immediately address a critical public health threat.  *Id.*, Section 1, EE, GG, HH, JJ.

The Ordinance is temporary emergency legislation; the hazard pay requirement expires when the Mayor ends the emergency she declared on March 3, 2020.  *Id.*, Sections 2, 5.[6, 7]

///

---

[5] As of February 10, 2020, there were more than 27 million cases of COVID-19 in the United States, accounting for more than 450 thousand deaths.  https://covid.cdc.gov/covid-data-tracker/?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcases-updates%2Fcases-in-us.html#cases_casesper100klast7days, accessed on February 10, 2021.  The massive impact of the health crisis on this country is well documented and ongoing.

[6] In the recitals preceding the Ordinance, Council made clear its intention to revisit the necessity of the Ordinance in four months.  Ordinance, Recitals.

[7] Recordkeeping and enforcement provisions survive the end of the emergency for three years, consistent with recordkeeping requirements in the Ordinance (Ordinance, Section 2, 100.080.C) and with the usual statute of limitations for wage standards in Washington.  Ordinance, Section 5; *see Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wash.2d 824, 837 (2000) (finding that claims under the Washington State Minimum Wage Act are subject to a three-year statute of limitations).

**MOTION TO DISMISS– Page 3 of 24**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

**B. Plaintiffs seek to override critical public safety and health legislation by private contract.**

Plaintiffs filed their Complaint on February 3, 2021.  Plaintiffs seek injunctive and declaratory relief, urging this Court to strike down the Ordinance because they believe that their members' private contracts for labor supersede legislation for public health, safety and welfare and because Plaintiffs have policy disagreements with legislative determinations about the applicability and scope of the Ordinance.[8]

As to members' contracts, Plaintiffs contend that the National Labor Relations Act ("NLRA") preempts the Ordinance because some employees subject to a collective bargaining agreement would be covered by the law.  Complaint, ¶¶ 23-31.  Plaintiffs also seek to elevate their members' contracts for labor over the City's police power legislation on the theory that the Federal and Washington State constitutions' contract clauses prohibit regulations for public safety and health that impinge on private contracts.  *Id.*, ¶¶ 42-48.

Plaintiffs disagreement with legislative policy decisions are embodied in their claims that the Ordinance violates the federal and Washington State constitutions' equal protection guarantees.  *Id.* at ¶¶ 32-41.  Plaintiffs contend that the Ordinance implicates a "fundamental right" held by Plaintiffs' members in the form of their contracts for labor and that the City should have chosen to regulate more broadly.  *Id.*

### III.   LEGAL STANDARD

Complaints, like the one at issue here, may be dismissed for a "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissals of a complaint under this Rule may be based on the absence of a cognizable legal theory.  *Kwan v. SanMedica Int'l,*

---

[8] Plaintiffs also filed a Motion for Preliminary Injunction (Dkt. 10) on February 11, 2021.  The City will file an opposition to that motion on February 26, 2021, consistent with Local Court Rule 7.

**MOTION TO DISMISS– Page 4 of 24**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

854 F.3d 1088, 1093 (9th Cir. 2017).  A motion to dismiss for failure to state a claim is an "important mechanism for weeding out meritless claims" and dividing "the plausible sheep from the meritless goats."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

## IV.    ARGUMENT

Plaintiffs' claims have no legal basis.  The Ordinance is a valid exercise of the City's police power, addressing critical public health, safety, and welfare issues by setting a rate of pay for covered employees.  It constitutes a part of the backdrop against which Plaintiffs' members bargain for labor and is therefore not preempted by federal labor law.  The Ordinance imposes only "civil (and purely economic) liability" on some of Plaintiffs' members and is therefore a "legislative act[] 'adjusting the burdens and benefits of economic life [that] come[s] to the Court with a presumption of constitutionality'"  *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, __F.3d___, 2021 WL 403788, at *9 (9th Cir. February 2, 2021) (slip copy) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976)) (alterations supplied).  Such laws do not, as a matter of law, constitutionally impair existing contracts for labor, particularly in the context of the panoply of existing labor regulations and the current crisis.  Finally, the City clearly had a rational basis for enacting the ordinance; in this context equal protection requires nothing more.   Plaintiffs' constitutional and statutory claims are legally infirm, and, as a matter of law, warrant dismissal with prejudice.

### A.  The Ordinance is a valid exercise of the City's police powers.

Plaintiffs' contentions depend, in part, on a hollow interpretation of the City's power to pass laws to protect public health, safety, and general welfare.  Plaintiffs' statutory and constitutional claims are rooted in a deep misunderstanding of long settled law establishing the City's robust power to regulate working conditions, exercised here in the context of the global COVID-19 pandemic.  The City's authority to protect the community supersedes Plaintiffs' private contracts for labor and is entitled to significant deference with respect to the scope of that

1    authority.  *See* Sections IV.B-E, *infra*.  The Court should reject Plaintiffs' invitation to

2    undermine the City's mandate to act in the public interest.

3         **1.   The City's police powers allow regulation of working conditions in the City.**

4         Under the Washington State Constitution's "home rule" principles, cities and counties

5    exercise much of the state's power. *See* Wash. Const. Art. XI, § 11 (cities and counties are

6    empowered to "make and enforce within [their] limits all such local police, sanitary and other

7    regulations as are not in conflict with general laws").  Accordingly, "[m]unicipal police power is

8    as extensive as that of the legislature, so long as the subject matter is local and the regulation

9    does not conflict with general laws."  *Covell v. City of Seattle*, 127 Wash.2d 874, 878 (1995),

10   *abrogated on other grounds by Yim v. City of Seattle*, 194 Wash.2d 651 (2019) (quoting *Hillis*

11   *Homes, Inc. v. Snohomish County*, 97 Wash.2d 804, 808 (1982)).  And this power "not only

12   extends to enactments designed to protect and promote public peace, health, morals, and safety,

13   but also to those intended to promote the general public welfare and prosperity."  *City of Tacoma*

14   *v. Fox*, 158 Wash. 325, 330-331 (1930); *see Velasquez-Rios v. Barr*, 979 F.3d 690, 697 (9th Cir.

