The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| NORTHWEST GROCERY ASSOCIATION, an Oregon non-profit organization, the WASHINGTON FOOD INDUSTRY ASSOCIATION, a Washington non-profit corporation,<br><br>     Plaintiffs,<br>v.<br><br>CITY OF SEATTLE, a charter municipality,<br><br>     Defendant. | No. 2:21-cv-00142-JCC<br><br>REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

**STOEL RIVES** LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. LEGAL STANDARD ......................................................................................................... 1

III. ARGUMENT ..................................................................................................................... 2

    A.    The City's Opposition Fails to Establish that the Ordinance will Escape NLRA Preemption. ............................................................................................... 2

    B.    The City Cannot Justify the Ordinance's Disparate Treatment of Grocers and the Substantial Impairment of their Existing Contracts ................................... 7

    C.    Plaintiffs have Shown Irreparable Harm................................................................ 10

    D.    The Balance of the Equities and Public Interest Favor an Injunction................... 12

IV. CONCLUSION................................................................................................................ 12

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Structural Steel Co. v. Spannaus*,
    438 U.S. 234 (1978)......................................................................................................9

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,
    119 F. Supp. 3d 1177 (C.D. Cal. 2015), *aff'd, AHLA*, 834 F.3d 958.........................2

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,
    834 F.3d 958 (9th Cir. 2016)..................................................................................2, 3, 5

*Am. Trucking Ass'ns v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009)....................................................................................10, 11

*Angelotti Chiropractic, Inc. v. Baker*,
    791 F.3d f1075 (9th Cir. 2015) ....................................................................................10

*Associated Builders & Contractors of Cal. Cooperation Comm., Inc. v. Becerra*,
    231 F.Supp.3d 810 (S.D. Cal. 2017) .............................................................................5

*Chamber of Com. Of U.S. v. Bragdon*,
    64 F.3d 497 (9th Cir. 1995)...............................................................................3, 5, 6, 7

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)........................................................................................................1

*Energy Reserves Group v. Kansas Power and Light Co.*,
    459 U.S. 400 (1983)...................................................................................................8, 10

*Fort Halifax Packing Co. v. Coyne*,
    482 U.S. 1 (1987)..........................................................................................................5

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905).........................................................................................................8

*Lewis v. Casey*,
    518 U.S. 343 (1996)......................................................................................................1

*Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission*,
    427 U.S. 132 (1976).......................................................................................................2

*Los Angeles Memorial Coliseum Commission v. National Football League*,
    634 F.2d 1197 (9th Cir. 1980).....................................................................................11

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

ii

*Nat'l Ass'n of Wheat Growers v. Zeise*,
   309 F. Supp. 3d 842 (E.D. Cal. 2018) ............................................................................. 12

*Nat'l Broadcasting Co. v. Bradshaw*,
   70 F.3d 69 (9th Cir. 1995) ................................................................................................ 5

*RUI One Corp. v. City of Berkeley*,
   371 F.3d 1137 (9th Cir. 2004) ...................................................................................... 8, 9

*Sampson v. Murray*,
   415 U.S. 61 (1974) .......................................................................................................... 12

**Statutes**

Ordinance Section 100.010 .......................................................................................................... 3

Ordinance Section 100.015.A.1 ................................................................................................... 3

Ordinance Section 100.025 .......................................................................................................... 2

Ordinance Section 100.025.A.1-2 ................................................................................................ 4

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

iii

## I. INTRODUCTION

Essential workers, as a class, have worked harder than most this year. But the City's attempt to mandate a reward for these workers is both unfair and contrary to law. The City's unprecedented "hazard pay" ordinance (the "Ordinance") compels select private grocers to increase compensation by $4 per hour—regardless of the starting base pay. The Ordinance will do nothing to fight the "critical public health threat" it claims to address. It was enacted because the Council thought—wrongly—that grocers could afford it and that these specific workers received it in the first phase of the pandemic. The Ordinance does nothing to protect workers. In fact, two Seattle stores have decided to close as a result of the Ordinance, displacing 110 workers.

