The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| NORTHWEST GROCERY ASSOCIATION, an Oregon non-profit organization, the WASHINGTON FOOD INDUSTRY ASSOCIATION, a Washington non-profit corporation,<br><br>               Plaintiffs,<br>v.<br><br>CITY OF SEATTLE, a charter municipality,<br><br>               Defendant. | No. 2:21-cv-00142-JCC<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: March 12, 2021<br><br>**ORAL ARGUMENT REQUESTED** |

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
*TELEPHONE 206.624.0900*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................... 1

    A.    The COVID-19 Pandemic. ............................................................................ 1

    B.    The Hazard Pay for Grocery Employees Ordinance. ................................... 2

III. LEGAL STANDARD ............................................................................................. 2

IV. ARGUMENT .......................................................................................................... 3

    A.    Plaintiffs Have Pled Facts Sufficient to State a Claim for Preemption. ................. 3

        1.    There Is No Presumption Against Preemption Applicable to this Ordinance. .................................................................................................. 3

        2.    The NLRA Preempts the City's Ordinance. ..................................... 4

        3.    The Ordinance Constitutes an Improper Exercise of the City's Police Powers, Which is Reviewable by the Court. ................................ 10

    B.    The Ordinance Unlawfully Impairs Plaintiffs' Members' Contracts. ................. 14

        1.    Because There Is No Valid Exercise Of Police Power, There Is No Basis To Impair Any Grocers Contract. ............................................. 14

        2.    The Ordinance Substantially Impairs the Grocers' Contracts. ................. 14

        3.    The Ordinance Has No Significant and Legitimate Purpose. .................. 16

    C.    This Ordinance Violates Equal Protection. ............................................... 16

        1.    The Ordinance is Subject to Strict Scrutiny. ..................................... 16

        2.    The Ordinance Fails to Survive Rational Basis Review. ........................ 18

    D.    The Washington Constitution's Privileges and Immunities Clause Provides a Separate Basis for Relief, and Courts Apply the Heightened Reasonable Ground Test. ................................................................................................ 19

V. CONCLUSION ...................................................................................................... 20

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

i

(2:21cv-00142-JCC)

Page(s)

**Cases**

*In re Abott*,
  954 F.3d at 784.......................................................................................................12, 13, 14

*Allied Structural Steel Co. v. Spannaus*,
  438 U.S. 234 (1978).........................................................................................................15, 18

*Alsop v. Desantis*,
  No. 8:20-cv-1052-T-23SPF, 2020 WL 4927592 (M.D. Fla. Aug. 21, 2020) ..........................12

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,
  119 F. Supp. 3d 1177 (C.D. Cal. 2015), *aff'd, AHLA*, 834 F.3d 958...................................5

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,
  834 F.3d 958 (9th Cir. 2016)........................................................................................5, 6, 8, 9

*Angelotti Chiropractic, Inc. v. Baker*,
  791 F.3d 1075 (9th Cir. 2015).................................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................................3

*Associated Builders & Contractors of Cal. Cooperation Comm., Inc. v. Becerra*,
  231 F. Supp. 3d 810 (S.D. Cal. 2017)........................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................3, 8

*California Grocers Association* ("CGA")
  Order ...................................................................................................................................6 fn. 1

*Chamber of Commerce of U.S. v. Bragdon*,
  64 F.3d 497 (9th Cir. 1995)....................................................................................7, 8, 10, 13

*Chicago & Nw. Transp. Co. v. Kalo Brick & Tile Co.*,
  450 U.S. 311 (1981)....................................................................................................................4

*City of New York v. F.C.C.*,
  486 U.S. 57 (1988)......................................................................................................................4

*City of Tacoma v. Fox*,
  158 Wash. 325 (1930)...............................................................................................................10

*Covell v. City of Seattle*,
  127 Wash.2d 874 (1995)...........................................................................................................10

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
*TELEPHONE 206.624.0900*

ii

*Energy Reserves Group v. Kansas Power & Light Co.*,
    459 U.S. 400 (1983) ...............................................................................15, 16, 18

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
    458 U.S. 141 (1982) ...............................................................................4

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
    373 U.S. 132 (1963) ...............................................................................4

*Foman v. Davis*,
    371 U.S. 178 (1962) ...............................................................................3

*Fort Halifax Packing Co. v. Coyne*,
    482 U.S. 1 (1987) ...............................................................................4, 8, 9

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000) ...............................................................................3, 4

*Hall v. City of Santa Barbara*,
    833 F.2d 1270 (9th Cir. 1986) *abrogated on other grounds by Yee v. City of
    Escondido*, 503 U.S. 519 (1992) ...............................................................................3

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) ...............................................................................4

*Int'l Paper Co. v. Ouellette*,
    479 U.S. 481 (1987) ...............................................................................4

*Lawton v. Steele*,
    152 U.S. 133 (1894) ...............................................................................11

*Levin v. Commerce Energy, Inc.*,
    560 U.S. 413 (2010) ...............................................................................16

*Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin
    Employment Relations Commission*,
    427 U.S. 132 (1976) ...............................................................................5

*Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*,
    196 Wash.2d 506 (2020) ...............................................................................20

*Metro. Life Ins. Co. v. Massachusetts*,
    471 U.S. 724 (1985) ...............................................................................9, 10

*Planned Parenthood Ctr. for Choice v. Abbott*,
    2021 WL 231539 (S. Ct. Jan. 25, 2021) ...............................................................................12

*Plyler v. Doe*
    457 U.S. 202 (1982) ...............................................................................17

OPPOSITION TO MOTION TO DISMISS

(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
*TELEPHONE 206.624.0900*

iii

*Schroeder v. Weighall*,
179 Wash.2d 566 (2014)...................................................................................19, 20

*Slidewaters LLC v. Wash. Dep't of Labor & Indus.*,
No. 2:20-CV-0210-TOR, 2020 WL 3130295 (E.D. Wash. June 12, 2020)...........................12

*State v. Seattle*,
94 Wash.2d 162 (1980)...........................................................................................10

*Valasquez-Rios v. Barr*,
979 F.3d 690 (9th Cir. 2020)...................................................................................10

*W. Coast Hotel Co. v. Parrish*,
300 U.S. 379 (1937).........................................................................................11 fn. 2

