The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST GROCERY ASSOCIATION,
AN Oregon non-profit organization, THE
WASHINGTON FOOD INDUSTRY, a
Washington non-profit corporation,

                    Plaintiffs,

         v.

CITY OF SEATTLE, a municipality.

                    Defendant.

No. 2:21-cv-00142

[PROPOSED] FINDINGS OF FACT AND
CONCLUSION OF LAW

## I.    BACKGROUND

The City of Seattle's Grocery Employees Hazard Pay Ordinance (Ordinance No. 126274) ("Ordinance") is a minimum compensation law, requiring covered grocery businesses to pay covered employees "hazard pay at a rate of four dollars per hour for each hour worked in Seattle" where hazard pay means "additional compensation owed to an employee on top of the employee's other compensation…." Ordinance, Section 2, 100.025.A, 100.010. The Ordinance is temporary,

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 1
2:21-cv-00142

emergency legislation; the requirement to pay hazard pay expires when the Mayor of Seattle ends the

emergency she declared on March 3, 2020.  *Id.*, Section 2, 100.025.C.

The Ordinance was signed into law on February 3, 2021.  On the same day, Plaintiffs,

associations representing grocery store businesses, filed suit, seeking injunctive and declaratory relief

with respect to the Ordinance on the ground that it is preempted by the National Labor Relations Act

("NLRA"), that it violates the Washington State and Federal Constitutional equal protection

guarantees, and that it violates the Washington State and Federal Constitutions' Contract Clauses.

*See generally*, Dkt. 1 (Complaint).  On February 11, 2021, Plaintiffs filed the instant Motion for

Preliminary Injunction. Dkt. 10.  For the reasons below, Plaintiffs' motion for a preliminary injunction

(Dkt. No. 10) is **DENIED**.

## II.     DISCUSSION

**A. Findings of Fact**

In addition to the facts outlined above, the Court makes the following findings of fact based

on the record.

The Seattle City Council ("Council") made extensive findings in enacting the Ordinance.

Council found that:  grocery store employees are "essential workers;" as a result of their contact with

the public, these employees are five times more likely to be infected with COVID-19; grocery stores

made record profits during 2020; increased COVID-19 transmission in the community was likely;

and there were significant uncertainties surrounding vaccination for grocery store employees.

Ordinance, Section 1, F, J-N, O-Q.  Council also concluded that grocery stores relied upon the work

of grocery store employees who are highly vulnerable to health and safety risks to provide essential

services.  *Id.*, Section 1, W-BB.  Council found that hazard pay would compensate these workers for

the risks they take, improve retention of those workers, permit the employees to access resources they

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 2
2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

need to stay safe and healthy, support community access to safe and healthy food, and immediately address a critical public health threat.  *Id*., Section 1, EE, GG, HH, JJ.

The Ordinance contains a provision preventing the reduction in other pay as a result of the Ordinance going into effect but does not prohibit reductions in employee pay that are made on some other basis.  *Id.*, 100.025A.1. The Ordinance allows offsets by employers for voluntarily provided hazard pay.  *Id*. Section 2, 100.025.A. 2.  The net effect is to ensure a minimum compensation rate for employees of four dollars per hour in addition to their regular compensation.

The Ordinance applies to "grocery businesses that employ 500 or more employees worldwide" *id.*, Section 2, 100.020.A, provided that the businesses meet certain square footage and retail minimums.  *Id.*, Section 2, 100.010.  The Ordinance covers these business' employees who "perform work… at a retail location in Seattle."  *Id.*, Section 1, 100.015.A.  The Ordinance is silent as to whether covered employees are members of unions, or whether the grocery business employ any employees who are members of unions.  And, by Plaintiffs' admission, Plaintiffs' members employ both union and non-union employees.

[Given the City's position on the merits of the Complaint (*see, e.g.,* Dkt. 23, Defendant's Motion to Dismiss the Complaint), the City does not believe that this Court must engage in additional fact finding to deny this Motion for a Preliminary Injunction.  However, to the extent that the Court wishes to address economic factors raised by Plaintiffs, the City proposes the following findings of fact.]

- The Ordinance does not restrict covered employers from changing their business in ways that would allow them to increase their profits, like reorganizing operations.  Ordinance, Section 2, 100.025.A.1.  For example, a company like Kroger (a member of Plaintiffs), which has touted to

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

investors an operating profit of $871 million for its most recent fiscal quarter (a 33% increase from a year earlier)[1], may still modify its business in a variety of ways that do not affect employee compensation—including choosing to forego or reduce their billion-dollar stock buyback practices to account for a modest increase in labor costs.[2]

- The Ordinance does not prohibit any collective bargaining to mitigate labor costs; it simply prohibits action taken to reduce compensation in response to the Ordinance. Ordinance, Section 2, 100.025A.1. For example, in response to the Ordinance, PCC Community Markets not only was able to collectively bargain with its union to provide the four dollar minimum compensation, but also negotiated other substantive terms including: new curbside pickup services, providing quarantine pay and time off for employees diagnosed with COVID-19, and other safety provisions.[3]

- Since the Ordinance's enactment, some grocery store employers (*e.g.*, PCC Community Markets and Trader Joe's)[4] have voluntarily provided four dollar per hour hazard pay, and are therefore not required to provide additional compensation under the Ordinance. Ordinance, Section 2, 100.025.A.2. There is no dispute that Kroger previously provided "hero pay" on its own volition. Kroger ended its "hero pay" at a time when it was reported that Kroger's CEO received $21.1 million in compensation for 2019, compared to the typical worker, who took home less than

---

[1] *Kroger Reports Third Quarter 2020 Results and Raises Full-Year 2020 Guidance*, https://tinyurl.com/2v5abena (last visited March 15, 2021).
[2] *Kroger Closing More Stores: Here's Which Seattle Locations Are Shuttering*, https://tinyurl.com/gwe697f4, (last visited March 15, 2021) (Kroger also bought back $989 million in stock during that time, with the board authorizing an extra $1 billion in share repurchases.).
[3] *PCC Community Markets Paying All Puget Sound Hourly Store Staff Additional $4 Per Hour Hazard Pay*, https://tinyurl.com/yf7rw8wh (last visited March 15, 2021).
[4] *Kroger to close two more stores after workers get "hazard pay"*, https://tinyurl.com/1ar1h8tg (last visited March 15, 2021).

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 4
2:21-cv-00142

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

$27,000 in pay and benefits.[5]

• The parties do not dispute the impending closures of two grocery stores, operated by member-Quality Food Centers (QFC).   There is also no dispute that the two closing stores were "underperforming," and that one store "has been unprofitable during the pandemic," which suggests a net cost savings to the company.