15   2020) (acknowledging that "the states' police powers are broad" relating to "to public health,

16   safety, and welfare" so long as state laws do not violate the federal Constitution").

17        The City's police powers clearly permit the regulation of working conditions.  "In dealing

18   with the relation of employer and employed, the [State] has necessarily a wide field of discretion

19   in order that there may be suitable protection of health and safety, and that peace and good order

20   may be promoted through regulations designed to insure wholesome conditions of work and

21   freedom from oppression."  *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 393 (1937); *see RUI*

22   *One Corp. v. City of Berkeley*, 371 F.3d 1137, 1150 (9th Cir. 2004) ("[t]he power to regulate

23   wages and employment conditions lies clearly within a state's or a municipality's police

24   power").  This discretion is reflected in governmental authority to set "minimum and other wage

25   laws," prohibit child labor, set occupational safety and health standards, require contributions to

26

**MOTION TO DISMISS– Page 6 of 24**
*Northwest Grocery Association et al. v. City of*
*Seattle* 2:21-cv-00142

unemployment and workers' compensation funds, proscribe state holidays, and require pay for time spent on jury duty or at the polls.  *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 756 (1985) (citations omitted); *see Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 919 (9th Cir. 2018) *cert. denied* 130 S.Ct. 1445 (2019) ("Setting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states…").[9]  Laws establishing minimum payments for workers, like the one at issue here, "protect workers from the harmful effects of low wages and long hours."  *Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*, 196 Wash.2d 506, 532 (2020) (citing, *inter alia*, *Parrish v. W. Coast Hotel Co.*, 185 Wash. 581, 587-89 (1936), *aff'd*, 300 U.S. 379 (1937)).  The authority to set a minimum compensation amount for grocery employees lies well within the scope of the City's police powers.

### 2.   The City's police powers are at their maximum to address emergencies like the COVID-19 public health crisis.

The City's police powers, already more than sufficient to regulate rates of pay at workplaces in the City, are even greater in the context of the ongoing public health catastrophe. More than a century ago, in *Jacobson v. Commonwealth of Massachusetts*, the United States Supreme Court recognized that public health emergencies necessarily enlarge the scope of the state's police powers.  197 U.S. 11 (1905).  Upholding a local ordinance compelling citizens to be vaccinated to address a smallpox outbreak or face imprisonment over a variety of

---

[9] Washington courts have approved use of police powers to set minimum wages, *Filo Foods, LLC v. City of SeaTac*, 183 Wash.2d 770 (2015), set maximum hours, *State v. Buchanan*, 29 Wash. 602 (1902), outlaw employment discrimination, *Seattle Newspaper-Web Pressmen's Union Local No. 26 v. City of Seattle*, 24 Wash. App. 462 (1979), and set maximum fees charged by employment agencies.  *Petstel, Inc. v. King Cty.*, 77 Wash.2d 144 (1969).

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

constitutional challenges, the Court first noted that general, non-emergency police powers permit governments "to enact quarantine laws and 'health laws of every description'" *Id.* at 30.  And when there is a public health emergency, the right "to determine for all what ought to be done" is properly lodged with political decision makers rather than courts.  In reviewing the exercise of emergency police powers, "it is no part of the function of a court" to second guess a determination as to what method is "likely to be the most effective for the protection of the public against disease." *Id.*

This is true, even if it results in restrictions of constitutional rights.  "'Under the pressure of great dangers,' constitutional rights may be reasonably restricted 'as the safety of the general public may demand.'" *In re Abbott*, 954 F.3d 772, 778 (5th Cir. 2020) (alterations removed)(quoting *Jacobson* 197 U.S. at 29) (upholding state limitations on access to abortion during the COVID-19 pandemic under the "settled rule" announced in *Jacobson*).  Courts have repeatedly applied *Jacobson*'s formulation of the scope of emergency police powers regulating business activities in the context of the current pandemic. [10] As the Eastern District of Washington recently concluded, "the growing consensus of district courts" is "that constitutional challenges to… COVID-19 related measures [regulating business activities] are precluded by *Jacobson*." *Slidewaters LLC v. Wash. Dep't of Labor & Indus.,* No. 20-CV-210-TOR, 2020 WL

---

[10] *See, e.g., In re Rutledge*, 956 F.3d 1018, 1028 (8th Cir. 2020) (upholding a State ban on surgical procedures over constitutional challenges, remarking "[i]n our analysis, we must take care not to 'usurp the functions of another branch of government,'") (quoting *Jacobson*, 197 U.S. at 28); *Alsop v. Desantis*, 2020 WL 4927592, at *2 (M.D. Fla. 2020) (slip op.) (orders restricting vacation rentals in response to COVID-19 involve no suspect classes and "are [therefore] subject to rational-basis review. And because [the orders are] in response to a public health emergency, [they] enjoy[] an 'especially broad' latitude.") (quoting *S. Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (2020)).

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

3130295 (E.D. Wash. June 12, 2020) (slip copy); *see* 2020 WL 3979661 (E.D. Wash. July 14, 2020) (order from the court denying preliminary and permanent injunction against Governor's Order closing certain businesses in response to the COVID-19 pandemic).

The Council determined that grocery employees covered by the Ordinance are workers essential to providing safe access to food during the pandemic, that hazard pay is essential to retaining these critical workers, and that hazard pay improves the financial ability of those employees to access the resources they need to stay safe and healthy. Ordinance, Section 1, F, JJ. Set against the context of the global pandemic, the City's police powers unquestionably reach the requirement to provide hazard pay to grocery employees.