The City mischaracterizes it as a "minimum labor standard," hoping this court will analyze the Ordinance as a minimum wage law. If this is a minimum wage law, the term has lost all meaning. This is a mandatory reset of all existing salaries, many of which were the product of collective bargaining, and set by contract. Because it unlawfully interferes with collective bargaining, the Ordinance is preempted by the NLRA. The Ordinance also plainly interferes with the Grocers' contracts, while permitting other businesses to set wages without government interference. For this reason, the ordinance violates the Equal Protection clause as well.

## II. LEGAL STANDARD

The Grocers set forth the applicable legal standard in its moving papers. The City's argument that the Grocers must meet a higher standard for "imminent harm" is wrong. (Defendant's Opposition to Motion for Preliminary Injunction ("Opp.") 7.) *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) holds that restraint is appropriate when injunctions are sought against "state officers *engaged in the administration of the State's criminal laws…*[.]" *Id.* at 96 (emphasis added). There is no such concern here. *Lewis v. Casey,* 518 U.S. 343 (1996) is similarly irrelevant. (Opp. at 7.) It addressed whether direct judicial oversight of State prisoners' access to courts. *Lewis*, 518 U.S. at 392.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

S<small>TOEL</small> R<small>IVES</small> LLP
A<small>TTORNEYS</small>
600 U<small>NIVERSITY</small> S<small>TREET</small>, S<small>UITE</small> 3600, S<small>EATTLE</small>, WA  98101
T<small>ELEPHONE</small> 206.624.0900

1

## III.  ARGUMENT

**A.  The City's Opposition Fails to Establish that the Ordinance will Escape NLRA Preemption.**

The City's Ordinance is preempted as an impermissible attempt to dictate the mechanics and outcome of collective bargaining. In *Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976) ("*Machinists*"), the Supreme Court recognized that the NLRA requires certain conduct to remain "unregulated because [it must be] left 'to be controlled by the free play of economic forces.'" *Id*. at 40 (citation omitted). The Court held that state and local laws are therefore preempted where they "attempt[] to influence the substantive terms of the collective-bargaining agreements." *Id.* at 153. In its opposition, the City wrongly contends that *Machinists* preemption does not apply to the Ordinance, because any "[s]ubstantive state labor standards, applicable to union and non-union employees, form the backdrop for bargaining, and are therefore not preempted by the NLRA." (Opp. 12.) But that is not the law. While minimum labor standards that provide a mere backdrop for collective bargaining are consistent with the NLRA, state and local labor laws that effectively dictate the outcome of the collective bargaining process are preempted. *See Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958, 964-65 (9th Cir. 2016) ("*AHLA*")

Here, the City's Ordinance ties the Grocers' hands and constrains bargaining on all compensation terms. Despite the City's efforts to recast the Ordinance as a "minimum wage," it does not set the stage for bargaining. It displaces it entirely. Unlike a true minimum wage, the Ordinance does not establish a floor for the lowest paid workers; rather, it is a mandatory fixed-wage *supplement* that applies equally to the lowest and highest-paid workers. It requires a $4/hour increase applied to all wage grades while—*by its clear terms*—outlawing any modification that could reduce the employee's compensation. Ordinance Section 100.025. The Ordinance is precisely the "extreme case [where its] substantive requirements [are] so restrictive as to virtually dictate the results of the collective bargaining and self-organizing process," and thus *Machinists* preemption applies. *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177,

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

2

1187 (C.D. Cal. 2015), *aff'd, AHLA*, 834 F.3d 958 (quoting *Chamber of Com. Of U.S. v. Bragdon*, 64 F.3d 497, 501 (9th Cir. 1995) ("*Bragdon*").[1]

Critically, the Ordinance effectively prohibits any collective bargaining by the Grocers to mitigate resulting increased labor costs. First, Section 100.010 defines "Compensation" broadly to include "salaries, wages, tips, service charge distributions, overtime, commissions, piece rate, bonuses, rest breaks, promised or legislatively required pay or paid leave, and reimbursement for employer expenses." In other words, "Compensation" includes the full landscape of terms that are the subject of collective bargaining. The Ordinance then sets forth an absolute prohibition on employers, "as a result of this ordinance going into effect, tak[ing] steps to reduce employee compensation so as to prevent, in whole or in part, employees from receiving hazard pay at a rate of four dollars per hour." Ordinance Section 100.015.A.1. By its clear terms, the Ordinance forecloses Grocers and unions from collectively bargaining bonus structures, commission rates, overtime, paid leave, or any other Compensation term that could help to mitigate the immediate and drastic fiscal impact of the Ordinance. Despite the City's assertion to the contrary, the Ordinance, does, in fact outlaw any modification that could reduce employee compensation in any way, thereby taking every one of those terms off the negotiating table. Such a law can hardly provide a "'backdrop' for negotiations" because it prohibits any negotiations on the subject at all. *AHLA*, 834 F.3d at 963 (citation omitted).