**Statutes**

National Labor Relations Act ("NLRA") ................................................................ *passim*

Ordinance § 1.B ...................................................................................................18

Ordinance § 100.010 ....................................................................................2, 5, 6. 17

Ordinance § 100.020 .............................................................................................17

Ordinance § 100.025 ......................................................................................2, 5, 9

Ordinance § 100.025.A ............................................................................................9

Ordinance § 100.025.A.1 .........................................................................................6

**Other Authorities**

Fed. R. Civ. P. 15(a)(2)............................................................................................3

U.S. Const. art. I, § 10.............................................................................................16

Wash. Const. art. I, § 23..........................................................................................16

Wash. Const. art. I, § 12..........................................................................................19

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
*TELEPHONE 206.624.0900*

iv

# I.  INTRODUCTION

The City's motion to dismiss ("Motion") fails to change the facts before the Court. The City has enacted a first-of-its-kind ordinance (the "Ordinance") that mandates a wage increase for only the union-eligible employees of specific types of grocery retailers. It is not a minimum wage law, nor is it a minimum labor standard of any kind. Despite the City's attempt to cast the Ordinance as a public health measure under the guise of its police power, the Ordinance does not advance public health or safety. If anything, it runs counter to the goals articulated by the Council as the Ordinance is more likely to impede grocers' efforts to develop a safe shopping environment, it is likely to lead to an increase in grocery prices, and it will reduce the number of jobs and grocery stores in Seattle.

Legally, the Ordinance cannot stand, and Plaintiffs have stated claims upon which relief may be granted. Courts applying National Labor Relations Act preemption principles have held that the issues addressed by the Ordinance should be free from local government interference and reserved to the "free play" of economic forces. Plaintiffs have also established that its members' contracts are likely to be substantially impaired; and that this Ordinance violates Equal Protection so as to trigger heightened scrutiny by the Court. Regardless, there is no legitimate connection to the stated government purpose. The Council's decision to legislate in favor of this specific class of employers while excluding similarly situated retailers and other essential employees, who are at indisputably higher risk, cannot withstand any scrutiny. The City's motion to dismiss must be denied.

# II.  FACTUAL BACKGROUND

## A.   The COVID-19 Pandemic.

At the onset of the COVID-19 pandemic, the State of Washington and City of Seattle issued emergency orders and regulations in efforts to stem the spread of the coronavirus and protect public health and welfare. These efforts, which aimed at balancing public economic and social needs, affected many essential businesses and hundreds of employees. Seattle grocers have remained open through the various changes brought on by the pandemic and have served their communities since day one. They have taken extraordinary measures in response to the pandemic

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA  98101
TELEPHONE 206.624.0900

1

and have established rigorous and science-driven safety measures, often at a great expense, to ensure that they operate in a safe and hygienic manner that helps reduce transmission, and protect their workers and the public.

**B.   The Hazard Pay for Grocery Employees Ordinance.**

On January 25, 2021, the Seattle City Council passed this Ordinance—the "Hazard Pay for Grocery Employees Ordinance."  The Ordinance requires employers to pay a $4 per hour premium on top of grocery employees' existing wages at the time of enactment, effective immediately. The Ordinance applies to "grocery business[es]" defined as stores "[o]ver 10,000 square feet in size and… primarily engaged in retailing groceries for offsite consumption," or "[o]ver 85,000 square feet and with 30 percent or more of its sales floor area dedicated to sale of groceries[.]"  (Ordinance § 100.010.) The Ordinance specifically applies to those grocery stores employing over five hundred or more grocery workers worldwide. (*Id.* § 100.020.) Those meeting this minimum are required to provide four dollars in supplemental, premium pay per hour to each employee. Section 100.025. This requirement remains in effect for the duration of the civil emergency. (*Id.*)

Several of Plaintiffs' members operate grocery stores in the City that employ members of UFCW. (Compl. ¶ 14.) These grocery store employees are parties to collective bargaining agreements, which cover the terms of their employment, including set wage scales and compensation packages. (*Id.*) Other of Plaintiffs' members operate grocery stores that employ non-unionized employees who are free to organize and select a collective bargaining unit, if so desired. (*Id.*)

The Ordinance arbitrarily and improperly targets grocery store businesses in the City for disparate treatment. (*Id.* ¶ 18.) The Ordinance singles out large retailers and grocery companies with unionized workforces but provides no reasonable justification for the exclusion of other employers or frontline workers. (*Id.*) The City fails to support any purported purpose that will protect public health, address economic insecurity, or promote job retention. (*Id.*)

### III.  LEGAL STANDARD

Defendant seeks to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA  98101
*TELEPHONE 206.624.0900*

2

section 12(b)(6). In determining whether a complaint states a claim upon which relief can be granted under that rule, a court must assume that "all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint need only "state a claim to relief that is plausible on its face," alleging no more than the "factual content" necessary to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks and citation omitted). At the pleading stage, plaintiffs must merely "nudge[] their claims across the line from conceivable to plausible." *Id.* at 570.

In general, motions to dismiss for failure to state a claim are disfavored. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) *abrogated on other grounds by Yee v. City of Escondido*, 503 U.S. 519 (1992). Moreover, leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a)(2).

## IV. ARGUMENT

### A. Plaintiffs Have Pled Facts Sufficient to State a Claim for Preemption.

#### 1. There Is No Presumption Against Preemption Applicable to this Ordinance.

The City claims that the Court must invoke a presumption against preemption of the Ordinance as "a valid exercise of the City's police powers." (Mot. at 17.) However, as discussed *infra*, the Ordinance is not a valid exercise of its police power. The Ordinance does not regulate working conditions, which could theoretically help mitigate COVID-19. Instead, the Ordinance regulates wages in an unprecedented manner, creating a City-mandated bonus program. Because the City fails to justify this Ordinance as an exercise of police power, the claim that the City's police power excuses this Ordinance from federal preemption fails.