• Other publicly available information corroborates the Ordinance's findings that Kroger has notched record earnings during the pandemic.[6]

**B.   Preliminary Injunction**

Preliminary injunctions are an "extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  To prevail, the moving party "must establish" by a "clear showing" that: (1) it is likely to succeed on the merits of its claims; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.  *Id*. at 21-22; *see Cuviello v. City of Vallejo*, 944 F.3d 816, 831 (9th Cir. 2019) (in order to be entitled to a preliminary injunction, a plaintiff must demonstrate each *Winter* factor).[7]  Where an injunction is sought against the actions of government, a higher showing is required of imminent harm.  *City of Los Angeles v. Lyons,* 461 U.S. 95, 112 (1983)) ("recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers ... in the absence of irreparable injury which is both great and immediate'"); *see Lewis*

---

[5] *CEO pay at Tenet Healthcare, Kroger, other firms comes under microscope as companies cut costs*, https://tinyurl.com/r0witoff (last visited March 15, 2021).
[6] *Kroger to close more stores instead of giving workers hazard pay*, https://tinyurl.com/ez0hp0hr (last visited March 15, 2021).
[7] In the Ninth Circuit, this relief may also be available where "a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor" provided that the factors from *Winter* are also established.  *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1132, 1134–35 (9th Cir. 2011).

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 5
2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*v. Casey,* 518 U.S. 343, 349–50 (1996) (separation of powers doctrine weighs against injunctions controlling States).

**C.  Conclusions of Law**

A preliminary injunction is not warranted in this matter because Plaintiffs' Complaint does not state any legally cognizable claim, and Plaintiffs otherwise fail to establish any of the required factors. In addition to the impossibility of Plaintiffs demonstrating a likelihood of success on the merits, Plaintiffs face only temporary harms that could be fully remediated by monetary damages, and the balance of equities and public interest militate against injunctive relief.  This Court rejects Plaintiffs' invitation to resuscitate nineteenth century jurisprudence and privilege their contracts over the City's valid exercise of its police power to protect public health, safety, and welfare.

1.  Likelihood of Success on the Merits

Plaintiffs cannot establish any likelihood of success on the merits.  Not only do Plaintiffs fall short of showing a "likelihood" of success, but Plaintiffs' claims all fail as a matter of law, and therefore cannot support Plaintiffs' requested relief.   The standard for defeating a motion for a preliminary injunction is substantially lower than the standard required to succeed on a motion to dismiss a complaint.  *See Peri on behalf of Peri v. Bank of New York Mellon*, 2020 WL 6874880, at *2 (W.D. Wash. Nov. 23, 2020) (slip copy) ("the requirements necessary for [plaintiff] to be granted a preliminary injunction are more stringent than the pleading requirements necessary for plaintiff to state a claim for which relief can be granted").  Because Plaintiff's complaint is insufficient to survive a motion to dismiss for failure to state a claim, Plaintiffs cannot show a strong likelihood of success on the merits.  *See, e.g., Doe v. Fed. Dist. Court*, 467 Fed. Appx. 725, 728 (9th Cir. 2012) (unreported) (where a plaintiff's complaint fails to state a claim upon which relief may be granted, a motion for preliminary injunction may properly be dismissed as moot).

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 6
2:21-cv-00142

i)     *The Ordinance is an exercise of the City's core police powers.*

The parties devote significant argument to the issue of whether the Ordinance is an exercise of the City's police powers.  Plaintiffs concede that the City has the power to protect public health, safety and welfare, but nonetheless argue that (1) the Ordinance is not a valid exercise of the police power, or (2) if the Ordinance is a police power law, it is overridden by the NLRA or various constitutional provisions.   Accordingly, the nature of the Ordinance is fundamental to a proper understanding of its validity and its relationship to the NLRA and to the constitutional provisions relied upon by Plaintiffs.   This Court finds that, because the Ordinance is a standard wage regulation, it is a core exercise of the traditional police power of the City to protect public health, safety, and welfare.

Cities and counties in Washington exercise much of the State's police powers: they may "make and enforce within [their] limits all such local police, sanitary and other regulations as are not in conflict with general laws." Wash. Const. Article XI, § 11.  In Washington, the scope of the police power is broad:  "[t]he police power of the state (and of the municipalities within their limited jurisdiction)… not only extends to enactments designed to protect and promote public peace, health, morals, and safety, but also to those intended to promote the general public welfare and prosperity." *City of Tacoma v. Fox*, 158 Wash. 325, 330–31 (1930).[8]

---

[8] Washington courts have upheld as a valid exercise of the police power a wide variety of laws addressed to public health, safety and general welfare, including ordinances setting labor standards, *Filo Foods, LLC v. City of SeaTac*, 183 Wash. 2d 770 (2015), ordinances restricting the construction of hospitals, *City of Spokane v. Coon*, 3 Wash. 2d 243 (1940), ordinances providing for parking meters, *Kimmel v. City of Spokane*, 7 Wash. 2d 372, 377 (1941), ordinances requiring the licensing of plumbers, *Fox*, 158 Wash. 325, ordinances prohibiting the sale of cigarettes by vending machine, *Brennan v. City of Seattle*, 151 Wash. 665 (1929), ordinances restricting the use of motor boats on certain bodies of water, *Weden v. San Juan Cty.*, 135 Wash. 2d 678, 700 (1998), ordinances requiring dog kennels to be licensed, *Stegriy v. King Cty. Bd. of Appeals*, 39 Wash. App. 346 (1984) restricting the sale of fireworks, *Brown v. City of Yakima*, 116 Wash. 2d 556, (1991), and establishing zoning rules, *Cannabis Action Coal. v. City of Kent*, 180 Wash. App. 455 (2014), *aff'd*, 183 Wash. 2d 219 (2015).

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 7
2:21-cv-00142

An essential element of those police powers is the "wide field of discretion" for regulating the "relation of employer and employed… in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression." *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 393 (1937); *see RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1150 (9th Cir. 2004) ("[t]he power to regulate wages and employment conditions lies clearly within a state's or a municipality's police power").  The power to regulate the workplace extends to the authority to set "minimum and other wage laws," prohibit child labor, set occupational safety and health standards, require contributions to unemployment and workers' compensation funds, prescribe state holidays, and require pay for time spent on jury duty or at the polls.  *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 756 (1985) (citations omitted); *see Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 919 (9th Cir. 2018) *cert. denied* 130 S.Ct. 1445 (2019) ("Setting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states…"); *see also Filo Foods, LLC v. City of SeaTac*, 183 Wash. 2d 770 (2015) (concluding that a city ordinance applying to certain hospitality and airport related businesses, establishing a minimum wage, requiring paid sick time, requiring a tip pass through, and requiring that additional hours of work be offered to part time employees first was a valid exercise of the city's police powers).