### 3. Plaintiffs' allegation that the Ordinance was supported by a labor union does not negate its fundamental purpose to protect public health, safety, and welfare.

Plaintiffs assert that the Ordinance is "interest group driven legislation" for labor unions, including the United Farm and Commercial Workers ("UFCW"). Accordingly, Plaintiffs imply that the Ordinance is not legislation enacted to protect public safety, health, or welfare, and therefore does not survive constitutional scrutiny or NLRA preemption. *E.g.,* Complaint at ¶¶ 36,44. Plaintiffs have alleged that (1) many of their members have collective bargaining agreements with some of their employees (Complaint at ¶ 15), (2) UFCW has been active in seeking additional pay for grocery employees it represents (*id.* at ¶ 17), and (3) the Ordinance applies to large grocery stores that have some measure of unionization among their employees (*id.*). These assertions do not support an inference that the Ordinance, applicable to both union and non-union employers and employees, was special interest legislation masquerading as an exercise of the City's police power. This is particularly true in light of the Ordinance's plainly stated goals and externally supported findings explaining that the Ordinance is intended to serve the public interest in protecting grocery employees and ensuring safe access to food. Indeed, "in reviewing economic and social regulation [to determine if it is for a public purpose]… courts

1   properly defer to legislative judgment…." *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1,

2   22–23 (1977) (citing *East New York Savings Bank v. Hahn*, 326 U.S. 230 (1945)).

3          At best, Plaintiffs have alleged that their view of the appropriate response to the ills

4   addressed by the Ordinance was not adopted by the City.  This complaint is, at its heart, a

5   political one; Plaintiffs should "resort to the polls, not to the courts" to obtain the relief they

6   seek, rather than inviting this Court to supplant the City's legislative choices.  *Williamson v. Lee*

7   *Optical of Oklahoma Inc.*, 348 U.S. 483, 488 (1955) (quotation marks omitted) (quoting *Munn v.*

8   *People of State of Illinois*, 94 U.S. 113, 134 (1876)).

9      **B. The Ordinance, like other police power regulations generally applicable to the**
           **workplace, are not preempted by the NLRA.**

10

11          **1.    Valid exercises of the City's police powers are presumed not preempted.**

12          Plaintiffs' contention that the Ordinance is preempted by the NLRA is baseless.

13   Complaint at ¶¶ 23-31.  All federal preemption cases are guided by two core principles: (1) "the

14   purpose of Congress is the ultimate touchstone in every pre-emption case" and (2) "the

15   assumption that the State's historic police powers are not preempted" absent Congress' "clear

16   and manifest purpose" to preempt the exercise of those powers.  *Lusnak v. Bank of Am., N.A.*,

17   883 F.3d 1185, 1191 (9th Cir. 2018) (citations and internal quotation marks omitted).  Given the

18   States' traditional role in regulating workplace conditions, "[p]re-emption of employment

19   standards 'within the traditional police power of the State' 'should not be lightly inferred.'"

20   *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (quoting *Fort Halifax Packing Co. v.*

21   *Coyne*, 482 U.S. 1, 21 (1987).  This "approach is consistent with both federalism concerns and

22   the historic primacy of state regulation of matters of health and safety." *Medtronic, Inc. v. Lohr*,

23   518 U.S. 470, 485 (1996). The City's regulation of working conditions, through its police

24   powers, must be presumed not to be preempted.

25   ///

26   ///

**MOTION TO DISMISS– Page 10 of 24**
*Northwest Grocery Association et al. v. City of*
*Seattle* 2:21-cv-00142

1

**2.  Substantive state labor standards are not preempted by the NLRA.**

Federal protections for collective bargaining do not preempt local police power regulations of working conditions.  The NLRA has no express preemption clause. *Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 224 (1993). Rather, courts infer preemption of (1) laws that impair the National Labor Relations Board's primary jurisdiction to determine what activities are allowed or forbidden by the NLRA and (2) laws that regulate conduct, neither permitted nor prohibited by the NLRA, where the conduct nonetheless constitutes economic self-help for employers or employees.  *Metro Life Ins. Co.*, 471 U.S. at 748-749.  Plaintiffs have not, and cannot, allege that the Ordinance impairs the jurisdiction of the Board, as it does not establish forbidden or permitted collective bargaining activities.  *Id.* at 748; *see Wisconsin Dep't of Industry v. Gould, Inc.,* 475 U.S. 282, 286 (1986) (under the first prong of NLRA preemption, "[s]tates may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits" ).

Plaintiffs' allegations focus on an alleged impairment of an alleged "free-play of economic forces."  Complaint at ¶ 25 (citing *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976)).  The preemptive effect of the NLRA in this sense is based on 29 U.S.C. §§ 157-158, which is "concerned primarily with establishing an equitable *process* for determining terms and conditions of employment."  *Metro Life Ins. Co.*, 471 U.S. at 753 (emphasis supplied).  Indeed, to assess the scope of this type of preemption the Supreme Court noted that "[t]he evil Congress was addressing [under 29 U.S.C. §§ 157-158] was *entirely unrelated* to local or federal regulation establishing minimum terms of employment."  *Id.* at 754 (emphasis added).

Under the *Machinists* approach to NLRA preemption, the Supreme Court and the Ninth Circuit repeatedly have held that substantive state labor standards, applicable to union and non-union employers and employees, are not preempted by the NLRA.  *See, e.g., Fort Halifax*, 482

U.S. at 20-22; *National Broadcasting Co. v. Bradshaw*, 70 F.3d 69 (9th Cir. 1995); *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482 (9th Cir. 1996).  As the Supreme Court explained:

> [i]t never has been argued successfully that minimal labor standards imposed by other *federal* laws were not to apply to unionized employers and employees. See, *e.g., Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 737… (1981) [holding that wage rights under the FLSA apply to union members regardless of collective bargaining rights]. ….  Nor has Congress ever seen fit to exclude unionized workers and employers from laws establishing federal minimal employment standards.   We see no reason to believe that for this purpose [preemption] Congress intended state minimum labor standards to be treated differently from minimum federal standards.