The City offers no examples of ways in which Grocers could collectively bargain to mitigate costs in response to the Ordinance—because there are none. Instead, the City suggests

---

[1] The Opposition dedicates significant discussion to the purpose of minimum wage laws and to proving it has the police power to establish minimum labor standards. However, Plaintiffs do not dispute that the City may exercise police powers to enact minimum labor laws. Nor do Plaintiffs "misunderstand[]" the purpose of those laws, as the City contends; of course minimum wage laws are designed to further health and safety (which also has the effect of lessening the burden on public services). (Opp. 10.) Rather, Plaintiffs dispute that the Ordinance constitutes a "minimum wage" at all. *See Bragdon*, 64 F.3d at 503 ("[U]sual exercise of police power…normally seeks to assure that a minimum wage is paid to all employees within the county to unduly impos[e] on public services."). And Plaintiffs, in accordance with precedent, assert that when enacting such ordinances, the City may not exercise that power in a way that impinges upon the operation of the NLRA. *Id.* The question is not whether the City exercised its otherwise permissible police power in passing the Ordinance, but rather whether in exercising that power, it passed a law so restrictive that the effect was to influence substantive terms of collective-bargaining agreements.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

3

that the employers could respond by reorganizing operations or by changing their business model. (Opp. 10.) The City misses the point. Whether or not an employer can restructure its business independent of collective bargaining is irrelevant to the NLRA preemption analysis. Where the Grocers are precluded from utilizing *any* component of compensation as a trade-off or bargaining-chip, the Ordinance strips employers of a fundamental bargaining tool, impedes on the bargaining process, and unlawfully dictates substantive outcomes of collective bargaining between the Grocers and their employees. Under *Machinists* preemption, the NLRA prohibits state and local governments from restricting such "weapon[s] of self-help" in order to allow tactical bargaining decisions "to be controlled by the free play of economic forces." *Machinists*, 427 U.S. at 140, 146. Accordingly, the Ordinance is preempted.[2]

It is also irrelevant that PCC Community Markets ("PCC") and Trader Joe's happened to offer hazard pay prior to the Ordinance, or bargained with their Unions after its enactment. See (Opp. 11.) PCC and Trader Joe's—like all other Grocers covered by the Ordinance—lost all ability to collectively bargain for something different for their workers in Seattle. The purported "offsets" touted by the City for voluntarily provided hazard pay are illusory; for those employers who had already offered workers hazard pay, the Ordinance supplants it with a mandated $4 supplement. *Id.*; Ordinance Section 100.025.A.1-2.

The City points to PCC, which bargained with its union to offer curbside pickup, safety provisions, quarantine pay and time off for employees who are diagnosed with Covid-19, as an example of bargaining that can occur against the backdrop of the Ordinance. (Opp. 14.) The City's analogy to PCC's efforts is critically flawed. First, each of these terms incurs *additional* costs to the employer, and do not reflect collective bargaining to mitigate the fiscal impact of the Ordinance. Second, once the Ordinance became effective, PCC was restricted from offering

---

[2] (*See* Opp., Attachment A at 6-8 (observing, if the ordinance at issue restricted employers from reducing compensation in any way to account for the mandatory hazard pay, it would "affect[] the bargaining process in a much more invasive and detailed fashion than the isolated statutory provisions of general application" that have withstood preemption challenges).

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

4

generous quarantine or sick pay *in exchange* for less hazard pay. Any employer already bound by a collective bargaining agreement has no such flexibility with wages and compensation packages.

The Ordinance not only establishes a mandatory wage supplement, it also cements every term of an employer's existing bargained-for compensation package as the floor below which the employer cannot go. Because the City's Ordinance directs the outcome for this entire category of collective-bargaining terms, it is preempted. The Supreme Court "has clearly held that state legislation, which interferes with the economic forces that labor or management can employ in reaching agreements, is preempted by the NLRA because of its interference with the bargaining process. *Associated Builders & Contractors of Cal. Cooperation Comm., Inc. v. Becerra*, 231 F.Supp.3d 810, 820 (S.D. Cal. 2017) (quoting *Bragdon*, 64 F.3d at 501).