Even if this were a proper use of the City's police powers, U.S. Supreme Court precedent further undermines the City's argument that a presumption of validity is appropriate. Courts have rejected the argument that presumption against preemption is applicable to cases of *conflict* preemption, such as is the case here. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 906-907

(2000) (Stevens, J. dissenting) ("[T]he Court simply ignores the presumption [against pre-emption]") (majority finding that federal automobile safety standard pre-empted a stricter state law); *see also Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (implied conflict preemption where local law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."). Particularly instructive here is *Geier* where the Supreme Court considered whether state law tort claims were preempted by the objectives of the Federal Motor Vehicle Safety Standard. *Geier*, 529 U.S. at 864. The Court emphasized, in abandoning the long-standing presumption against preemption doctrine, that it was applying "ordinary," "longstanding," and "experience-proved principles of conflict pre-emption" rather than invoking such a "presumption" against preemption. *Id.* at 874, 888. Under these principles, the sole question to determine was whether there was an "actual conflict" between state and federal law; if so, then preemption followed automatically by operation of the Supremacy Clause. *Id.* at 871-72.

Serious doubts about the validity of a presumption against preemption in implied preemption cases are heightened by the lack of any discussion of such a presumption in so many of the Supreme Court's landmark implied preemption decisions, including those applying *Machinists* preemption. *See, e.g., Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987) (holding severance pay law not preempted under *Machinists* analysis, with no discussion of any presumption against preemption). This is also true of cases involving preemption of state tort suits. *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987) (no presumption raised to resist preemption of state nuisance law); *Chicago & Nw. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311 (1981) (same with respect to state negligence law). The same lack of any presumption analysis is also found in major conflict preemption cases involving state statutes or regulations. *See, e.g., City of New York v. F.C.C.*, 486 U.S. 57 (1988); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982); *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963). Thus, the City's insistence on presumption against preemption here is wrong.

### 2. The NLRA Preempts the City's Ordinance.

Plaintiffs' Complaint has alleged facts sufficient to show that the City's Ordinance is preempted as an impermissible attempt to dictate the mechanics and outcome of collective

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

4

bargaining. In *Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976) ("*Machinists*"), the Supreme Court recognized that the NLRA requires certain conduct to remain "unregulated because [it must be] left 'to be controlled by the free play of economic forces.'" *Id*. at 140 (citation omitted). The Court held that state and local laws are therefore preempted where they "attempt[] to influence the substantive terms of the collective-bargaining agreements." *Id.* at 153. In its motion, the City wrongly implies that *Machinists* preemption does not apply to the Ordinance, because it is a substantive labor standard, applicable to union and non-union employers and employees. (Mot. 18-19.) But that is not the law. While minimum labor standards may survive a preemption challenge because they provide a "mere backdrop" for collective bargaining, state and local labor laws that effectively dictate the outcome of the collective bargaining process are preempted. *See Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958, 964-65 (9th Cir. 2016) ("*AHLA*") ("[S]tate action that intrudes on the mechanics of collective bargaining is preempted, but state action that sets the stage for such bargaining is not.").

The text of the Ordinance belies the City's characterization of the mandatory wage supplement as a "minimum wage." Section 100.010, which identifies the $4 supplement as "Hazard pay," defines it as "*additional compensation* owed to an employee *on top of the employee's other compensation*." (Emphasis added.) The Ordinance is unambiguous—it mandates special compensation above and beyond baseline wages, and is not a minimum wage regulation that the City represents it is. Unlike a true minimum wage, the Ordinance does not establish a floor for the lowest paid workers; rather, it is a mandatory fixed-wage *supplement* that applies equally to the lowest and highest-paid workers. It requires a $4/hour increase applied to all wage grades while—*by its clear terms*—outlawing any modification that could reduce the employee's compensation in any way. (Ordinance § 100.025.)

The Ordinance is a perfect example of the "extreme case [where its] substantive requirements [are] so restrictive as to virtually dictate the results of the collective bargaining and self-organizing process," and thus *Machinists* preemption applies. *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1187 (C.D. Cal. 2015), *aff'd, AHLA*, 834 F.3d 958

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

(quoting *Chamber of Commerce of U.S. v. Bragdon*, 64 F.3d 497, 501 (9th Cir. 1995)

("*Bragdon*")).[1]

Critically, the Ordinance effectively prohibits any collective bargaining by the Grocers to mitigate resulting increased labor costs. First, Section 100.010 defines "Compensation" broadly to include "salaries, wages, tips, service charge distributions, overtime, commissions, piece rate, bonuses, rest breaks, promised or legislatively required pay or paid leave, and reimbursement for employer expenses." In other words, "Compensation" includes the full landscape of terms that are the subject of collective bargaining. The Ordinance then sets forth an absolute prohibition on employers, "as a result of this ordinance going into effect, tak[ing] steps to reduce employee compensation so as to prevent, in whole or in part, employees from receiving hazard pay at a rate of four dollars per hour." (Ordinance § 100.025.A.1.) By its clear terms, the Ordinance forecloses Grocers and unions from collectively bargaining bonus structures, commission rates, overtime, paid leave, or any other Compensation term that could help to mitigate the immediate and drastic fiscal impact of the Ordinance. Despite the City's assertion to the contrary, the Ordinance does, in fact, establish "forbidden…collective bargaining activities" (Motion 18); it prohibits any modification that could reduce employee compensation in any way, thereby taking every one of those terms off the negotiating table. Such a law can hardly provide a "'backdrop' for negotiations" because it prohibits any negotiations on the subject at all. *AHLA*, 834 F.3d at 963 (citation omitted). In addition, the mandatory and immediate wage supplements leaves no time for bargaining, as most collective bargaining agreements will not be up for renegotiation for over a year.

---

[1] Indeed, the court in the *California Grocers Association* ("CGA") Order suggested that *Machinists* preemption might apply to hazard pay ordinances that prohibit bargaining on any compensation term. (Defs.' Opp. to Mot. for Prelim. Inj. , Attachment A at 7-8.) Although the court acknowledged the power of governments to pass minimum labor standards that do not run afoul of the NLRA, it also noted that the City's Ordinance prohibiting collective bargaining on compensation terms would be compelling for the purposes of preemption, implying that CGA's preemption claim was colorable. (*Id.* at 7-8.) Moreover, the court noted that there could be merit to the Grocers' Contract Clause claims based on substantial impairment—depending on the nature of the contractual relationships between CGA's members and their workers. (*Id.* at 15.) In its Contract Clause analysis, the court agreed with Plaintiffs that the wage bump does not protect or promote public health because it does not mitigate risks of exposure to the virus. (*Id.* at 17.)