Minimum compensation laws are a fundamental component of workplace regulation; they "protect all covered workers from substandard wages" and oppressive working conditions. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (discussing the Fair Labor Standards Act); *see RUI One Corp.,* 371 F.3d at 1141 ("Recognizing the plight of its own working poor, the City of Berkeley, California, has joined dozens of other cities nationwide to help bridge the

gap between federal and state laws setting the minimum wage—the real value of which has decreased over the past few decades—and the costs of modern urban living by enacting 'living wage' ordinances"). Ensuring minimum compensation serves critical public health, safety, and general welfare goals. *See*, *e.g.*, *Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*, 196 Wash.2d 506, 532 (2020) (citing, *inter alia*, *Parrish v. W. Coast Hotel Co.*, 185 Wash. 581, 587-89 (1936), *aff'd*, 300 U.S. 379 (1937)) (laws establishing overtime payment rates for workers "protect workers from the harmful effects of low wages and long hours").

The Ordinance is a minimum compensation law, requiring covered grocery businesses to pay covered employees "hazard pay at a rate of four dollars per hour for each hour worked in Seattle" in addition to their other compensation. Ordinance, Section 100.025.A. The Ordinance is a paradigmatic regulation of working conditions, no different in its central command to pay money to employees than minimum wage laws, overtime laws, or other laws that establish minimum employment standards.

The burden of establishing that a law is not a valid exercise of the police power "rests heavily upon the party challenging" the law. *City of Seattle v. Webster*, 115 Wash. 2d 635, 645 (1990). Such challenges are reviewed under the deferential rational basis standard, out of respect for the "demarcation between legislative and judicial functions." *Id.* Here, there is no question that the Ordinance passes this low bar. As amply explained by the City Council in its findings supporting the Ordinance, the law is intended to address public health, safety, and welfare, by ensuring that grocery employees are justly compensated for the work they perform and the additional risks they incur during the pandemic. *See generally* Ordinance, Section 1. The Ordinance's command to pay additional compensation to employees also ensures that those employees are better able to access resources they need to protect their own health, and by extension, the health of those they live with and the

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

community they serve. *Id.* Contrary to Plaintiffs' assertions, the Ordinance is, unquestionably, a law designed to protect public health, safety, and general welfare.

Though only obliquely raised by Plaintiffs, their argument that the Ordinance is not a valid exercise of the police powers appears to be that the Ordinance was the result of lobbying by unions and therefore amounts to special interest legislation. However, this assertion is untenable on its face. Plaintiffs have alleged that (1) many of their members have collective bargaining agreements with some of their employees (Complaint at ¶ 15), (2) the United Farm and Commercial Workers union has been active in seeking additional pay for grocery employees it represents (*id.* at ¶ 17), and (3) the Ordinance applies to large grocery stores that have some measure of unionization among their employees. *Id.* No other support for these allegations was offered by Plaintiff in connection with their Motion for a Preliminary Injunction.

These assertions do not support an inference that the Ordinance, applicable to both union and non-union employers and employees, is special interest legislation, not an exercise of the City's police power. This is particularly true in light of the Ordinance's plainly stated goals and externally supported findings explaining that the Ordinance is intended to serve the public interest in protecting grocery employees and ensuring safe access to food. Indeed, "in reviewing economic and social regulation [to determine if it is for a public purpose]... courts properly defer to legislative judgment...." *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 22–23 (1977) (citing *East New York Savings Bank v. Hahn*, 326 U.S. 230 (1945)); *see Goldblatt v. Town of Hempstead, N. Y.*, 369 U.S. 590, 596 (1962) (the burden of proving an ordinance is not a valid exercise of the police power is on party raising the challenge); *see also Webster*, 115 Wash. 2d at 645 ("if a state of facts justifying the ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in conformity therewith. These rules are more than mere rules of judicial

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 10
2:21-cv-00142

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

convenience. They mark the line of demarcation between legislative and judicial functions").

Such deferential review does not admit challenges alleging that the "real reason" a law was passed was to benefit a particular group, when ample justification for the law exists. *Cf. RUI One Corp.,* 371 F.3d at 1155 (plaintiffs' allegation that a workplace regulation was not in the public interest because "City Council was... motivated by a desire to help in the unionization campaign at a Marina hotel" was "unpersuasive" in the face of the council's declared purpose to protect the public interest). In fact, the supposed benefit the law provides to unions is unclear. The Ordinance applies to union and non-union employees alike. Presumably, union goals to organize more workers and increase their membership would be better served if hazard pay could only be had by collective bargaining.

The Ordinance, mandating a hazard pay rate of four dollars per hour, falls squarely within the traditional powers of the States to regulate wages and therefore constitutes a valid exercise of the City's police powers.[9] As a consequence, Plaintiffs have not established a likelihood of success on the merits for their claims. *See infra.*

> ii)   *The NLRA does not preempt the Ordinance.*

Plaintiffs cannot succeed on their NLRA preemption claim, as a matter of law. The Ordinance is a straightforward labor standard, requiring minimum compensation for grocery employees. The hazard pay requirement applies to union and non-union employees alike, and is therefore neutral toward the collective bargaining process protected by the NLRA. The Ordinance is a paradigmatic

---

[9] Here, there is an additional police power aspect to the Ordinance. Grocery stores are widely recognized as a critical element to responding to the current COVID-19 pandemic. Safe access to food is essential to the continued health of our communities. To the extent that the Ordinance permits grocery employees to better protect their own and community health, it constitutes an exercise of the police powers protecting public health during a pandemic, an area in which State and local government authority to act is particularly broad. *See, e.g., Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25-30 (1905).

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 11
2:21-cv-00142

example of the legal background against which employers and employees may collectively bargain.

As a threshold matter, Plaintiffs cannot overcome the presumption against preemption of the City's valid use of its police powers. Courts apply a two-part analysis for federal law preemption of local laws. First, the "the purpose of Congress is the ultimate touchstone" in determining the scope of preemption; and second, all such analyses start with the "assumption that the State's historic police powers are not preempted" absent a clear indication to the contrary. *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1191 (9th Cir. 2018) (citations, internal quotations omitted). Following these principles, "[p]re-emption of employment standards 'within the traditional police power of the State' 'should not be lightly inferred.'" *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987)). This "approach is consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

The presumption against preemption applies to the NLRA. Though the NLRA lacks an express preemption clause, courts have read into the Act two varieties of implied federal preemption of State and local laws. *Metro. Life Ins. Co.*, 471 U.S. 724. Plaintiffs have only invoked one type of preemption, so-called *Machinists* preemption. *See Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976). *Machinists* preemption, derived from Sections 7 and 8 of the NLRA, 29 U.S.C §§ 157-158, forbids States and local governments from restricting economic weapons of self-help in order to "establish[] an equitable *process* for determining terms and conditions of employment" though *Machinists* does not reach state laws affecting the "particular substantive terms of the bargain." *Metro. Life Ins. Co.*, 471 U.S. at 753 (emphasis supplied).