*Metro Life Ins. Co.*, 471 U.S. at 755.  The Court found that "[m]inimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA. Nor do they have any but the most indirect effect on the right of self-organization established in the Act." *Id*.  Such labor standards are "not laws designed to encourage or discourage employees in the promotion of their interests collectively;" instead, laws, like minimum wage laws "are in part 'designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive' the mandated" benefit. *Id*. (quoting *Barrentine,* 450 U.S. at 739).

    *Fort Halifax* is particularly instructive.  There, the Court rejected an NLRA preemption challenge to a Maine law that required severance pay for workers terminated because of a plant closing.  482 U.S. at 4.  The employer argued that the law was preempted because the substantive requirement for severance pay undercut its ability to negotiate over a union demand for severance pay. *Id.* at 20.  The Court squarely rejected this contention, holding that the law provided protections to individual union and nonunion workers alike, and thus neither encouraged nor discouraged the collective-bargaining processes that are subject to the NLRA. *Id.* at 21-22; *see also Metro Life Ins. Co.*, 471 U.S. at 747-750 (rejecting an NLRA preemption challenge to a state law that mandated inclusion of mental health benefits in employer benefit plans on the same basis).  Ultimately, the *Fort Halifax* court concluded that "there is nothing in

**MOTION TO DISMISS– Page 12 of 24**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1    the NLRA . . . which expressly forecloses all state regulatory power with respect to those issues .

2    . . that may be the subject of collective bargaining." *Fort Halifax*, 482 U.S. at 21-22. Likewise

3    here, the Ordinance applies to union and non-union employees, and is therefore neutral toward

4    the bargaining process and not preempted by the NLRA.

5    **3.   State and local laws regulating rates of pay are not preempted by the NLRA.**

6    State and local laws regulating rates of pay are quintessential examples of state minimum

7    labor standards that are not preempted by the NLRA.  *See National Broadcasting Co.*, 70 F.3d at

8    70-71 (upholding a state law requiring premium pay for overtime hours and emphasizing that

9    "such minimum benefit protections have repeatedly survived *Machinists* preemption

10   challenges"); *Babler Bros., Inc. v. Roberts*, 995 F.2d 911 (9th Cir. 1993) (upholding a similar

11   premium pay law to *National Broadcasting Co.* in Oregon, concluding that the state was not

12   regulating the bargaining relationship); *see also Barrentine,* 450 U.S. at 745.

13   The Ninth Circuit has unequivocally held that local laws setting minimum compensation

14   standards are not preempted by the NLRA.  In  *Am. Hotel and Lodging Association v. City of Los*

15   *Angeles*, the Ninth Circuit held that a Los Angeles living wage ordinance was not preempted by

16   the NLRA, because the ordinance was a minimum labor standard that fell within the ambit of

17   state power.  834 F.3d 958, 963 (9th Cir. 2016).   It found that "by providing basic minimum

18   wage and time-off compensation, the ordinance altered the backdrop of negotiations, not the

19   *mechanics* of collective bargaining."  *Id.* (emphasis supplied).  The court held that "such

20   minimum labor standards affect union and nonunion employees equally, neither encouraging nor

21   discouraging…collective bargaining processes…[T]hese standards are not preempted." *Id.*

22   The City's Ordinance—like the Los Angeles living wage law in *Am. Hotel*—is not, as a

23   matter of law, preempted under the NLRA.  It is irrelevant to the NLRA preemption analysis that

24   impacted grocers may be subject to indirect pressure by the City's Ordinance because the law

25   gives workers something that they might otherwise have sought in bargaining.  *See National*

26

**MOTION TO DISMISS– Page 13 of 24**
*Northwest Grocery Association et al. v. City of*
*Seattle* 2:21-cv-00142

1   *Broadcasting Co.*, 70 F.3d at 72; *Am. Hotel*, 834 F.3d at 963. Ordinances may alter the context of

2   negotiations, and even weaken bargaining positions for employers. That is not enough to prompt

3   NLRA preemption.[11]

4          Plaintiffs cannot overcome the presumption against NLRA preemption under the City's

5   valid use of its police powers; and the Ordinance does not, as a matter of law, improperly

6   interject the City into the collective bargaining process. At its core, the Ordinance is a minimum

7   compensation law of general applicability.  The City's police power legislation is not preempted

8   by the NLRA, and Plaintiffs' claims should be dismissed.

9   **C. The Ordinance does not unconstitutionally impair Plaintiffs' members' contracts.**

10         Plaintiffs allege that the Ordinance is unconstitutional on the basis that it "substantially

11  interferes with [their m]embers' contracts, including its [*sic*] collective bargaining agreements

12  with its employees" and so violates Washington State and federal constitutional protections

13  against the impairment of contracts.  Complaint at ¶¶ 44, 48.  Because this is incorrect as a

14  matter of law, Plaintiffs fail to state a claim upon which relief may be granted.