Each of the substantive labor standards that have found not to be preempted by the NLRA, are distinguishable. In *AHLA*, relied on by the City as a purported analog (Opp. 12), at issue were a series of hotel wage laws, including a preliminary wage ordinance that established a "minimum wage (a total cash minimum wage of $12.28 per hour as of 2014)," and an expanded $15.37 minimum wage for hotels with 150 or more rooms. 834 F.3d at 961. Significantly, both minimum wage ordinances included opt-out provisions for hotels covered by collective bargaining agreements and hardship waivers for employers to avoid layoffs or closures. *Id*. at 961-62. Because the ordinances were not "so restrictive as to virtually dictate the results of the contract" and merely provided a "backdrop" for the parties' negotiations, the Ninth Circuit held they were not preempted. *Id*. at 964-65 & n.5; *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 22 (1987) (upholding a law that was only imposed in the absence of a collective-bargaining agreement); *Nat'l Broadcasting Co. v. Bradshaw*, 70 F.3d 69, 69 (9th Cir. 1995) (upholding a law that provided an express carve-out for workplaces "covered by the terms of a collective bargaining agreement").

The City attempts to discard the most analogous authority—the Ninth Circuit's decision in *Bragdon*—by limiting it to one precise fact of that case. Specifically, the City suggests that *Bragdon* is not controlling because the ordinance there set prevailing wages by averaging collectively-bargained wages from third parties, whereas the City's Ordinance does not peg

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA  98101
TELEPHONE 206.624.0900

5

wages to a third-party agreement. (Opp. 12-13.) However, *Bragdon* is not so narrow. The City's attempt to limit it fails.

In *Bragdon*, like here, a wage ordinance was narrowly targeted at particular workers in a particular industry: "certain types of private industrial construction projects" in Contra Costa County "costing over $500,000." 64 F.3d at 498. The ordinance's strict terms were particularly intrusive because they "affect[ed] not only the total of the wages and benefits to be paid, but also the division of the total package that is paid in hourly wages directly to the worker and the amount paid by the employer in health, pension, and welfare benefits for the worker," thus "plac[ing] considerable pressure on the contractor and its employees to revise the labor agreement." *Id*. at 502. Like the Ordinance at issue here, the ordinance there restricted an employer's ability to negotiate compensation packages; "if the employer and the workers [had] agreed to a total wage and benefit package that [was] equivalent to the total of the prevailing wage, but allocate[d] more to benefits and less to direct wages, this would not comply with the Ordinance." *Id.* Those features distinguished the ordinance from "the isolated statutory provisions of general application approved in" other NLRA preemption cases. *Id*. at 502-503. Because the ordinance "virtually dictate[d] the results of" collective bargaining, the Court held it preempted. *Id*. at 501. For the same reason, the City's Ordinance here likewise is preempted.

Although not controlling, the City also attempts to mute any persuasive effect of the *California Grocers Association* ("CGA") Order by dismissing its reasoning as inconsistent with precedent. Specifically, the Court in CGA suggested that *Machinist* preemption might apply to hazard pay ordinances that prohibit bargaining on any compensation term (Opp., Attachment A at 8); the City claims that preemption in the hazard pay cases would permit unions and employers to exempt themselves from labor standards they disfavored, and would improperly preference an employer's contracts over the public interest (Opp. 15). However, the City misunderstands the CGA Order, which in no way suggests that unions and employers can shield themselves from true minimum wage laws. To the contrary, the Court acknowledged the power of governments to pass minimum labor standards that do not run afoul of the NLRA. (Opp., Attachment A at 6.)

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

6

The CGA Order suggests that the power of state and local governments to regulate labor standards is not unfettered. This is consistent with a fundamental concern expressed by the Court in *Bragdon*, that "precedent allowing this interference with the free-play of economic forces could…redirect efforts of employees not to bargain with employers, but instead, to seek minimum wage and benefit packages with political bodies," which would in turn prompt "defensive action by employers to seek caps on wages…justified as an exercise of police power on community welfare grounds." 64 F.3d at 504. The *Bragdon* Court was concerned that local and state governments will "substitutes the free-play of political forces for the free-play of economic forces that was intended by the NLRA." *Id*. And these same fundamental concerns are implicated by the Ordinance here.