OPPOSITION TO MOTION TO DISMISS

(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

6

Moreover, the Ordinance's prohibition on reducing compensation cements every term of an employer's existing bargained-for compensation package as the floor below which the employer cannot go. Because the City's Ordinance directs the outcome for this entire category of collective-bargaining terms, it constitutes an impermissible intrusion on the bargaining process. The Supreme Court "has clearly held that state legislation, which interferes with the economic forces that labor or management can employ in reaching agreements, is preempted by the NLRA because of its interference with the bargaining process. *Associated Builders & Contractors of Cal. Cooperation Comm., Inc. v. Becerra*, 231 F. Supp. 3d 810, 820 (S.D. Cal. 2017) (quoting *Bragdon*, 64 F.3d at 501). By precluding Grocers from utilizing *any* component of compensation as a trade-off or bargaining-chip, the Ordinance strips employers of a fundamental bargaining tool. Under *Machinists* preemption, the NLRA prohibits state and local governments from restricting such "weapon[s] of self-help" in order to allow tactical bargaining decisions "to be controlled by the free play of economic forces." *Machinists*, 427 U.S. at 140, 146.

The City attempts to discard the most analogous authority—the Ninth Circuit's decision in *Bragdon*—by burying it in a footnote and limiting it to one precise fact of that case. Specifically, the City suggests that *Bragdon* is not controlling because the ordinance there set prevailing wages by averaging collectively-bargained wages from third parties, whereas the City's Ordinance does not tie wages to a third-party agreement. (Mot. 21 n.11.) However, *Bragdon* is not so narrow. The City's attempt to limit it fails.

In *Bragdon*, like here, a wage ordinance was narrowly targeted at particular workers in a particular industry: "certain types of private industrial construction projects" in Contra Costa County "costing over $500,000." 64 F.3d at 498. The ordinance's strict terms were particularly intrusive because they "affect[ed] not only the total of the wages and benefits to be paid, but also the division of the total package that is paid in hourly wages directly to the worker and the amount paid by the employer in health, pension, and welfare benefits for the worker," thus "plac[ing] considerable pressure on the contractor and its employees to revise the labor agreement." *Id.* at 502. Like the Ordinance at issue here, the ordinance there restricted an employer's ability to negotiate compensation packages; "if the employer and the workers [had]

OPPOSITION TO MOTION TO DISMISS

1   agreed to a total wage and benefit package that [was] equivalent to the total of the prevailing

2   wage, but allocate[d] more to benefits and less to direct wages, this would not comply with the

3   Ordinance." *Id.* Those features distinguished the ordinance from "the isolated statutory provisions

4   of general application approved in" other NLRA preemption cases. *Id*. at 502-503. Because the

5   ordinance "virtually dictate[d] the results of" collective bargaining, the Court held it preempted.

6   *Id*. at 501. For the same reason, the City's Ordinance here likewise is preempted.

7           The central holding of *Bragdon*—i.e., the NLRA preempts state and local laws that

8   virtually dictate the results of the collective bargaining process—continues to be good law.

9   Plaintiffs have alleged facts sufficient to show that the Ordinance impedes on the collective

10  bargaining process and dictates the substantive outcomes of that process (Complaint ¶¶ 14-16);

11  applying *Machinists* preemption and the binding authority of *Bragdon*, Plaintiffs' have asserted a

12  cognizable claim for NLRA preemption.

13          Each of the cases cited by the City upholding labor standards in the face of NLRA

14  preemption challenges are distinguishable from the present action and do not render Plaintiffs'

15  pleading inadequate. *See Twombly*, 550 U.S. at 570 (facts must be well-pleaded to plausibly give

16  rise to an entitlement to relief). Specifically, the cases the City relies on either involved a law that

17  provided an opt-out if collective bargaining agreements were in place, or they involved a law of

18  general applicability (or both). Because neither of those facts is present in this case, the City's

19  authority is inapposite. In *AHLA*, at issue were a series of hotel wage laws, including a

20  preliminary wage ordinance that established a "minimum wage (a total cash minimum wage of

21  $12.28 per hour as of 2014)," and an expanded $15.37 minimum wage for hotels with 150 or

22  more rooms. 834 F.3d at 961. Significantly, both minimum wage ordinances included opt-out

23  provisions for hotels covered by collective bargaining agreements and hardship waivers for

24  employers to avoid layoffs or closures. *Id*. at 961-62. Because the ordinances were not "so

25  restrictive as to virtually dictate the results of the contract" and merely provided a "backdrop" for

26  the parties' negotiations, the Ninth Circuit held they were not preempted. *Id*. at 964-65 & n.5.

27          In *Fort Halifax Packing Co.*, the Supreme Court rejected a NLRA preemption challenge

28  to a Maine severance payment scheme because "it establishe[d] a minimum labor standard that

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

8

does not intrude upon the collective-bargaining process."  482 U.S. at 7. The severance law was unlike the premium pay ordinance here in myriad ways, chief among them that it was entirely "optional, since it applie[d] only in the absence of an agreement between employer and employees," and was far less harsh—requiring only a week's pay rather than an ongoing commitment. *Id.* at 22. *Viceroy Gold Corp. v. Aubry* follows the same pattern. 75 F.3d 482 (1996). The challenged law there applied broadly to all mines, underground sites, smelters, and ore refining plants in California, and merely restricted hours worked to 8 in every 24. *Id*. at 485. Like the laws in *Am. Hotel & Lodging Ass'n* and *Fort Halifax Packing*, the law in *Viceroy* contained an exception to facilitate collective bargaining. *Id*. 486.