Critically, "[t]he evil Congress was addressing [under NLRA Sections 7 and 8] was *entirely unrelated* to local or federal regulation establishing minimum terms of employment." *Id.* at 754

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 12
2:21-cv-00142

(emphasis supplied). In the Ninth Circuit, the fact that Congress did not intend the NLRA to preempt local regulations on minimum labor standards *requires* a presumption against *Machinists* preemption of local employment laws by the NLRA. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 888 (9th Cir. 2018) *cert. denied* 139 S.Ct. 2744 (2019) (in the context of a *Machinists* preemption action, the court concluded that "accommodation of state labor law is of a piece with the NLRA's structure and generally applicable preemption principles" and applied the presumption against preemption) (citing *Fort Halifax*, 482 U.S. at 21; *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)); *see also Rhode Island Hosp. Ass'n v. City of Providence ex rel. Lombardi*, 667 F.3d 17, 29 (1st Cir. 2011) (acknowledging the presumption against preemption for *Machinists* preemption). Here, there is no question that the Ordinance represents a traditional exercise of local authority to regulate employment relationships. *See supra*. Accordingly, the presumption against preemption applies.

The presumption against preemption creates serious doubts about Plaintiffs' NLRA claim. But even without the presumption, Plaintiffs' NLRA preemption argument fails. As the Supreme Court explained:

> [i]t never has been argued successfully that minimal labor standards imposed by other *federal* laws were not to apply to unionized employers and employees. See, *e.g., Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 737… (1981). …. Nor has Congress ever seen fit to exclude unionized workers and employers from laws establishing federal minimal employment standards. We see no reason to believe that for… [preemption] Congress intended state minimum labor standards to be treated differently from minimum federal standards.

*Metro Life Ins. Co.*, 471 U.S. at 755 (emphasis in the original). The Court found that "[m]inimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA. Nor do they have any but the most indirect effect on the right of self-organization established in the Act." *Id.* Such

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 13
2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

labor standards are "not laws designed to encourage or discourage employees in the promotion of their interests collectively;" instead, laws, like minimum wage laws, "are in part 'designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive' the mandated" benefit. *Id*. (quoting *Barrentine,* 450 U.S. at 739) (emphasis in the original).

That the Ordinance fixes certain terms of employment, removing them from bargaining, does not support preemption. A host of local, state, and federal laws do exactly that without running afoul of the NLRA. Minimum wage laws forbid bargaining parties from negotiating an hourly rate of pay that is below the minimum amount set by statute. *Am. Hotel and Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958, 965 (9th Cir. 2016). Nor could an employer and a union bargain for and lawfully employ children. *Associated Builders & Contractors of California Cooperation Comm., Inc. v. Becerra*, 231 F. Supp. 3d 810, 820 (S.D. Cal. 2017), *aff'd* 898 F.3d 879 (9th Cir. 2018). Occupational safety and health laws similarly constitute minimum labor standards that may not be bargained away. *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 863-864 (9th Cir. 1987) (holding that California's Occupational Safety and Health Act requirements were not subject to NLRA preemption). And employers and unions are not free to agree to permit workplace discrimination just because they agreed to discriminate through collective bargaining. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49 (1974) (holding that Title VII rights were not waived even if a CBA provided an alternative route to resolve a claim of discrimination). Of course, employers and unions also cannot lawfully agree to engage in criminal activity, even if they do so by collective bargaining.

This Court's conclusion that the Ordinance is not preempted by the NLRA as a matter of law is guided by the Supreme Court's and Ninth Circuit's analysis of similar laws. For example, in *Fort Halifax*, the Supreme Court rejected an NLRA preemption challenge to a Maine law that required

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 14
2:21-cv-00142

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

severance pay for workers terminated because of a plant closing. 482 U.S. at 4. The employer argued that the law was preempted because the substantive requirement for severance pay undercut its ability to negotiate over a union demand for severance pay. *Id.* at 20. The Court squarely rejected this contention, holding that the law provided protections to individual union and nonunion workers alike and thus neither encouraged nor discouraged the collective-bargaining processes that are subject to the NLRA. *Id.* at 21-22; *see also Metro Life Ins. Co.*, 471 U.S. at 747-750 (rejecting, on the same basis, an NLRA preemption challenge to a state law that mandated inclusion of mental health benefits in employer benefit plans). Ultimately, the *Fort Halifax* Court concluded that "there is nothing in the NLRA . . . which expressly forecloses all state regulatory power with respect to those issues . . . that may be the subject of collective bargaining." *Fort Halifax*, 482 U.S. at 21-22.

The Ninth Circuit's analysis of a nearly identical challenge to the City of Los Angeles' ordinance establishing minimum labor standards applicable to hotels is also instructive. *Am. Hotel and Lodging Ass'n*, 834 F.3d 958. There, the court considered a Los Angeles ordinance that set a minimum wage, required employers to provide a set amount of paid leave, and required that service charges pass through to employees. *Id.* at 962. The Ninth Circuit found that these labor standards were not subject to *Machinists* preemption because they merely set the stage for negotiations and did not dictate a process for those negotiations. *Id.* at 964-965. Here, the requirement to pay hazard pay at a rate of at least four dollars per hour is merely a minimum labor standard that sets the stage for later negotiations.

Despite Plaintiffs' protestations, the Ordinance's restrictions on reducing compensation so as to deprive employees of the mandated hazard pay is no different than many limitations on the terms of a collective bargaining agreement imposed by federal, State or local labor laws. *See, e.g., Barrentine*, 450 U.S. at 740-41 (recognizing that the Fair Labor Standards Act applied to employees

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 15
2:21-cv-00142

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

regardless of the results of collective bargaining under the NLRA). In a closely analogous case, the Ninth Circuit rejected a *Machinists* preemption challenge to a state law that set a minimum rate for overtime pay for employees in the television entertainment industry. *Nat'l Broad. Co., Inc. v. Bradshaw*, 70 F.3d 69 (9th Cir. 1995). There, the law required either (1) double the employee's regular rate of pay for hours worked in excess of twelve per day, or, (2) if the parties bargained on the issue, a premium pay rate for those overtime hours of not less than one dollar per hour more than the minimum wage. *Id*. at 70. These premium rates were set regardless of employees' previously agreed-upon wages, and represented a "backdrop" for the parties' negotiations. *Id*. at 72 (citing *Fort Halifax*, 482 U.S. at 21). Whatever restrictions the Ordinance imposes on bargaining around wages, it is no different than those restrictions present in any law setting a minimum amount employees must be paid for their work.