15         **1.  Private contracts for labor do not supersede governmental protections of public safety, health, and welfare.**

16

17         As discussed at length above, the City properly exercised its police powers in enacting

18  the Ordinance.  Such an exercise of the City's authority to protect public safety, health, and

19  welfare cannot be swept aside by private contracts for labor.  As the Supreme Court held in the

---

[11] Plaintiffs cannot rely on *Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995) to support their preemption argument.  There, the Ninth Circuit held that the NLRA preempted a county ordinance that set prevailing wages solely by reference to a collective bargaining agreement.  *Id.* However, *Bragdon's* holding has been narrowly applied to its set of facts. *Associated Builders & Contrs. of S. Cal. v. Nunn*, 356 F.3d 979, 990, 991, fn. 8 (9th Cir. 2004) ("Bragdon must be interpreted in the context of Supreme Court authority and our other, more recent rulings on NLRA preemption."). The City's Ordinance does not dictate private employers' wages by exclusively tying them to a third-party collectively bargained agreement, so *Bragdon* has no application here.

---

**MOTION TO DISMISS– Page 14 of 24**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

seminal *Parrish* decision:  "[t]his power under the Constitution to restrict freedom of contract has had many illustrations. That it may be exercised in the public interest with respect to contracts between employer and employee is undeniable." *Parrish*, 300 U.S. at 392.  Even in 1937, courts applying this principle sustained police power statutes limiting hours worked, preventing the use of company scrip to pay employees, preventing limitations on liability for workplace injuries, and maintaining workers' compensation systems.  *Id.*, at 392-393 (collecting cases).

Indeed, the contracts clauses for the Washington State and federal constitutions[12] have long been interpreted to accommodate police power laws.[13]  "[T]he prohibition against any impairment of contracts is 'not an absolute one and is not to be read with literal exactness.'" *Tyrpak v. Daniels,* 124 Wash.2d 146, 151 (1994) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 428 (1934)).  The "governing constitutional principle" for contracts clause challenges is:

> when a widely diffused public interest has become enmeshed in a network of multitudinous private arrangements, the authority of the State "to safeguard the vital interests of its people," . . . is not to be gainsaid by abstracting one such arrangement from its public context and treating it as though it were an isolated private contract constitutionally immune from impairment.

*Hahn*, 326 U.S. at 232, 234 (quoting *Blaisdell*, 209 U.S. at 434).  Following this precept, the contract clause "prohibition must be accommodated to the inherent police power of the State," *Energy Reserves Group, Inc. v. Kan. Power and Light Co.,* 459 U.S. 400, 410 (1983),[14] safeguarding the vital interests of the people, because such police powers are "paramount to any

---

[12] U.S. Const., Art. I, §10 (prohibiting states from passing "any… law impairing the obligations of contracts…"); Wash. Const. Art. I, § 23 (providing that "[n]o… law impairing the obligations of contracts…" may be enacted).

[13] Washington courts interpret Wash. Const. Art. I, § 23 to provide identical protections to U.S. Const. Art. I, §10.  *In re Estate of Hambleton*, 181 Wash.2d 802, 830 (2014).

[14] *See Hambleton*, 181 Wash.2d at 830 (quoting *Energy Reserves*) (same).

1   rights under contracts between individuals." *Allied Structural Steel Co. v. Spannaus,* 438 U.S.

2   234, 241 (1978).

3        Set against the backdrop of public interest limitations on the private right of contract,

4   Plaintiffs fail to state a claim for a contracts clause violation.  The Supreme Court has been clear

5   that contracts clause analyses require a two-step process.  First, the plaintiff must meet a

6   threshold requirement to show a "substantial impairment" of their contracts caused by the

7   challenged law; without this impairment, their claim cannot survive.  *Energy Reserves*, 459 U.S.

8   at 411; *Spannaus*, 438 U.S. at 242.[15]  If a plaintiff shows substantial impairment of a contract,

9   they must also show that the challenged law has no "significant and legitimate" public purpose to

10  prevail, and that the method of adjusting the rights of the contracting parties is not appropriate to

11  that purpose.  *Energy Reserves*, at 411-412.  Here, Plaintiffs have not alleged a substantial

12  impairment of their contracts.  And, even if they had, the Ordinance reflects significant,

13  legitimate, public interest, justly addressed.

14       **2.  The Ordinance does not substantially impair any contract.**

15       Plaintiffs' members' contracts are not "substantially impaired" by the Ordinance as a

16  matter of law.  There can be no substantial impairment if the contract is for an "activity 'already

17  regulated in the particular [way] to which [the contracting party] now objects'" because the

18  contracting party "is deemed to have contracted 'subject to further legislation upon the same

19  topic.'"  *Margola Associates v. City of Seattle*, 121 Wash.2d 625, 653 (1993) *abrogated on other*

20  *grounds by Yim*, 194 Wash.2d 651 (alterations in the original) (quoting *Veix v. Sixth Ward Bldg.*

21  *& Loan Ass'n*, 310 U.S. 32, 38 (1940)); *see Energy Reserves*, 459 U.S. at 411 (quoting *Hudson*

22  *Water Co. v. McCarter*, 209 U.S. 349, 357 (1908)) ("[t]he Court long ago observed: 'One whose

23  rights, such as they are, are subject to state restriction, cannot remove them from the power of the

24

25  [15] *Optimer Int'l, Inc. v. RP Bellevue, LLC,* 151 Wash.App. 954, 965 (2009) (same).

26

**MOTION TO DISMISS– Page 16 of 24**
*Northwest Grocery Association et al. v. City of*
*Seattle* 2:21-cv-00142

State by making a contract about them'"). [16]  Plaintiffs' members' are already subject to extensive workplace regulations, [17] including wage regulations under the Fair Labor Standards Act (29 U.S.C. §§ 201 et seq.), the State Minimum Wage Act (Rev. Code Wash. 49.46 *et seq.*), and the Seattle Minimum Wage Ordinance (Seattle Mun. Code 14.19). *See, e.g., Albertson's, Inc. v. United Food & Commercial Workers Union, AFL-CIO & CLC*, 157 F.3d 758, 761 (9th Cir. 1998) (recognizing grocery employees' rights under the FLSA as distinct from their rights under a collective bargaining agreement).  Regardless of the contracts Plaintiffs' members have for labor, those contracts were entered into in the context of minimum compensation standards and are "subject to future legislation upon the same topic."  *Veix*, 310 U.S. at 38.  Plaintiffs fail to satisfy the threshold requirement of their claim, and so no relief may be granted.