The Ordinance is not an ordinary minimum labor standard. It is a mandated wage supplement and an absolute restriction on compensation negotiation, preempted by the NLRA., Plaintiffs are likely to prevail on the merits.

### B. The City Cannot Justify the Ordinance's Disparate Treatment of Grocers and the Substantial Impairment of their Existing Contracts

The Grocers are also likely to demonstrate the Ordinance is unconstitutional. The City's opposition devotes most of its attention to the contention that the Ordinance's need only satisfy rational basis review. The City is wrong. But even if the City were right, its opposition reveals a still more fundamental flaw: the lack of any rationale that might support the disparate treatment set forth in the Ordinance. While the City repeats the health and economic purposes asserted in the Ordinance itself, the City's opposition cannot explain how the Ordinance advances those goals. The Ordinance thus cannot survive any level of constitutional scrutiny.

The City asserts that the wage ordinance is a legitimate exercise of its police power to regulate working conditions, and continues to assert that the Ordinance somehow protects the public against disease. The Ordinance does not regulate working conditions, which could theoretically help mitigate COVID-19. Instead, the Ordinance regulates wages in an unprecedented manner. *Every single case* cited by the City that supports the notion that the City can "regulate wages" was decided in the context of a minimum or living wage—a baseline wage

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

7

that must be paid to all workers to support a basic level of subsistence. *See RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004). There is no basis for the City's claim that the wage supplement is a legitimate exercise of its police power.

The City's opposition is similarly devoid of any basis for the suggestion that the Ordinance should be analyzed under the *Jacobson v. Massachusetts* framework, which held that a mandatory smallpox vaccination law need not yield to individual religious liberty. 197 U.S. 11, 39 (1905). The framework might be appropriate if the Ordinance could mitigate the impacts of the pandemic. But even if the *Jacobson* framework were appropriate, the City's Ordinance simply does not warrant heightened deference. Pursuant to *Jacobson*, the courts afford deference to public health measures if they meet all four standards that comprise the floor of constitutional protections: 1. necessity; 2. reasonable means; 3. proportionality; and 4. harm. 197 U.S. at 27-29. Here, a $4 mandated wage increase for grocery workers is not a necessary response to the public health threats of Covid-19 (whereas, requiring masks, by contrast, may be); the wage mandate is not reasonable, as it does nothing to stop the spread of the disease; and it inflicts harm on grocery retailers and the food supply chain. The Ordinance deserves no deference.

In its opposition, the City does not dispute the basic framework for adjudicating an Equal Protection challenge such as Plaintiffs' here. In particular, it acknowledges that legislation that "impermissibly interferes with the exercise of a fundamental right" must receive heightened scrutiny. (Opp. 16.) The City further acknowledges that economic regulation "unconstitutionally impairs a contract if it 'substantially impairs' a contract." (Opp. 18.) But the City argues that there could be no substantial impairment of the Grocers' contracts because the Ordinance is a "continuation of pre-existing regulation," claiming that the Ordinance is a mere variation on Seattle's minimum-wage laws. *Id.* This argument ignores the plain facts of the Ordinance, and makes the strained argument that the Ordinance is "very similar" to the City's minimum wage law. *Id*. The City cannot reasonably claim that that the Grocers should have expected the City to impose mandatory hazard pay because Grocers are subject to "extensive workplace regulation." This argument is derived from *Energy Reserves Group v. Kansas Power and Light Co.*, 459 U.S. 400, 411 (1983), which endorsed the notion that price controls that impacted existing contracts

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

8

should have been anticipated. Grocery stores are not subject to the same degree of regulation as energy companies brokering contracts with public utilities. In fact, the Grocers are not subject to any more extensive regulation than any other business. There is no basis to suggest that grocers should have anticipated this type of novel wage regulation, or that its sudden enactment freezing collective bargaining on compensation does not substantially impair Plaintiffs' labor contracts.