In *National Broadcasting Co. v. Bradshaw*, the challenged law covered only "hours worked over twelve hours in a day" in the broadcasting industry, (70 F.3d 69, 69 (9th Cir. 1995)), as opposed to "each hour worked" in a narrow subset of stores. (Ordinance § 100.025.) And, importantly, the law at issue allowed for bargaining, providing an express carve-out for workplaces "covered by the terms of a collective bargaining agreement providing specified minimum overtime benefits." *Nat'l Broad. Co.*, 70 F.3d at 69. Similarly, *Babler Bros. v. Roberts*, like *National Broadcasting Co*., involved a state statute that covered only "hours worked in excess of eight hours per day" by contractors on public projects. 995 F.2d 911, 912 (9th Cir. 1993). Here, of course, the Ordinance covers "each hour worked" in relation to a certain group of grocers. (Ordinance § 100.025.A.) And yet again, the statute there exempted "workers… covered by the terms of a collective bargaining agreement." *Babler Bros.*, 995 F.2d at 912. Moreover, the court noted the state was enforcing these conditions "on public projects in which the state and local jurisdictions [had] a proprietary interest." *Id.* at 916.

The City's reliance on *Metro. Life Insurance* is similarly misplaced. (Mot. at 18-19.) In *Metro. Life Insurance*, the Supreme Court upheld a state statute that required that specific minimum mental-health-care benefits be provided to Massachusetts residents who were insured under certain policies or health-care plans. *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 727 (1985). This minimum benefit statute is again far different from the required premium may mandated by the Ordinance. The statute broadly and equitably applied to all types of general

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA  98101
TELEPHONE 206.624.0900

9

insurance policies, accident or sickness insurance policies, or employee-health care plans covering hospital and surgical expenses. *Id*. In other words, it was a "state law[] of general application" (*Id.* at 753)—unlike the Ordinance here, which is a tailored law purporting to protect a narrow subset of frontline workers. *See also id.* at 756 (citing examples involving only laws of general applicability in support of upholding the insurance coverage law).

### 3. The Ordinance Constitutes an Improper Exercise of the City's Police Powers, Which is Reviewable by the Court.

The core of the City's argument is that the scope of its police powers shield the Ordinance from preemption. However, police powers are not unlimited, even in the context of a public health crisis. Every case relied on by the City restates limits on state and local police power, and none of them stands for the proposition that the City's police power goes unchecked in the face of a conflicting law. *See, e.g., State v. Seattle*, 94 Wash.2d 162, 166 (1980) (when an ordinance conflicts with a law of general applicability, the ordinance must yield); *Covell v. City of Seattle*, 127 Wash.2d 874, 878 (1995) (Although "[m]unicipal police power is as extensive as that of the legislature" it is only so extensive "so long as the subject matter is local and the regulation does not conflict with general laws."); *City of Tacoma v. Fox*, 158 Wash. 325, 333 (1930) ("As a general proposition, the questions of the wisdom, necessity, and policy of law are for the legislature to determine…*if* the Legislature proceeds regularly, violating no other constitutional restriction or prohibition…[.]" (emphasis added)); *Valasquez-Rios v. Barr*, 979 F.3d 690, 697 (9th Cir. 2020) (police powers are limited by the federal constitution); *Metro. Life Ins. Co.*, 471 U.S. at 747-48 ("courts sustain a local regulation unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States" (internal quotations and citation omitted).).

Plaintiffs do not dispute that the City may exercise police powers to enact minimum labor laws. Rather, as discussed above, Plaintiffs dispute that the Ordinance constitutes a "minimum wage" at all. *See Bragdon*, 64 F.3d at 503 (Striking down an ordinance that "differs from the usual exercise of police power, which normally seeks to assure that a minimum wage is paid to all

OPPOSITION TO MOTION TO DISMISS

(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
*TELEPHONE 206.624.0900*

10

employees within the county to unduly impos[e] on public services such as welfare or health services.").[2] And Plaintiffs, in accordance with precedent, assert that when enacting such ordinances, the City may not exercise that power in a way that impinges upon the operation of the NLRA. *Id.* The question is not whether the City may properly pass minimum labor standards, but rather whether the City in this instance passed a law so restrictive that the effect was to influence substantive terms of the collective-bargaining agreements.

The City suggests without basis that the Ordinance should be analyzed under the *Jacobson v. Massachusetts* framework, which held that a landmark mandatory smallpox vaccination law need not yield to individual claims of religious liberty. 197 U.S. 11, 39 (1905). The framework might be appropriate if the Ordinance was a public health measure that would mitigate the impacts of the pandemic for the general public. But even if the *Jacobson* framework were appropriate, the City's Ordinance simply does not warrant heightened deference. Pursuant to *Jacobson*, the courts afford deference to public health measures if they meet all four standards that comprise the floor of constitutional protections: 1. necessity; 2. reasonable means; 3. proportionality; and 4. harm. 197 U.S. at 27-29; Mot. 14. Here, a $4 mandated wage increase for grocery workers is not a necessary response to the public health threats of Covid-19 (whereas, requiring masks, by contrast, may be); the wage mandate is not reasonable, as it does nothing to stop the spread of the disease; and it inflicts harm on grocery retailers and the food supply chain. The Ordinance cannot meet the *Jacobson* standards and deserves no special deference. *See also Lawton v. Steele*, 152 U.S. 133, 136 (1894) ("To justify the state in thus interposing its [police power on] behalf of the public, it must appear [1] that the interests of the public generally…require such interface; and [2] that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.").

Moreover, even where *Jacobson* analysis is appropriate, the police powers endorsed by

---

[2] *See also W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 390, 399-400 (1937) (post-depression decision stating that wage laws must be evaluated in light of economic conditions, and upholding minimum wage because "denial of a living wage is not only detrimental to their health and well-being, but casts a direct burden for their support upon the community").