Plaintiffs are also mistaken that the fact that the Ordinance is not a simple minimum wage law compels a different conclusion. Both the Supreme Court and this Circuit have repeatedly held that non-minimum wage labor standards, generally applicable to union and non-union employees, are not preempted by the NLRA. *See, e.g., Associated Builders & Contractors of S. California, Inc. v. Nunn*, 356 F.3d 979, 989 (9th Cir. 2004) ("the NLRA does not preempt state regulations that establish minimum wages, benefits, or other '[m]inimum state labor standards [that] affect union and non-union employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA'") (quoting *Metro Life Ins. Co.*, 471 U.S. at 755) (alterations in the original). The Supreme Court has specifically found that non-minimum wage laws are not subject to *Machinists* preemption. *Fort Halifax*, 482 U.S. at 21 (lump sum severance payments); *Metro Life Ins. Co.*, 471 U.S. at 758 (provision of specific mental health benefits by employers). As described above, the Ninth Circuit has approved an ordinance imposing, *inter alia*, a charge pass-through and

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 16
2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

paid time off, *Am. Hotel and Lodging Ass'n*, 834 F.3d at 964-65, and approved a state law setting overtime premium pay rates. *Nat'l Broad. Co.*, 70 F.3d at 71.

Plaintiffs' reliance on *Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995) is misplaced; *Bragdon* is unpersuasive and distinguishable. First, the Ninth Circuit has clearly limited the scope of *Bragdon* to its facts, applying *Machinists* preemption only to laws requiring private, non-union employees to adopt collectively bargained wages from third parties. *Nunn*, 356 F.3d at 991. Second, even *Bragdon* itself distinguished minimum wage laws from the offending law, acknowledging that minimum wage laws are *not* preempted by the NLRA. *Id.* at 991 & n.8 (citing *Bragdon*, 64 F.3d at 502). The factual scenario considered in *Bragdon* does not apply here. The Ordinance does not dictate private employers' wages by pegging them to a third-party, collectively bargained agreement. Indeed, by its plain terms, the Ordinance is wholly *neutral* with respect to any bargained-for-wages. *Bragdon* does not apply.

As the *American Hotel and Lodging Association* court concluded, "[m]inimum labor standards do technically interfere with labor-management relations and may impact labor or management unequally, much in the same way that [a State's] at-will employment may favor employers over employees. Nevertheless, these standards are not preempted, because they do not 'regulate the mechanics of labor dispute resolution.'" 834 F.3d at 963 (quoting *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 86 (2nd Cir. 2015)). Though the Ordinance benefits workers in establishing a minimum amount of hazard pay, it does not regulate the mechanics of labor dispute resolution.[10] Because the Ordinance applies to union and non-union employees, and does not

---

[10] Cases where *Machinists* preemption has been held to apply illustrate this distinction. *See, e.g.*, *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 618 (1986) (applying *Machinists* preemption to renewal of a taxicab franchise license conditioned on the settlement of a strike); *see also Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 68 (2008) (applying *Machinists* preemption to a state law forbidding employers to spend money "to assist, promote or deter union organizing").

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 17
2:21-cv-00142

interfere with the bargaining process, Plaintiffs cannot succeed on their NLRA preemption claim.[11]

    *iii)* *Plaintiffs' contract clause claims do not support their Motion.*

  Though raised only obliquely in their Motion, Plaintiffs rely, in part, on their claims that the Ordinance violates the contracts clauses of the federal and Washington Constitutions to bolster their equal protection claims.  These attempts to bootstrap "heightened scrutiny" into the equal protection analysis fail for a variety of reasons, *see infra*, including the fundamental infirmity in the underlying contracts clause claims.  Plaintiffs' contract clause claims fail as a matter of law.  The contract clause[12] "prohibition against any impairment of contracts is 'not an absolute one and is not to be read with literal exactness.'" *Tyrpak v. Daniels,* 124 Wash.2d 146, 151 (1994) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 428 (1934)).  Accordingly, the constitutional restriction on impairing contracts "must be accommodated to the inherent police power of the State," *Energy Reserves Group, Inc. v. Kan. Power and Light Co.,* 459 U.S. 400, 410 (1983), safeguarding the vital interests of the people, because such police powers are "paramount to any rights under contracts between individuals." *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 241 (1978).

  Set against the backdrop of public interest limitations on the private right of contract, the Supreme Court has established a two-step process for analyzing contract clause claims.  First, the

---

[11] The decision to deny a motion for a preliminary injunction in the similar case of *California Grocers Association et al. v. Long Beach*, No. 21-00524, 2021 WL 736627 (C.D. Cal. February 25, 2021) (Order denying preliminary injunction) was appropriate, but this Court disagrees with certain reasoning expressed in that case. The *California Grocers Ass'n* court properly recognized the *Machinists* preemption is concerned with ensuring an "equitable bargaining process." *Id.* at 5 (quoting *Fort Halifax*, 482 U.S. at 20)  However, the court in *California Grocers Ass'n* cautions against an extreme limitation on bargaining activities not present here. *See id.* at 7 (speculating that if a law "really does prohibit *any* collective bargaining by the grocers to mitigate increase labor costs" resulting from the law, "then it could be that *Machinists* preemption would apply") (emphasis in the original).  The Ordinance here clearly does not prohibit *any* collective bargaining to mitigate labor costs.  The Ordinance simply requires minimum compensation and restricts action taken to reduce *compensation*.  In fact, some local grocery stores have already collectively bargained in response to the Ordinance, demonstrating that an equitable bargaining process can exist against the backdrop of the Ordinance here.  Nevertheless, controlling Supreme Court and Ninth Circuit authority on NLRA preemption is clear:  the fact that parties are not permitted to collectively bargain below minimum labor standards does not implicate *Machinists* preemption.
[12] The contract clauses under the federal and Washington constitutions are coextensive. *In re Estate of Hambleton*, 181 Wash.2d 802, 830 (2014).

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

plaintiff must meet a threshold requirement to show a "substantial impairment" of their contracts caused by the challenged law; without this impairment, their claim cannot survive. *Energy Reserves*, 459 U.S. at 411; *Spannaus*, 438 U.S. at 242; *Optimer Int'l, Inc. v. RP Bellevue, LLC,* 151 Wash.App. 954, 965 (2009).