### 3.   The Ordinance has a significant and legitimate public purpose, justly achieved.

Even if Plaintiffs had properly alleged that the Ordinance constitutes a substantial impairment to their members' contracts, there is no violation of the contract clauses, because the Ordinance has a significant and legitimate public purpose, accomplished by reasonable means.  Here, the Ordinance reflects a significant, legitimate, public interest;  both the City and Plaintiffs agree that the health and safety of grocery employees is essential to combatting the spread of

---

[16] *See Optimer*, 151 Wash. App. at 966 ("legislation does not unconstitutionally impair contractual obligations where the legislation constitutes an exercise of the police power in advancing a legitimate public purpose"); *see also* Section IV.A *supra*.

[17] Grocery stores "operat[e] in a heavily regulated industry" and so further workplace laws cannot be said to substantially impair their contracts.  *Energy Reserves*, 459 U.S. at 413 (natural gas producers did not have their contracts impaired because "State authority to regulate natural gas prices is well established" even though the State had never before regulated those prices); *see Margola Assocs*, 121 Wash.2d at 653 (holding the City's new restrictions on evictions did not violate the contracts clause because the the landlord tenant relationship was already regulated); *see also Gen. Offshore Corp. v. Farrelly*, 743 F. Supp. 1177, 1198 (D.V.I. 1990) (finding working conditions were heavily regulated as defined by *Energy Reserves*, because "[o]ccupational safety, collective bargaining, minimum wages, worker's compensation, and other areas of legislation have left few aspects of the workplace unregulated").

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

COVID-19, and that one way to address their health and safety is to ensure that they are paid hazard pay.  *See* Complaint at ¶¶ 2-4 (describing the critical role of grocery employees in combating the pandemic, grocery stores' payment of hazard pay, and an acknowledgement that grocery workers are essential to the pandemic response); *see also* Ordinance, Section 1, B,  F, W, X, GG, HH-JJ (identifying grocery employees as essential workers, who play a vital role in combating the pandemic and who deserve hazard pay).  The effort to protect workers and the public from a pandemic is the very definition of a public purpose.

Further, though no emergency is required (*Energy Reserves*, 459 U.S. at 412), the fact that the City is responding to an emergency, with temporary legislation, also forecloses Plaintiffs' challenge.  *See, e.g., Blaisdell*, 290 U.S. 444-447 (finding a Minnesota foreclosure moratorium did not violate the Contracts Clause because, *inter alia*, it was a response to the emergency created by the Great Depression, and it was temporary, tied to the duration of the emergency).

Finally, in analyzing the means of accomplishing this significant, legitimate purpose, "[u]nless the State itself is a contracting party . . .  courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."  *Id*. at 412-413;  *see U.S. Tr. Co. of New York*, 431 U.S. at 22-23 (same) (citing *Hahn*, 326 U.S. 230);[18] *see also Ass'n of*

---

[18] The Supreme Court aptly summarized the issue with invading legislative determinations of this kind in the *Hahn* case.  There, rejecting a contracts clause challenge to a state law forbidding foreclosures in response to the Great Depression (still in effect in 1944), the Court identified the many factual determinations it would be required to make about "not only the range and incidence of what are claimed to be determining economic conditions… but also to resolve controversy as to the causes and continuity of such [economic] improvements…."  *Hahn*, 326 U.S. at 234.  The Court properly recognized that "[m]erely to enumerate the elements that have to be considered shows that the place for determining their weight and their significance is the legislature not the judiciary."  *Id*.

**MOTION TO DISMISS– Page 18 of 24**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1  *Surrogates & Supreme Court Reporters Within City of New York v. State of N.Y.,* 940 F.2d 766,

2  771 (2nd Cir. 1991) ("legislation which impairs the obligations of *private* contracts is tested

3  under the contract clause by reference to a rational-basis test") (emphasis in the original); *see*

4  *also Chicago Bd. of Realtors, Inc. v. City of Chicago,* 819 F.2d 732, 737 (7th Cir. 1987) (where

5  government is not a party, courts assess whether the government adopted a law that it "rationally

6  could have believed would lead to improved public health and welfare").  As discussed below,

7  there is no question that the Ordinance's chosen method of addressing the public purpose

8  satisfies the rational basis test.  *See* Section IV.D.2, *infra*.  Providing hazard pay to grocery store

9  employees compensates employees for their increased risk of infection, improves retention of

10  these employees, ensures that they can better afford the resources they need to stay healthy and

11  prevent transmission, and helps ensure continued community access to food and other essential

12  goods.  *Id.*  In the context of the current global pandemic, Plaintiffs' failure to show "a plain,

13  palpable invasion" of constitutional rights, shown "beyond all question" dooms this allegation.

14  *Jacobson*, 197 U.S. at 30

15      **D. The Ordinance, rationally related to proper legislative goals, does not violate equal**
16         **protection guarantees.**

17      Plaintiffs' contention that the Ordinance violates constitutional equal protection

18  guarantees is meritless.  Complaint at ¶¶ 32-41. The Ordinance does not employ suspect

19  classifications, and, contrary to Plaintiffs' contentions, it does not burden fundamental rights. As

20  such, it is subject to the highly deferential "rational basis" standard—a hurdle it easily clears.

21      **1. The Ordinance is subject to, at most, a rational basis review.**

22      Plaintiffs do not contend, nor could they, that the Ordinance employs suspect

23  classifications. *See generally* Complaint.  Plaintiffs instead attempt to invoke strict scrutiny of

24  their equal protection challenges by alleging that the Ordinance impinges on fundamental rights

25  in burdening Plaintiffs' right to contract. *Id*. at ¶ 35.  Not so.