The Grocers' contracts with their employees have been materially modified by the Ordinance. Contrary to the City's argument, *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978) (*"Spannaus"*) is precisely on point. As in *Spannaus*, the Grocers set the original terms of the employment agreements by contract, and employers relied heavily and reasonably on those terms. The Ordinance materially altered the key term of an employment contract: compensation—in many cases by 25-35%. While employers may reasonably anticipate an increase in minimum wage or minimum sick leave or paid time off requirements, none could anticipate an across the board wage increase of the magnitude imposed by this Ordinance. In *Spannaus*, the Court held that the law that disrupted the contracting parties' expectations regarding a key term (the vesting schedule of a pension plan) constituted a material impairment.

To escape heightened scrutiny, the City wrongly accuses the Grocers of attempting an end run around modern day contracts clause jurisprudence. The Grocers are doing nothing of the sort. The Grocers contend that they have a fundamental right, protected by the state and federal Contract Clauses, not to have the City alter the terms of its *existing* contracts. Long after the close of the *Lochner* era, the Supreme Court has continued to recognize that state interference with existing contracts implicate very different concerns than state regulation of the purported freedom to make contracts. *E.g.*, *Spannaus*, 438 U.S. at 245 ("Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them.")  The Ninth Circuit in *RUI One Corp.* makes the very same point, observing that the court now generally "subject[s] only state statutes that impair a specific (explicit or implicit) contractual provision to constitutional scrutiny." *RUI One Corp.*, 371 F.3d at 1151. That is precisely what the City's Ordinance does here:  like all collective bargaining agreements, the Grocers' employment contracts contain express terms governing wages and hours, terms the ordinance has now overridden.

Importantly, the Ordinance need not *violate* the Contract Clause to trigger heightened scrutiny under the Equal Protection Clause. There would be no reason to apply heightened scrutiny in assessing the constitutionality of regulations already held to be unconstitutional. Rather, the critical question for Equal Protection purposes is whether the ordinance "implicates" or "impinges" on some other protected "fundamental" right or interest by causing the sort of harm that would require the government to justify the burden it has imposed. *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d f1075, 1085 (9th Cir. 2015). For the fundamental rights protected by the state and federal Contract Clauses, the question is thus whether the Ordinance has "operated as a substantial impairment of a contractual relationship." *Energy Reserves Grp.*, 459 U.S. at 411.[3] Here, the answer to that question is yes: the City has unilaterally modified contractual terms governing the wages and hours of the targeted grocers' employees.

But the Ordinance here cannot satisfy even rational basis scrutiny, let alone the heightened scrutiny to which it should be held. Again, the City relies heavily on the illusory public health benefits, which have no connection to the ordinance the City enacted, let alone to the City's apparently arbitrary decision to limit that mandate only to a certain subset of grocers. Paying these workers an extra $4 an hour, and forbidding Grocers from reducing any form of compensation in response, will not protect anyone from coronavirus infection. An employee making $24 an hour instead of $20 is just as likely to be infected. Likewise, requiring employers whose employees are currently employed to pay those employees more does not address the economic insecurity caused by the pandemic or promote job retention. Instead, as recent events have revealed, it will do just the opposite—raising costs to the extent that at least some stores are forced to raise prices or shut down, and threatening to leave workers unemployed.

C. **Plaintiffs have Shown Irreparable Harm**

The City ignores the fact that a constitutional violation alone, like the one here, is sufficient to establish likelihood of irreparable harm. See *Am. Trucking Ass'ns v. City of Los*

---

[3] Because the City cannot justify its ordinance with any legitimate purpose (*see infra* pp. 12), it also violates the Contract Clauses. But Plaintiffs need not first show that the Ordinance serves no purpose in order to require the City to provide a justification that would satisfy heightened scrutiny.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

10

*Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (finding irreparable harm because constitutional violations cannot be adequately remedied through damages). Accordingly, the unconstitutionality of the Ordinance in itself should be sufficient reason to grant this injunction. But even absent any constitutional issue, the Grocers are likely to suffer irreparable harm. The City attacks this harm as purely economic, or speculative. (Opp. 24-25.)  Not so.