OPPOSITION TO MOTION TO DISMISS

(2:21cv-00142-JCC)

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

11

the decision are not limitless. Recent cases applying *Jacobson*, on which the City relies (Motion 14-15), uphold challenged laws as proper exercises of police powers; but the laws at issue are nothing like the mandated wage supplement here, and the decisions—despite upholding them— reiterate the bounds of police power. The Eighth Circuit in *In re Rutledge* applied *Jacobson* and upheld a state-wide directive halting all non-medical procedures to preserve PPE and other scarce medical resources for treating Covid-19 patients. 956 F.3d 1018, 1027 (8th Cir. 2020). Even there, the court acknowledged that "when faced with a public health crisis, a state may implement measures that infringe on the constitutional rights, *subject to certain limitations*." (*Id.*); *see also Alsop v. Desantis*, No. 8:20-cv-1052-T-23SPF, 2020 WL 4927592, at *2 (M.D. Fla. Aug. 21, 2020) (same). Challengers to the directive argued that it was intended to—and did—infringe on the right to an abortion; the court disagreed because the law was one of general applicability to all non-medically necessary procedures, and it provided for exceptions under certain circumstances; further, the court found that there were alternative abortion-methods that were unaffected by the directive, and so the directive did not effectively abrogate the right to an abortion. *Id.* at 1030-31 (emphasis added); *see also Slidewaters LLC v. Wash. Dep't of Labor & Indus.*, No. 2:20-CV-0210-TOR, 2020 WL 3130295, at *4 (E.D. Wash. June 12, 2020) (slip copy) (*Jacobson* framework is appropriate "so long as a public health law is reasonable and not overly broad *or unequally applied*" (emphasis added)).

Likewise, the Fifth Circuit in *In re Abbott* upheld the state-wide suspension of voluntary medical procedures to preserve scarce medical resources for treating Covid-19 patients. 954 F.3d 772 (5th Cir. 2020). It, too, was challenged as an improper infringement on the right to an abortion. The court explicitly limited its ruling to the facts of the case (*id.* at 778), and the decision was later vacated by the Supreme Court. *Planned Parenthood Ctr. for Choice v. Abbott*, 2021 WL 231539 (S. Ct. Jan. 25, 2021). Like every other decision cited in the City's motion, the court reiterated the scope of judicial authority to review rights-based claims in the context of a public health crisis—i.e., review is available "if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has *no real or substantial relation to those objects*, or is, beyond all question, a plain palpable invasion of rights secured by the

OPPOSITION TO MOTION TO DISMISS

fundamental law." *In re Abott,* 954 F.3d at 784 (citing *Jacobson*, 197 U.S. at 31).

In contrast to these recent decisions, Plaintiffs here allege the City's Ordinance targets a specific subset of retailers (Complaint ¶¶ 18, 19); it bears no relation to the stated purpose of mitigating the effects of the Covid-19 crisis (*id.* ¶¶ 5, 28); and it contains no exceptions or alternatives that preserve the compensation-related collective bargaining rights reserved for Grocers by the NLRA (*id.* ¶¶ 16, 25-27). These allegations are adequate at the pleading stage to implicate the limitations of police powers and warrant judicial review of the Ordinance. *Machinists* and *Bragdon*, discussed at length above, define the limits of state and local government power to regulate labor standards, and they apply here.[3]

The City again is wrong that any decision made under the guise of furthering public health and safety is an unreviewable political question. (Mot. 8, 15.) If adopted, the rule would turn preemption on its head. To the extent the City and the Court endorse local laws that dictate the outcome of collective bargaining as political questions immune from review, this would erode what the NLRA reserved for collective bargaining. And it would implicate a fundamental concern expressed by the Court in *Bragdon*, that "precedent allowing this interference with the free-play of economic forces could…redirect efforts of employees not to bargain with employers, but instead, to seek minimum wage and benefit packages with political bodies," which would in turn prompt "defensive action by employers to seek caps on wages…justified as an exercise of police power on community welfare grounds." 64 F.3d at 504. Absent the limits defined by *Machinists* preemption, the *Bragdon* Court feared that local and state governments will "substitutes the free-play of political forces for the free-play of economic forces that was intended by the NLRA." *Id*. And these same fundamental concerns are implicated by the City's Ordinance here.

Indeed, as the Ninth Circuit in *RUI One Corp. v. City of Berkeley* acknowledged, courts

---

[3] *See also Alaska Airlines, Inc. v. Schurke*, observing that *Machinists* preemption "is another, more specific application of the substantive conflict preemption under the NLRA [which] applies where state law attempts to regulate areas intentionally left 'to be controlled by the free play of economic forces' so as to 'preserve[] Congress' intentional balance of power between the uncontrolled power of management and labor to further their respective interests.'" 898 F.3d 904, 925 n.18 (9th Cir. 2018) (citation omitted).

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

provide a critical check on preventing the appropriation by local political forces of domains reserved by the constitution or federal laws. 371 F.3d 1137 (9th Cir. 2004). In the context of a contracts clause challenge (discussed more fully below), the court determined "whether the State, in justification, has a significant and legitimate public purpose behind the regulation, such as remedying of a broad and general social or economic problem, to guarantee that the State is exercising its police power, *rather than providing a benefit to special interests*." *Id.* at 1147 (emphasis added) (internal quotations and citation omitted). Where there is a purported exercise of police power, the courts remain empowered to evaluate whether it was proper. This is exactly the type of review Plaintiffs seek here. Plaintiffs allege that the Ordinance was driven by the special interests of UCFW, which sponsored the wage mandate. (Complaint ¶¶ 17-18). For the purposes of the *Twombly*/*Iqbal* analysis, this allegation is adequate to support judicial review of the Ordinance beyond the pleading stage. This Court may limit the City's police power if the City exploited the Covid-19 pandemic and passed an ordinance that is pretext for achieving special interest goals. *In re Abbot*, 954 F.3d at 792 (citing *Lawton*, 152 U.S. at 137).

**B. The Ordinance Unlawfully Impairs Plaintiffs' Members' Contracts.**

**1. Because There Is No Valid Exercise Of Police Power, There Is No Basis To Impair Any Grocers Contract.**

Once again, the City asserts that the wage ordinance is a legitimate exercise of its police power to regulate working conditions, and continues to assert that this exercise in enacting this Ordinance removes this Ordinance from any of Plaintiffs' challenges, including for unconstitutionally impairing contact. Plaintiffs reiterate because this Ordinance does not regulate working conditions, which could theoretically help mitigate COVID-19, and instead regulates wages in an unprecedented manner, there is no basis for the City's claim that the wage supplement is a legitimate exercise of its police power. Any justification for impairment of Plaintiffs' members' contracts based on an invalid exercise of police power, just as with all of the other unlawful violations the City tries to justify through use of police power, thus fail.