Plaintiffs do not, and cannot, dispute that their members are subject to local, state, and federal anti-discrimination laws, child labor laws, occupational safety and health laws, taxation laws and a variety of other workplace regulations. Relevant here, Plaintiffs' members are subject to local, state, and federal wage laws. These laws include commands to pay a minimum wage. *See, e.g.*, 29 U.S.C. § 206; *see also* Seattle Mun. Code 14.19. Notably, these laws also include requirements to pay overtime premiums at certain rates. *See, e.g.*, 29 U.S.C. § 207; *see also* Rev. Code Wash. 49.46.130. Such overtime premiums are not fixed amounts set by statute, but rather depend on an employee's "regular rate" which may be any amount more than the minimum wage. Premium payments, like the additional hazard pay mandated here, are part of the background against which parties contract for labor. The Ordinance, a labor standard indistinguishable from the array of laws already regulating compensation of Plaintiffs' members' employees does not substantially impair Plaintiffs' members' contracts. Accordingly, grocery stores have contracted to pay certain amounts to their employees for their labor "subject to further legislation upon the same topic." *Veix v. Sixth Ward Bldg. & Loan Ass'n*, 310 U.S. 32, 38 (1940). Without any substantial impairment of Plaintiffs' existing contracts for labor, there is no violation of the contract clause as a matter of law. *Energy Reserves*, 459 U.S. at 412.

Even if a Plaintiffs had shown substantial impairment of a contract, their claims still fail because the challenged law has "significant and legitimate" public purposes, and the Ordinance's method of adjusting the rights of the contracting parties is appropriate to those purposes. *Energy*

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*Reserves*, at 411-12.  Because the City is not a party to Plaintiffs' members' contracts, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id*.  Under this deferential standard, Plaintiffs cannot succeed as a matter of law.  Both the City and Plaintiffs agree that the health and safety of grocery employees is essential to combatting the spread of COVID-19, and that one way to address their health and safety is to ensure that they are paid hazard pay.  *See* Complaint at ¶¶ 2-4 (describing the critical role of grocery employees in combating the pandemic, grocery stores' payment of hazard pay, and an acknowledgement that grocery workers are essential to the pandemic response); *see also* Ordinance, Section 1, B,  F, W, X, GG, HH-JJ (identifying grocery employees as essential workers, who play a vital role in combating the pandemic and who deserve hazard pay).  The effort to protect workers and the public from a pandemic is the very definition of a public purpose.  And, as discussed above, ensuring minimum compensation standards for employees serves critical public purposes in protecting employees from harms associated with low pay and long hours.

The means chosen by the City to address these significant, legitimate public purposes are clearly appropriate.  Providing hazard pay to grocery store employees addresses the harms of low wages, compensates employees for their increased risk of infection, improves retention of these employees, ensures that they can better afford the resources they need to stay healthy and prevent transmission, and helps ensure continued community access to food and other essential goods.

iv) *The Ordinance easily survives rational basis review and therefore does not violate equal protection guarantees.*

Plaintiffs similarly cannot succeed on their claims of equal protection violations under both State and federal constitutional principles.  Because the Ordinance is a just application of the City's police powers regulating working conditions, *see supra*, it is subject to only the minimally searching rational basis review, a standard it easily survives.

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 20
2:21-cv-00142

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Plaintiffs' invitation to invoke heightened scrutiny in this case is misplaced.  "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class."  *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Plaintiffs do not (and cannot) contend that the Ordinance employs suspect classifications.  Plaintiffs instead attempt to elevate their contract clause claim to a fundamental right within the meaning of the equal protection guarantees.  Plaintiffs' argument on this point is unpersuasive for two reasons.

First, the notion that police power regulations infringing on private contracts for labor implicate fundamental rights has not been the law since the 1930s.  *See Parrish*, 300 U.S. at 392-393 (the "power under the Constitution to restrict freedom of contract has had many illustrations.  That it may be exercised in the public interest with respect to contracts between employer and employee is undeniable"); *accord Nebbia v. People of State of New York*, 291 U.S. 502, 523 (1934) ("neither property nor contract rights are absolute, for government cannot exist if the citizen may at will use his property to the detriment of his fellows").   The Court is not aware of a single case where a court has applied strict scrutiny to an equal protection claim based on a purported interference with contracts, and at least one circuit court has rejected such an invitation. *United States v. Williams*, 124 F.3d 411, 422 (3rd Cir. 1997) (citing *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489 (1955)) (holding that strict scrutiny in equal protection context was not "justified on the ground that [the challenged] provision affects the defendants' right to enter into contracts"); *see also Etere v. City of New York,* No. 08-CV-2827, 2009 WL 498890 at *2 (S.D.N.Y. Feb. 24, 2009) ("[t]o the extent that Plaintiff relies on that portion of Article I, section 10 prohibiting laws impairing the obligation of contracts, he evokes the language in *Lochner v. New York,* 198 U.S. 45 (1905). The Court now uses rational basis review for economic regulation, however, and no longer views liberty of contract as a

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1     fundamental right").

2        Second, despite the low bar for valid regulations impairing existing contracts for labor,

3     Plaintiffs invite this Court to view their allegation that the Ordinance impairs their contracts as a basis

4     to subject the Ordinance to heightened scrutiny under the equal protection analysis.  As noted *supra*,

5     Plaintiffs' Contract Clause claims fail as a matter of law.  And, as the court in *California Grocers*

6     *Ass'n* did, this Court rejects Plaintiffs' attempt to merge the standards of review for contract clause

7     claims and equal protection.  *California Grocers Ass'n*, No. 21-00524, 21 WL 736627 at *6 (rejecting

8     an attempt to turn the contract clause into a fundamental right).  Today, courts apply a relaxed form

9     of scrutiny to claims under the Contracts Clause where the government is not a contracting party.

10    *See, e.g.*, *Blaisdell*, 290 U.S. at 412-13 (recognizing that "courts properly defer to legislative

11    judgment as to the necessity and reasonableness of a particular measure").  Under Plaintiffs' novel

12    theory, legislation that survived relaxed scrutiny under the Contracts Clause would be subject to strict

13    scrutiny under the Equal Protection Clause, rendering the deferential standard under the Contracts

14    Clause meaningless and erasing decades of jurisprudence.  *See, e.g., Parrish*, 300 U.S. at 392 (1937)

15    ("there is no absolute freedom to do as one wills or to contract as one chooses").  Accordingly, it is

16    unnecessary to subject the Ordinance to strict scrutiny.

17        The proper standard of review for the Ordinance is, therefore, rational basis review.  *Jackson*

18    *Water Works, Inc. v. Public Utilities Comm'n of State of Cal.*, 793 F.2d 1090, 1093-94 (9th Cir. 1986)

19    ("the proper test for judging the constitutionality of statutes regulating economic activity challenged

20    on equal protection grounds is whether the legislation bears a rational relationship to a legitimate state

21    interest").  Indeed, in cases challenging minimum compensation legislation on equal protection

22    grounds, the Ninth Circuit has routinely applied rational basis review.  *E.g., Int'l Franchise Ass'n v.*

23    *City of Seattle*, 803 F.3d 389, 407 (9th Cir. 2015) (recognizing that rational basis review applied to

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 22
2:21-cv-00142

an equal protection challenge to the City's minimum wage ordinance and affirming district court's application of rational basis standard, upholding the law); *RUI One Corp.*, 371 F.3d at 1154 (applying rational basis review to an equal protection claim, notwithstanding a concurrent Contract Clause claim, because "this case involves social and economic policy and neither targets a suspect class nor impinges upon a fundamental right") (quotation marks omitted).