26      For purposes of an equal protection analysis, fundamental rights include such deeply

**MOTION TO DISMISS– Page 19 of 24**
*Northwest Grocery Association et al. v. City of*
*Seattle* 2:21-cv-00142

cherished rights as the right to vote and the right to procreate. *See Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 n. 3 (1976) (*per curiam*) (citing *Roe v. Wade*, 410 U.S. 113 (1973) (right of uniquely private nature); *Bullock v. Carter*, 405 U.S. 134 (1972) (right to vote); *Shapiro v. Thompson*, 394 U.S. 618 (1969) (right to interstate travel); *William v. Rhodes*, 393 U.S. 23 (1968) (First Amendment Rights); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942) (right to procreate)).

In contrast, "freedom of contract is a qualified, and not an absolute, right[;]" "there is no absolute freedom to do as one wills or to contract as one chooses." *Parrish*, 300 U.S. at 392 (1937); *accord Blaisdell*, 290 U.S. at 428 ("prohibition [on impairment of contracts] is not an absolute one and is not to be read with literal exactness like a mathematical formula"); *Nebbia v. People of State of New York*, 291 U.S. 502, 523 (1934) ("neither property nor contract rights are absolute, for government cannot exist if the citizen may at will use his property to the detriment of his fellows"). Even if courts recognized "a fundamental right to be free from unreasonable governmental interference with . . . contracts," Complaint at ¶ 35, the Ordinance interferes with no such right, as explained in section IV.C, *supra*.

The City is not aware of a single case where a court has applied strict scrutiny to an equal protection claim based on a purported interference with contracts, and at least one circuit court has rejected such an invitation. *United States v. Williams*, 124 F.3d 411, 422 (3rd Cir. 1997) (citing *Williamson,* 348 U.S. at 489) (holding that strict scrutiny in equal protection context was not "justified on the ground that [the challenged] provision affects the defendants' right to enter into contracts"); *see also Etere v. City of New York,* No. 08-CV-2827, 2009 WL 498890 at *2 (S.D.N.Y. Feb. 24, 2009) ("[t]o the extent that Plaintiff relies on that portion of Article I, section 10 prohibiting laws impairing the obligation of contracts, he evokes the language in *Lochner v. New York,* 198 U.S. 45 (1905). The Court now uses rational basis review for economic regulation, however, and no longer views liberty of contract as a fundamental right").

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1    Instead, "the proper test for judging the constitutionality of statutes regulating economic

2    activity challenged on equal protection grounds is whether the legislation bears a rational

3    relationship to a legitimate state interest." *Jackson Water Works, Inc. v. Public Utilities Comm'n*

4    *of State of Cal.*, 793 F.2d 1090, 1093-94 (9th Cir. 1986).  In cases challenging minimum

5    compensation legislation on equal protection grounds, the Ninth Circuit has routinely applied

6    rational basis review.  *E.g., Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 407 (9th Cir.

7    2015) (recognizing that rational basis review applied to an equal protection challenge to the

8    City's minimum wage ordinance and affirming district court's application of rational basis

9    standard, upholding the law); *RUI One Corp.*, 371 F.3d at 1154 (applying rational basis review

10   to an equal protection claim, notwithstanding a concurrent Contract Clause claim, because "this

11   case involves social and economic policy and neither targets a suspect class nor impinges upon a

12   fundamental right") (quotation marks omitted).

13   Here, the proper test is even more deferential to legislative choices.  The Ordinance was

14   enacted in the context of a global health crisis.  Under *Jacobson*, in the absence of "a plain,

15   palpable invasion" of constitutional rights, shown "beyond all question" Plaintiffs cannot prevail.

16   *Jacobson*, 197 U.S. at 30; *see* Section IV.A.2. *supra*.

17   **2.  The Ordinance easily survives review.**

18   It is beyond dispute that the Ordinance satisfies rational-basis review—the "most relaxed

19   and tolerant form of judicial scrutiny under the Equal Protection Clause." *Dallas v. Stanglin*, 490

20   U.S. 19, 26 (1989).[19] As the Supreme Court has recognized, "[s]ocial and economic legislation"

21   that does not concern a suspect class or fundamental right

22

23   [19] Rational basis review "is a paradigm of judicial restraint." *F.C.C. v. Beach Communications,*

24   *Inc.*, 508 U.S. 307, 314 (1993). "The Constitution presumes that, absent some reason to infer
     antipathy, even improvident decisions will eventually be rectified by the democratic process and

25   that judicial intervention is generally unwarranted no matter how unwisely we may think a
     political branch has acted." *Vance v. Bradley*, 440 U.S. 93, 97 (1979) (footnote omitted).

26

**MOTION TO DISMISS– Page 21 of 24**
*Northwest Grocery Association et al. v. City of*
*Seattle* 2:21-cv-00142

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1
2
3

> carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality. .... [S]ocial and economic legislation is valid unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational.

4
5

*Hodel v. Indiana*, 452 U.S. 314, 331-32 (1981).  Under this deferential standard, a law will

6

survive scrutiny "if there is any reasonably conceivable state of facts that could provide a

7

rational basis for the classification." *F.C.C.*, 508 U.S. at 313.  "It is entirely irrelevant for

8

constitutional purposes whether the conceived reason for the challenged distinction actually

9

motivated the legislature." *Id.* at 315.  Any plausible basis suffices, *id.*, even if it did not

10

underlie the legislative action, and even if no party raised that basis in its arguments. *Kadrmas*

11

*v. Dickinson Pub. Schs.*, 487 U.S. 450, 463 (1988).[20]

12

   Legislatures are given considerable latitude where they "must necessarily engage in a

13

process of line drawing." *F.C.C.*, 508 U.S. at 313 (internal quotation marks and citation

14

omitted).  The legislature's placement of those "who have an almost equally strong claim to

15

favored treatment. . . on different sides of the line" does not offend equal protection guarantees.