First, in the few days following passage of the Ordinance, two grocery stores in Seattle have elected to close as a result of the Ordinance, despite having no plans to do so. (Decl. of Teresa Robbs in Supp. of Mot. for Prelim. Inj. ¶¶ 4-5.)  The sharp and sudden increase in labor costs wrought by the Ordinance made operating these locations unsustainable. *See id*.  Over 110 employees will be displaced as a result. *Id*. This meets the Ninth Circuit standard for the "possibility of irreparable harm." See *Am. Trucking Ass'ns*, 559 F.3d at 1052 (reversing district court and finding that irreparable harm was likely because compliance with locally mandated concession agreements would lead to evaporation of business for plaintiff member businesses and could be potentially fatal for smaller companies).

The City suggests that other Grocers' decisions to enact hazard pay voluntarily somehow undercuts the Grocers' arguments. The fact that Trader Joe's has publicized its own "hero pay" is entirely irrelevant—and ignores the fact that Trader Joe's can end its hero pay whenever it chooses, and that it was offset by elimination of permanent pay raises, something the Grocers bound by collective bargaining agreements are unable to do.[4] Regarding the two QFC closures, the City invents facts to support its argument, suggesting that QFC "was already planning to close" these stores, despite the absence of any evidence to support its statements. (Opp. at 27.)

The cases cited by the City are inapposite. In *Los Angeles Memorial Coliseum Commission v. National Football League*, the only injury the district court identified for the plaintiff in the absence of an injunction was "lost revenues due to [plaintiff's] failure to acquire an NFL team." 634 F.2d 1197, 1202 (9th Cir. 1980). There were no constitutional equal

---

[4] *Trader Joe's hikes hazard pay for its U.S. workers, but there's a catch*, CBS News, Feb. 3, 2021, *available at* https://www.cbsnews.com/news/trader-joes-hazard-pay-workers/ (last visited March 5, 2021).

1  protection rights at issue, no discussion of permanent business loss, and no concrete discussion of
2  reputational or other intangible harm. *Id*. at 1201-03. Similarly, in *Sampson v. Murray*, a single-
3  plaintiff employment case, in which the plaintiff sought an injunction prohibiting termination of
4  her employment, the injury was limited to "temporary loss of income, ultimately to be
5  recovered." 415 U.S. 61, 90 (1974). Unlike these cases, the impacts are enduring and cannot be
6  readily recouped through an action for damages.

    Lastly, the City conveniently ignores how the Ordinance causes irreparable harm by directly interfering with collective bargaining negotiations. As Plaintiffs previously discussed, certain grocers were negotiating benefits and compensation packages as the Ordinance was enacted. (Decl. of Zachary Englander in Supp. of Mot. for Prelim. Inj. ¶ 3; Decl. of Frank Jorgensen in Supp. of Mot. for Prelim. Inj. ¶ 3). The Ordinance, however, sets their bargaining position, and by constricting which terms are negotiable, effectively dictates the outcome.

### D. The Balance of the Equities and Public Interest Favor an Injunction

The City has "no legitimate interest" in enforcing an unconstitutional law. *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842, 854 (E.D. Cal. 2018). Here, the City rushed to enact the Ordinance based on a misunderstanding of the impacts it would have on Grocers, and in response to pressure from organized labor. Because of the impacts produced by the Ordinance, at least two stores have closed resulting in less access to food and household items and reduced employment—the exact opposite effects that the City intended. To avoid these facts, the City in its opposition claims the closures were "discretionary" and "slated to occur." (Opp. at 27).

The adverse impacts of the Ordinance extend far beyond the parties to the litigation. Grocery stores cannot absorb mandatory increases in labor costs, while maintaining the same level of investment in public health, without either reducing operations or raising prices. Both of those options have significant and substantial public impacts. At a minimum, the Grocers and the public should be able to avoid these impacts pending resolution of this action.

### IV. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs a preliminary injunction pending a resolution of this matter.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

12

| | | |
|---|---|---|
| 1 | DATED: March 5, 2021 | STOEL RIVES LLP |

/s/ Adam S. Belzberg
Adam S. Belzberg, WSBA No. 41022
Vanessa Soriano Power, WSBA No. 30777
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Email:   adam.belzberg@stoel.com
             vanessa.power@stoel.com


/s/ William F. Tarantino (ECF)
William F. Tarantino (Admitted Pro Hac Vice)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Email: wtarantino@mofo.com

Tritia M. Murata (Admitted Pro Hac Vice)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
Telephone: (213) 892-5200
Email: tmurata@mofo.com

Attorneys for Plaintiffs

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA  98101
TELEPHONE 206.624.0900

13