**2. The Ordinance Substantially Impairs the Grocers' Contracts.**

The City further acknowledges that economic regulation unconstitutionally impairs a

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
*Telephone 206.624.0900*

contract if it "substantially impair[s]" a contract. (Mot. at 23.) But the City argues that there could be no substantial impairment of the Grocers' contracts if the contract is for an "activity already regulated in the particular [way] to which [the contracting party] now objects" because the contracting party is "deemed to have contract subject to further legislation upon the same topic." (*Id.* at 16.) The City thus essentially claims that the Ordinance is a mere variation on Seattle's minimum-wage laws. (*Id.* at 23-24.) This argument ignores the plain facts of the Ordinance, and makes the strained argument that the Ordinance is essentially a wage regulation such as that under the Fair Labor Standards Act, State Minimum Wage Act and Seattle Minimum Wage Ordinance. (*Id.* at 24.) The City cannot reasonably claim that that the Grocers should have expected the City to impose mandatory hazard pay because Grocers are subject to "extensive workplace regulation." Motion at 24. This argument is derived from *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983), which endorsed the notion that price controls that impacted existing contracts should have been anticipated. Grocery stores are not subject to the same degree of regulation as energy companies brokering contracts with public utilities. In fact, the Grocers are not subject to any more extensive regulation than any other business. There is no basis to suggest that grocers should have anticipated this type of novel wage regulation, or that its sudden enactment freezing collective bargaining on compensation does not substantially impair Plaintiffs' labor contracts.

The Grocers' contracts with their employees have been materially modified by the Ordinance. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978) (*"Spannaus"*) is precisely on point. As in *Spannaus*, the Grocers set the original terms of the employment agreements by contract, and employers relied heavily and reasonably on those terms. The Ordinance materially altered the key term of an employment contract: compensation—in many cases by 25-35%. While employers may reasonably anticipate an increase in minimum wage or minimum sick leave or paid time off requirements, none could anticipate an across the board wage increase of the magnitude imposed by this Ordinance. In *Spannaus*, the Court held that the law that disrupted the contracting parties' expectations regarding a key term (the vesting schedule of a pension plan) constituted a material impairment.

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
*TELEPHONE 206.624.0900*

15

### 3. The Ordinance Has No Significant and Legitimate Purpose.

In addition to substantially impairing Plaintiffs' members' contracts, this Ordinance has no significant and legitimate public purpose. *Energy Reserves Group v. Kan. Power & Light Co*., 459 U.S. 400, 411 (1983) ("if the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation"). The City asserts that "one way to address th[e] health and safety" of grocery workers is to "ensure they are paid hazard pay." Motion at 25. However, paying these workers an extra $4 an hour, and forbidding Grocers from reducing any form of compensation in response, will not protect anyone from coronavirus infection. The City in no way addresses or elaborates on how providing this very specific group of frontline workers will help address "health and safety." Nor can it do so. "The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Energy Reserves Group* at 412. Here, the City has not established a proper exercise of police power and instead is providing a benefit to special interests such as the UFCW by so narrowly targeting a certain population of employers. The City has provided no legitimate public purpose to escape a Contract Clause violation because paying grocery employees more per hour has not been established to correlate with better public health and safety.

### C. This Ordinance Violates Equal Protection.

### 1. The Ordinance is Subject to Strict Scrutiny.

The City's Ordinance is subject to heightened scrutiny under both the federal and Washington Equal Protection Clauses because it "impinge[s] on fundamental rights." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426 (2010). The "fundamental right" at issue here is straightforward:  it is the right, secured by the Contract Clauses of both the federal and Washington constitutions, to be free of legislative impairment of existing contractual agreements. (See U.S. Const. art. I, § 10; Wash. Const. art. I, § 23.) The City's Ordinance alters the terms of the contracts Plaintiffs' members have with the union representing their workers. Whereas those contracts set specific hourly wages that Plaintiffs' members will pay and enables them to alter their employees' hours, the Ordinance compels Plaintiffs' members to increase the hourly wages

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
*TELEPHONE 206.624.0900*

16

paid and precludes them from reducing hours in response. The City did not impose such contractual impairments on an even-handed basis. Instead, it singled out a specified subclass of employers of frontline workers—not even just grocers, but only those grocers who dedicate a sufficient area of its sales floor are to the sale of groceries, and which employ 500 or more grocery workers worldwide. Ordinance Sections 100.010, 100.020. Because the ordinance interferes with only the contracts of these apparently disfavored grocers and thereby burdens their fundamental rights, it must satisfy heightened scrutiny. *Plyler v. Doe* 457 U.S. 202, 216 (1982)

The City argues that economic and employment related regulations like the Ordinance involve no fundamental right or suspect class and so are analyzed under the deferential rational basis test. (Mot. 26-28.) Yet the City cites no decision involving a regulation remotely like the Ordinance here—which not only alters the terms of certain employers' existing contracts, but does so without altering the contracts of other, similarly situated employers. *RUI One Corp.* is perhaps the best example. It demonstrates where the City's contentions go astray. There, Berkeley had passed a minimum-wage ordinance that affected a restaurant with whom the city had a lease. *RUI One Corp.*, 371 F.3dat 1145-46. The restaurant sued, invoking both the Contracts Clause and the Equal Protection Clause and claiming that the ordinance impaired its lease agreement. *Id*. at 1146. A divided Ninth Circuit panel rejected these contentions, with the key point of disagreement being whether the ordinance in fact impaired the cited lease. The majority concluded that the ordinance did not impair the lease agreement, explaining that "no specific provision of the lease agreement addresses payment to or employment benefits for RUI's employees." *Id*. at 1147. Only after having made that determination did the majority conclude that the ordinance was subject to rational basis review under the Equal Protection Clause because it "neither targets a suspect class nor impinges upon a fundamental right." *Id*. at 1154.

Here, by contrast, the relevant contracts do, in fact "address[] payment" for the targeted grocers' employees, and the City's Ordinance directly modifies those express contractual terms. *Id.* at 1147. Because the ordinance therefore "impinges upon a fundamental right," it is subject to heightened scrutiny. *Id.* at 1154. Moreover, long after the close of the *Lochner* era, the Supreme Court has continued to recognize that state interference with existing contracts implicate very

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

different concerns than state regulation of the purported freedom to make contracts. *E.g.*, *Spannaus*, 438 U.S. at 245 ("Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them."). The Ninth Circuit in *RUI One Corp.* makes the very same point, observing that the court now generally "subject[s] only state statutes that impair a specific (explicit or implicit) contractual provision to constitutional scrutiny." 371 F.3d at 1151. That is precisely what the City's Ordinance does here: like all collective bargaining agreements, the Grocers' employment contracts contain express terms governing wages and hours, terms the ordinance has now overridden.