The Ordinance easily satisfies rational basis review, the "most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause." *Dallas v. Stanglin*, 490 U.S. 19, 26 (1989).[13] Where laws do not employ suspect classifications or impinge on fundamental rights, courts "view constitutional challenges with the skepticism due respect for legislative choices demands." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426 (2010); *Williamson*, 348 U.S. at 488-89; *see Ferguson v. Skrupa*, 372 U.S. 726, 730 (1963) ("courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws.").

The Council made extensive findings of fact in enacting the Ordinance. These findings amply explain and support their legislative choices. Providing hazard pay to grocery store employees addresses the hazards of low pay, compensates employees for their increased risk of infection, improves retention of these employees, ensures that they can better afford the resources they need to stay healthy and prevent transmission, and helps ensure continued community access to food and other essential goods. There is clearly a rational relationship between the ills identified by the Ordinance and the mechanism the City chose to address those concerns, far more than the minimum "any reasonably conceivable state of facts that could provide a rational basis" necessary to survive

---

[13] Rational basis review "is a paradigm of judicial restraint." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993). "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley*, 440 U.S. 93, 97 (1979) (footnote omitted).

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 23
2:21-cv-00142

review.  *F.C.C.*, 508 U.S. at 313. Plaintiffs' invitation to engage in "courtroom fact-finding" as to whether the Ordinance rests on a sound analysis is not welcome.  *Id.*

Plaintiffs' contention that the Ordinance improperly singles out grocers of a certain size or fails to extend to certain frontline workers is not sufficient to overcome the City's legislative choices. Such line-drawing is "'virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally.'"  *RUI One Corp.*, 371 F.3d at 1155 (quoting *F.C.C.*, 508 U.S. at 316); *see also Int'l Franchise Ass'n,* 803 F. 3d at 407 ("It is legitimate and rational for the City to set minimum wage[] based on economic factors, such as the ability of employers to pay those wages."). Relatedly, Plaintiffs' contention that the legislation was merely a political favor has no bearing on this analysis.  Even if the legislative body's motivations were "purely political" and its stated rationales mere pretext, the Ordinance still withstands rational basis review.   "[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."  *F.C.C.*, 508 U.S. at 315; *RUI One Corp.*, 371 F.3d at 1155.[14] Plaintiffs cannot succeed on the merits of their equal protection challenge to the Ordinance.

> v)    *Because no fundamental right is implicated, there is no violation of Washington's Privileges and Immunities Clause.*

Plaintiffs cannot succeed on a Washington Constitution Privileges and Immunities Clause violation.   Enshrined in Article I, Section 12 of the Washington Constitution, the Privileges and Immunities clause generally provides the same protections, and requires the same analysis, as the Federal Equal Protection Clause. *Martinez-Cuevas*, 196 Wash.2d at 518-19. An independent analysis

---

[14] Also, given the context of an ongoing pandemic, it is clear that "'[u]nder the pressure of great dangers,' constitutional rights may be reasonably restricted 'as the safety of the general public may demand.'" *In re Abbott*, 954 F.3d 772, 778 (5th Cir. 2020) (alterations removed) (quoting *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 29 (1905)). Exercises of the local police powers to regulate public affairs in response to a public health crisis are entitled to even greater deference in the context of public health emergencies.

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 24
2:21-cv-00142

is required only when "a law implicates a 'privilege or immunity' as defined in our early cases distinguishing the fundamental rights of state citizenship.'" *Id.*  The Ordinance does not come within this exception.  Plaintiffs have not (and cannot) identify a fundamental right of state citizenship impaired by the Ordinance.  The only basis that Plaintiffs raise, without support or compelling argument, is that the impairment of their contracts would implicate the fundamental rights of state citizenship for Washington residents.

This Court rejects Plaintiffs' invitation to conclude that legislative interference with existing contracts implicates a fundamental right of state citizenship.   Plaintiffs cite no authority, and the Court is aware of none, for the proposition that Washington courts would find the right to be free from impairment of contracts to be fundamental in the sense required by Privileges and Immunities clause.   Further, because the contract clauses under the State and Federal constitutions are coextensive, *Hambleton*, 181 Wash.2d at 830, modern federal jurisprudence rejecting *Lochner*-era conceptions of the interplay between private contracts and public interest laws forecloses an independent analysis.  *Parrish*, 300 U.S. at 392-393; *see Blaisdell,* 290 U.S. 398, 428 (1934) (the "prohibition [on impairment of contracts] is not an absolute one and is not to be read with literal exactness like a mathematical formula"); *see Nebbia*, 291 U.S. at 523 (1934) ("neither property nor contract rights are absolute, for government cannot exist if the citizen may at will use his property to the detriment of his fellows"); *see also Margola Associates v. City of Seattle*, 121 Wash.2d 625, 653 (1993) *abrogated on other grounds by Yim v. City of Seattle*, 194 Wash.2d 651 (2019) (acknowledging that private contracts are undertaken with the expectation that additional regulation in areas already regulated will occur).  Unlike rights guaranteed by the First Amendment, *William v. Rhodes*, 393 U.S. 23 (1968), or the right to bodily autonomy, *Murgia*, 427 U.S. at 312 & n. 3,  the right to be free from impairment of contracts is simply not fundamental in the sense required for

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

heightened scrutiny under the Washington Constitution.

And even if the Ordinance implicated a fundamental right for purposes of the Washington Constitution, Plaintiffs would be unlikely to succeed on the merits, because a "reasonable ground" exists for the distinction between grocery employers and other businesses. *Martinez-Cuevas*, 196 Wash.2d at 519, 523. It is beyond dispute that providing additional pay to grocery workers helps protect workers from the hazards of law pay and compensates the workers for the well-documented hazards they face. Plaintiffs are unlikely to succeed on a Washington Constitution Privileges and Immunities clause violation.

2. Likelihood of Irreparable Harm

[The City contends that the Complaint lacks all merit, and so reaching the other *Winter* factors is unnecessary. Granting the City's Motion to Dismiss implies denying the Motion for a Preliminary Injunction as moot. *Doe v. Fed. Dist. Court*, 467 Fed. Appx. 725, 728 (9th Cir. 2012). If the Court does intend to consider the likelihood of irreparable harm, the City submits the following as proposed conclusions of law.]