16

*Id.* at 315-16 (internal quotation marks and citation omitted).  "Evils in the same field may be of

17

different dimensions and proportions, requiring different remedies.  Or so the legislature may

18

think.  Or the reform may take one step at a time, addressing itself to the phase of the problem

19

which seems most acute to the legislative mind." *Williamson*, 348 U.S. at 489.

20

   The Ordinance readily survives rational-basis scrutiny, particularly in the context of the

21

current crisis.  Providing hazard pay to grocery store employees compensates workers who are

22

23
24

---

[20] Under rational basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C.*, 508 U.S. at 313.

25
26

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1   highly vulnerable to health and safety risks for the risk they incur, improves retention of these

2   workers, ensures that these workers can better afford the resources they need to stay healthy and

3   prevent transmission, and helps ensure continued community access to food and other essential

4   goods.  The legislature's decision to exclude employers of other essential workers is of no

5   moment.  *See RUI One Corp.*, 371 F.3d at 1155 (permitting legislature to exclude "similar

6   businesses elsewhere in the City" from minimum wage requirements because "[s]uch legislative

7   decisions are virtually unreviewable, since the legislature must be allowed leeway to approach a

8   perceived problem incrementally") (internal quotation marks and citations omitted).

9
10   **E.  The Washington Constitution's Privileges and Immunities Clause provides no separate basis for the Complaint.**

11   Plaintiffs likewise fail to state a claim under the Washington Constitution's Privileges

12   and Immunities Clause.  Complaint at ¶ 40.  Article I, Section 12 of the Washington Constitution

13   provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation

14   other than municipal, privileges or immunities which upon the same terms shall not equally

15   belong to all citizens or corporations."  Wash. Const. Art I, § 12.  This provision generally

16   provides the same protections, and requires the same analysis, as the federal Equal Protection

17   Clause. *Martinez-Cuevas*, 196 Wash.2d at 518-19.  An independent analysis is undertaken "only

18   where a law implicates a 'privilege or immunity' as defined in our early cases distinguishing the

19   fundamental rights of state citizenship." *Id.*

20   "Not every legislative classification constitutes a 'privilege' within the meaning of

21   article I, section 12 but only those where it is, in its very nature, such a fundamental right of a

22   citizen that it may be said to come within the prohibition of the constitution, or to have been had

23   in mind by the framers of that organic law." *Ockletree v. Franciscan Health Sys*, 179 Wash.2d

24

25

26

**MOTION TO DISMISS– Page 23 of 24**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

769, 778 (2014).[21]  To the City's knowledge, no court has ever found that a purported

interference with employment contracts constitutes impairment of a fundamental right.  Because

Washington courts interpret the contract clauses in the state and federal constitutions as

providing identical protections, *Hambleton*, 181 Wash.2d at 830, this Court should hold that an

ordinance burdening private contracts does not rise to the level of implicating a fundamental

right.  *See supra*, sections IV.C-D.  Accordingly, this Court need not conduct an independent

analysis and may dismiss the Complaint, relying on the rational basis test described in Section

IV.D, *supra*. *See Martinez-Cuevas*, 196 Wash.2d at 518-19.[22]

## V. CONCLUSION

Plaintiffs fail to state any claim upon which this Court may grant relief.  In the context of

the ongoing public health emergency, the City exercised its police powers to protect the public

health, safety, and general welfare by requiring grocery stores to pay hazard pay to their

employees.  The City's actions in protecting the public interest supersede Plaintiffs' members'

contracts.  Plaintiffs' desire for a different legislative outcome does not establish a violation of

any federal law or constitutional protection.  All of Plaintiffs' claims fail as a matter of law; this

Court should dismiss the Complaint in its entirety with prejudice.

---

[21] As the Washington Supreme Court has explained, if the definition of a privilege or immunity were construed more broadly, courts "could be called on to second-guess the distinctions drawn by the legislature for policy reasons nearly every time it enacts a statute." *Ockletree,* 179 Wash.2d at 779. A wide array of statutory exemptions could come under attack, from property tax exemptions based on age, disability, or veteran status, to exemptions from emission control inspections for farm vehicles and hybrid vehicles. *Id.*
[22] Should the Court hold that the Ordinance implicates a fundamental right, the Ordinance would still satisfy the requirements of Article I, section 12 because there was a "reasonable ground" for the distinction between grocery employers and other businesses. *Martinez-Cuevas*, 196 Wash.2d at 519, 523. At the very least, it is beyond dispute that providing additional pay to grocery workers helps compensates these workers for the well-documented hazards they face. *See*, *generally*, Ordinance, Section 1.

**MOTION TO DISMISS– Page 24 of 24**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

Respectfully submitted this 18th day of February, 2021.

CITY OF SEATTLE

PETER S. HOLMES
Seattle City Attorney

By      *s/ Jeremiah Miller*

Jeremiah Miller, WSBA # 40949
Assistant City Attorney
Phone: 206-256-5495
Fax:  206-684-8284
jeremiah.miller@seattle.gov

Erica Franklin, WSBA #43477
Assistant City Attorney
Phone:  206-386-0083
Fax:  206-684-8284
erica.franklin@seattle.gov

Derrick De Vera, WSBA #49954
Assistant City Attorney
Phone:  206-733-9309
Fax:  206-684-8284
derrick.devera@seattle.gov

Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

*Attorneys for Defendant City of Seattle*

**MOTION TO DISMISS**
*Northwest Grocery Association et al. v. City of Seattle* 2:21-cv-00142