The Ordinance need not violate the Contract Clause to trigger heightened scrutiny under the Equal Protection Clause. There would be no reason to apply heightened scrutiny in assessing the constitutionality of regulations already held to be unconstitutional. Rather, the critical question for Equal Protection purposes is whether the ordinance "implicates" or impinges on some other protected "fundamental" right or interest by causing the sort of harm that would require the government to justify the burden it has imposed. *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015). For the fundamental rights protected by the state and federal Contract Clauses, the question is thus whether the Ordinance has "operated as a substantial impairment of a contractual relationship." *Energy Reserves Grp.*, 459 U.S. at 411. Here, the answer to that question is yes: the City has unilaterally modified contractual terms governing the wages and hours of the targeted grocers' employees.

        **2.**       **The Ordinance Fails to Survive Rational Basis Review.**

Even if the City were right that the Ordinance is subject to rational basis review its motion reveals a still more fundamental flaw: the lack of any rationale that might support the disparate treatment set forth in the Ordinance. While the City repeats the health and economic purposes asserted in the Ordinance itself, the City's motion cannot explain how the Ordinance advances those goals. The Ordinance thus cannot survive any level of constitutional scrutiny.

This Ordinance does not satisfy even rational basis. The Ordinance itself cites three purported purposes: to "protect[] and promote[] public health, safety, and welfare." Ordinance § 1.B. While all of these may be legitimate governmental objectives in the abstract, none has any

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
TELEPHONE 206.624.0900

18

1  relationship to the mandate the City actually enacted, let alone to the City's apparently arbitrary

2  decision to limit that mandate only to a certain subset of businesses. The City's motion makes all

3  the more plain the absence of any rationale for the Ordinance. Nowhere does the City even

4  attempt to address how the Ordinance might actually advance these purposes. It cannot do so. For

5  example, the City states providing grocery store employees with hazard pay compensates workers

6  are "highly vulnerable to health and safety risks… improves retention of these workers, ensures

7  that these workers can better afford the resources they need to stay healthy and prevent

8  transmission, and helps ensure continued community access to food and other essential goods."

9  (Mot. at 23-24.) But paying employees an additional $4 per hour—thereby forcing some grocers

10  to shut down—does not improve retention and ensure continued access to food and other essential

11  goods.

12       The failure of these various rationales leaves nothing that could support the Ordinance.

13  Because it burdens some employers without burdening other employers in similar circumstances

14  (including other grocery retailers), without any rational justification, it fails any degree of

15  constitutional scrutiny.

16  **D. The Washington Constitution's Privileges and Immunities Clause Provides a Separate Basis for Relief, and Courts Apply the Heightened Reasonable Ground Test.**

18       Finally, as the City acknowledges, Article I, section 12 of the Washington constitution

19  "generally provides the same protections, and requires the same analysis, as the federal Equal

20  Protection Clause." (Mot. 30.) Accordingly, for all the reasons set forth above, the Ordinance

21  violates the Washington constitution as well.

22       However, the City conveniently overlooks that in determining whether state or local law

23  violates the States' Article I, section 12 privileges or immunities or equal protection clauses,

24  courts apply a "reasonable ground test [which] is more exacting than rational basis review.

25  *Schroeder v. Weighall*, 179 Wash.2d 566, 574 (2014). Under the reasonable ground test, a court

26  will not hypothesize facts to justify a legislative distinction. *Id*. Rather, the court will scrutinize

27  the legislative distinction to determine whether *it in fact serves the legislature's stated goal*. *Id*.

28  (emphasis added). Speculation may suffice under rational basis review, but Article I, section 12's

OPPOSITION TO MOTION TO DISMISS

reasonable ground analysis does not allow it. *Id*. at 575. Courts will only uphold labor standards that are "justified in fact and theory." *Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*, 196 Wash.2d 506, 523 (2020).

The City's Ordinance fails the reasonable ground test for the same reasons it cannot withstand the more relaxed rational basis review. *See*, *supra*, section IV.C.2. The $4 wage supplement does nothing *in fact* to protect workers or the public who shop at the covered stores from the ills of the pandemic—the City's theoretical suggestions that paying workers more will somehow counteract the ills of Covid-19, or that workers could use the extra funds to buy better protective gear are simply inadequate to survive scrutiny. (Mot. 10.)

## V. CONCLUSION

Plaintiffs have appropriately pled their causes of action. For the foregoing reasons, the Court should deny the City's motion to dismiss in its entirety.

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
*TELEPHONE 206.624.0900*

20

DATED: March 8, 2021                    STOEL RIVES LLP


                                        */s/ Adam S. Belzberg*
                                        Adam S. Belzberg, WSBA No. 41022
                                        Vanessa Soriano Power, WSBA No. 30777
                                        600 University Street, Suite 3600
                                        Seattle, WA 98101
                                        Telephone: (206) 624-0900
                                        Email:   adam.belzberg@stoel.com
                                                 vanessa.power@stoel.com




                                        */s/ William F. Tarantino (ECF)*
                                        William F. Tarantino (Admitted Pro Hac Vice)
                                        MORRISON & FOERSTER LLP
                                        425 Market Street
                                        San Francisco, CA 94105-2482
                                        Telephone: (415) 268-7000
                                        Email: wtarantino@mofo.com

                                        Tritia M. Murata (Admitted Pro Hac Vice)
                                        MORRISON & FOERSTER LLP
                                        707 Wilshire Boulevard
                                        Los Angeles, CA 90017-3543
                                        Telephone: (213) 892-5200
                                        Email: tmurata@mofo.com

                                        Attorneys for Plaintiffs

OPPOSITION TO MOTION TO DISMISS

STOEL RIVES LLP
ATTORNEYS
600 UNIVERSITY STREET, SUITE 3600, SEATTLE, WA 98101
*TELEPHONE 206.624.0900*

21

(2:21cv-00142-JCC)