Plaintiffs have not established a likelihood of irreparable harm without an injunction. Plaintiffs have alleged only economic harm, redressable by money damages, and purely speculative reputational harms. This is insufficient to show "irreparable harm… for which there is no adequate legal remedy…[,]" *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014), because "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1022 (9th Cir. 2016) (quoting *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)) (emphasis in original).

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Although Plaintiffs provide multiple declarations supporting their allegations of harm, the principal harms cited by Plaintiffs are purely monetary, in the form of additional compensation they must pay under the Ordinance.  Such monetary injury does not amount to irreparable harm in the context of a preliminary injunction.  *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020).  This is particularly true where, as here, the loss is only temporary.  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury").

Furthermore, even if Plaintiffs allegations that the two QFC grocery store closures is evidence of some injury, it is not irreparable harm that would be prevented by the injunction Plaintiffs seek. Plaintiffs cannot escape the reality—and even concede—that the two closing stores were "underperforming" and one "has been unprofitable during the pandemic" long before the Ordinance. Declaration of Teresa Robbs at ¶¶ 2-5.  In fact, closing these two underperforming grocery stores may *improve* overall financial standing, calling into question whether any injury has occurred because of the Ordinance.  A discretionary business closure does not constitute a harm for which there is no legal remedy, especially where the closure is merely an acceleration of a closure that was already slated to occur.

Also undercutting Plaintiffs' irreparable harm assertion is the undisputed fact that some of its members currently provide or previously provided some amount of "hero pay" on their own volition. Especially in the context of record profits in the grocery industry, allocating financial burdens across capital, labor, and operational costs in response to a local regulation, however substantial, is not sufficient to demonstrate irreparable harm.  *Sampson*, 415 U.S. at 90.  Purely economic harms are not the type of "irreparable injury" necessary to support a preliminary injunction.  *See, e.g., Rent-A-Ctr.,*

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1   *Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

2          Plaintiffs other arguments for irreparable injury in the absence of injunction are similarly

3   unpersuasive.  First, Plaintiffs assertions of "reputational harm" and loss of "goodwill" in the form of

4   a declaration that the public will conclude grocery stores are "hazardous" because employees receive

5   hazard pay are simply too speculative and based on conclusory statements to justify the extraordinary

6   relief.  *See, e.g., Mirinia Corp. v. Marina Biotech*, 770 F. Supp. 2d 1153, 1162 (W.D. Wash. 2011)

7   (refusing to enter a preliminary injunction where the plaintiff "entirely failed to submit any proof

8   beyond speculation as to its reputation or goodwill in the relevant market…leav[ing] the court with

9   no basis upon which to evaluate any intangible harm"); *see also Herb Reed Enters, LLC v. Fla. Entm't*

10  *Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("conclusory or speculative allegations are insufficient

11  to establish a likelihood of irreparable harm").

12          Second, Plaintiffs contention that the mere allegation of a constitutional violation is sufficient

13  to show irreparable harm is not well taken.  *See Sierra Club v. Trump*, 379 F. Supp. 3d 883, 925

14  (N.D. Cal. 2019), *aff'd*, 963 F.3d 874, 925 (9th Cir. 2020), *cert. petition filed*, No. 20-138 (Aug. 7,

15  2020) (citing *American Trucking Ass'ns*, 559 F.3d at 1058-1059) (Under the "theory of irreparable

16  harm" adopted in *American Trucking*, "Plaintiffs must demonstrate some likely irreparable harm in

17  the absence of a preliminary injunction barring the challenged action, and not simply a constitutional

18  violation").   If the mere allegation of a constitutional harm were sufficient to support preliminary

19  injunctive relief, wholly meritless complaints would entitle plaintiffs to the extreme relief represented

20  by such injunctions.  As discussed above, Plaintiffs have not identified any irreparable injury, and in

21  any event, cannot succeed on their constitutional claims.

22          Plaintiffs have demonstrated, at most, economic harm easily redressable by money damages

23  in an action at law.  They have not demonstrated a likelihood of irreparable harm sufficient to support

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

their request for the extreme remedy they seek.

3.  <u>Balance of Hardships and the Public Interest</u>

[The City contends that the Complaint lacks all merit, and so reaching the other *Winter* factors is unnecessary.  Granting the City's Motion to Dismiss implies denying the Motion for a Preliminary Injunction as moot.  *Doe v. Fed. Dist. Court*, 467 Fed. Appx. 725, 728 (9th Cir. 2012).  If the Court does intend to consider the balance of hardships and the public interest, the City submits the following as proposed conclusions of law.]

Finally, the Court considers the balance of hardship and the public interest in entering or denying a preliminary injunction. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (in considering a request for preliminary injunction against a governmental action, the final two *Winter* factors are considered together).  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

Plaintiffs' only argument regarding the equities or public interest dimension of their request for a preliminary injunction is that, should the Ordinance later be invalidated, their members would have to individually pursue damages against the City.  Whatever "public" interest is served by prioritizing the convenience of some grocery stores in bringing future lawsuits is dwarfed by the public interest served by leaving the Ordinance in place.  The public interest and equities are undeniably served by allowing a law, enacted to protect the health, safety, and welfare to ensure minimum compensation payments to essential workers, to go into effect during the pendency of a public emergency.  The Court rejects Plaintiffs' invitation to ignore the impact on the public at large

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 29
2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

of enjoining the Ordinance.

### III.    CONCLUSION

Plaintiffs have not justified their request for the extraordinary remedy they seek.  There is no likelihood that Plaintiffs' claims will succeed on their merits.  And, in any event, Plaintiffs face only temporary, legally addressable harms.  The balance of equities and the public interest weigh strongly in favor of protecting workers and the public.  The Court rejects Plaintiffs' invitation to resuscitate nineteenth century jurisprudence and privilege their contracts over the City's valid exercise of its power to protect public health, safety, and welfare in the context of setting minimum compensation amounts for grocery employees.

For the foregoing reasons,

IT IS ORDERED that Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

DATED this _____ day of _____, 2021.

By:_____
HON. JOHN C. COUGHENOUR
United States District Judge

///

///

///

///

///

///

///

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 30
2:21-cv-00142

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

PRESENTED BY

PETER S. HOLMES
Seattle City Attorney

By:     *s/ Jeremiah Miller*
        Jeremiah Miller, WSBA# 40949
        Erica Franklin, WSBA# 43477
        Derrick De Vera, WSBA# 49954
        Assistant City Attorney

        E-mail:  Jeremiah.Miller@seattle.gov
        E-Mail:  Erica.Franklin@seattle.gov
        E-Mail:  Derrick.DeVera@seattle.gov

        *Attorneys for Defendant City of Seattle*

[PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW- 31
2:21-cv-00142